(4)  Correctional personnel shall keep confidential any health-related information or records of a person in custody that the officer receives from health care personnel. Information received by correctional personnel pursuant to 40 RCNY § 3-08(c)(3)(ii) shall not be re-disclosed to anyone, including other correctional personnel.

(5)  When a person in custody communicates health-related information to correctional personnel to obtain access to health services or treatment of a health condition, correctional personnel shall keep such information confidential. People in custody need not disclose their specific medical complaints to correction personnel to obtain medical assistance.

(6)  To assure continuity of care and avoid unnecessary duplication of tests and examinations, a person in custody's health information shall be made available to health care personnel when that person is transferred to another correctional or health care facility.

(i)  When a person in custody is transferred from one correctional facility to another within the New York City Department of Correction, the person's complete health record shall be maintained and available in each location.

(ii)  When a person in custody is transferred to or from a municipal hospital ward, a pertinent summary of the person's health record shall accompany the transfer.

(iii)  When a person in custody is transferred to another correctional system, a record summary defined by the receiving and sending systems shall accompany the person.

(iv)  Complete health record information shall be transferred to specific and designated physicians outside the jurisdiction of the Department of Correction upon the request and written authorization of the person in custody for the release of such information. The release form must specify the information to be transferred.

(d)  *Experimentation.*

(1)  Biomedical, behavioral, pharmaceutical, and cosmetic research involving the use of any person in custody shall be prohibited except where:

(i)  the person in custody has voluntarily given his/her informed consent, pursuant to 40 RCNY § 3-06(j); and

(ii)  all ethical, medical and legal requirements regarding human research are satisfied; and

(iii)  the research satisfies all standards of design, control and safety; and

(iv)  the Health Authority has approved the proposed research, in writing.

(2)  The use of a new medical protocol for individual treatment of a a person in custody by the person's physician will not be prohibited, provided that such treatment is conducted subsequent to a full explanation to the person of the positive and negative features of the treatment, all requirements of 40 RCNY § 3-06(j) regarding informed consent have been satisfied, and the protocol/treatment has been reviewed by the appropriate local and institutional review boards as required by applicable Federal, State and local laws. As an example, the protocol must be reviewed by an established human research review committee with representation by advocates for people in custody.

(Amended City Record 7/22/2019, eff. 8/21/2019)

## § 3-09 Quality Assurance.

(a)  *Policy.*

(1)  The Health Authority shall establish and implement written policies and procedures for a Quality Assurance Program which ensures the delivery of quality health care. This program shall be systematic and include objective criteria for evaluating care and shall include procedures for the following:

(i)  monitoring and evaluation of the quality, appropriateness, and effectiveness of health care services; and

(ii)  prompt identification and resolution of problems.

(2)  Hospital Prison Wards shall meet accepted community standards for accreditation. Each hospital that is designated to provide health services for inmates shall have a single physician of attending status responsible for all treatment provided to inmates in that hospital.

(b)  *Quality Assurance Program.*

(1)  The monitoring and evaluation activities of the Quality Assurance Program shall reflect the following:

(i)  the ongoing collection and/or screening and evaluation of information about health care services to identify opportunities for improving care and to identify problems that have an impact on health care provision and clinical performance;

(ii)   the use of objective criteria that reflect current knowledge and clinical experience;

(iii)   the identification of problems and improvement of the quality of health care through appropriate actions by administrative and health personnel; and

(iv)   documentation and reporting of the findings, conclusions, recommendations, actions taken and the results of such actions.

(2)   The administration and coordination of the overall Quality Assurance Program will be designed to assure the following:

(i)   all monitoring and evaluation activities are performed appropriately and effectively;

(ii)   necessary information is communicated within and between the Health Authority and the Department of Correction when problems or opportunities to improve health care involve more than one department or service. Communication with the Department of Correction must be consistent with State law and 40 RCNY § 3-08(c) of these standards regarding confidentiality.

(iii)   the status of identified problems shall be tracked to assure prompt improvement or timely resolution;

(iv)   all documented information and recordings will be statistically analyzed to detect trends, patterns of performance or potential problems;

(v)   a quarterly statistical report outlining the types of health care rendered and their frequency shall be prepared by the Health Authority; and

(vi)   the objectives, scope, organization, and effectiveness of the quality assurance program shall be evaluated at least annually and revised as necessary.

(3)   There shall be monthly meetings attended by the facility correctional administrator, the chief representative of Health Services at the facility and representatives of the medical, dental, and nursing staff.

(i)   each meeting will include a written agenda as well as the taking and distribution of minutes.

(4)   All Hospital Prison Wards shall be inspected as part of the accreditation process by the Joint Commission on Accreditation of Hospitals (JCAH), and shall be in compliance with JCAH and State Department of Health standards. In addition, each hospital that is designated to care for inmates will submit as part of their quarterly written reports to the Health Authority, a section that reflects quality assurance activities concerning care provided to inmates.

(5)   The Health Authority shall annually conduct itself or contract for a formal evaluation of the quality, effectiveness, and appropriateness of health services provided to inmates in each New York City correctional facility. If the review is conducted by the Health Authority, it must be done by personnel other than those who provide care directly to inmates.

(i)   At a minimum the evaluation will consist of the items outlined in 40 RCNY § 3-09(c).

(ii)   The findings, conclusions, and recommendations of the Health Authority's evaluation shall be documented and distributed to the appropriate authorities, including the Board of Correction.

(c)   *Monitoring and Evaluation.*

(1)   The quality of care shall be evaluated and monitored to ensure that medical judgments are soundly made and documented and that medical procedures are appropriately performed and evaluated. Monitoring and evaluation shall assess the appropriateness of diagnostic and treatment procedures, the use of adequate and complete diagnostic procedures including laboratory and radiology studies when indicated. Other subjects which should be reviewed include but need not be limited to: inservice training for medical personnel; the provision of chronic care services; adherence to protocols as evidenced by chart review; whether protocols are updated to reflect current medical knowledge; and whether staff education is successfully conducted to ensure compliance with current protocols.

(2)   The quality, content and completeness of medical and dental records and entries will be evaluated and shall at a minimum include verification of:

(i)   timely and adequate transfer of appropriate health care documents and information when inmates are transferred to or from other correctional facilities.

(ii)   confidentiality and security of records.

(3)   The quality, completeness and efficiency of receiving screening services shall be evaluated, including at least a review of any cases where an inmate with a serious health problem, which went undetected at screening, was placed in the general population and of cases where there are substantial delays in conducting the screening.

(b)   The level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates, but all volunteers and contractors who have contact with inmates shall be notified of the Department's and CHA's zero-tolerance policy regarding sexual abuse and sexual harassment and informed of how to report such incidents.

(c)   The Department and CHA shall maintain documentation confirming that their volunteers and contractors understand the training they have received.

(d)   The Department and CHA shall complete the training of volunteers by July 31, 2017.

(e)   The Department and CHA shall complete the training of contractors by July 31, 2019.

(f)   The Department and CHA shall provide to the Board on an annual basis the training schedules, training curriculum and credentials of the trainers, in accordance with this section, starting on March 1, 2017 for the previous year and on the first business day of March following the end of each year thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-14 Inmate Education.

(a)   During the intake process, inmates shall receive information explaining the Department's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment.

(b)   Within 30 days of intake, the Department shall provide comprehensive education to inmates either in person or through video regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents, and regarding Department policies and procedures for responding to such incidents.

(c)   The Departmentshall provide inmate education in formats accessible to all inmates, including those who are limited English proficient, deaf, visually impaired, or otherwise disabled, as well as to inmates who have limited reading skills.

(d)   The Department shall maintain documentation of inmate participation in these education sessions.

(e)   In addition to providing such education, the Department shall ensure that key information is continuously and readily available or visible to inmates through posters, inmate handbooks, or other written formats.

(f)   The Department shall commence providing inmate education described in subdivisions (a) through (e) of this section on April 3, 2017 provided the Department has sufficient resources and necessary staffing.

(g)   The Department shall provide to the Board on an annual basis the inmate education schedules, education curriculum and the credentials of the persons providing such education to inmates, in accordance with this section, starting on March 1, 2018 for the preceding year and on the first business day of March following the end of each year thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-15 Specialized Training: Investigations.

(a)   In addition to the general training provided to all employees pursuant to 40 RCNY § 5-12, the Department shall ensure that its investigators have received training in conducting sexual abuse investigations in confinement settings.

(b)   Specialized training shall include techniques for interviewing sexual abuse victims, proper use of Miranda and Garrity warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral.

(c)   The Department shall maintain documentation thatDepartment investigators have completed the required specialized training in conducting sexual abuse investigations.

(d)   The Department shall complete specialized training of its investigators by April 3, 2017.

(e)   The Department shall provide to the Board on an annual basis the training schedules, training curriculum and credentials of the trainers, in accordance with this section, starting on March 1, 2017 for the previous year and on the first business day of March following the end of each year thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-16 Specialized Training: Medical and Mental Health Care.

(a)   CHA shall ensure that all full- and part-time medical and mental health care practitioners who work regularly in facilities have been trained in:

(1)  How to detect and assess signs of sexual abuse and sexual harassment;

(2)  How to preserve physical evidence of sexual abuse;

(3)  How to respond effectively and professionally to victims of sexual abuse and sexual harassment; and

(4)  How and to whom to report allegations or suspicions of sexual abuse and sexual harassment.

(b)  The CHA shall maintain documentation that medical and mental health practitioners have received the training referenced in this section either from the CHA or elsewhere.

(c)  Medical and mental health care practitioners shall also receive the training mandated for employees under 40 RCNY § 5-12 or for contractors and volunteers under 40 RCNY § 5-13, depending upon the practitioner's status at CHA.

(d)  The specialized training of CHA's full- and part-time medical and mental health practitioner staff shall be completed by April 3, 2017.

(e)  CHA shall provide to the Board on an annual basis the training schedules, training curriculum and credentials of the trainers, in accordance with this section, starting on March 1, 2017 for the previous year and on the first business day of March following the end of each year thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

## Subchapter E: Screening for Risk of Sexual Victimization and Abusiveness

### § 5-17 Screening for Risk of Victimization and Abusiveness.

(a)  All inmates shall be assessed during an intake screening and upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates.

(b)  Intake screening shall ordinarily take place within 72 hours of arrival at the facility.

(c)  Such assessments shall be conducted using an objective screening instrument. Such screening instrument shall be provided to the Board.

(d)  The intake screening shall consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization:

(1)  Whether the inmate has a mental, physical, or developmental disability;

(2)  The age of the inmate;

(3)  The physical build of the inmate;

(4)  Whether the inmate has previously been incarcerated;

(5)  Whether the inmate's criminal history is exclusively nonviolent;

(6)  Whether the inmate has prior convictions for sex offenses against an adult or child;

(7)  Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming;

(8)  Whether the inmate has previously experienced sexual victimization; and

(9)  The inmate's own perception of vulnerability.

(e)  The initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the Department, in assessing inmates for risk of being sexually abusive.

(f)  Within a set time period, not to exceed 30 days from the inmate's arrival at the facility, the Department will reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the Department since the intake screening.

(g)  An inmate's risk level shall be reassessed when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness.

(a)  The Department and CHA shall train all of their employees who may have contact with inmates on:

(1)  The zero-tolerance policy for sexual abuse and sexual harassment;

(2)  How to fulfill their responsibilities under Department and CHA sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures;

(3)  Inmates' right to be free from sexual abuse and sexual harassment;

(4)  The right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment;

(5)  The dynamics of sexual abuse and sexual harassment in confinement;

(6)  The common reactions of sexual abuse and sexual harassment victims;

(7)  How to detect and respond to signs of threatened and actual sexual abuse;

(8)  How to avoid inappropriate relationships with inmates;

(9)  How to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates; and

(10)  How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities.

(b)  Such training shall be tailored to the gender of the inmates at the employee's facility. The employee shall receive additional training if the employee is reassigned from a facility that houses only male inmates to a facility that houses only female inmates, or vice versa.

(c)  All current employees who have not received such training shall be trained. The Department and CHA shall provide each of their employees with refresher training every two years to ensure that all employees know the Department's and CHA's current sexual abuse and sexual harassment policies and procedures. In years in which an employee does not receive refresher training, the Department and CHA shall provide refresher information on current sexual abuse and sexual harassment policies.

(d)  The Department and CHA shall document, through employee signature or electronic verification, that their employees understand the training they have received.

(e)  All CHA employees shall be trained by December 31, 2018.

(f)  All Department employees shall be trained by December 31, 2021.

(1)  At least 20% of all Department employees shall be trained by December 31, 2017.

(2)  At least 40% of all Department employees shall be trained by December 31, 2018.

(3)  At least 60% of all Department employees shall be trained by December 31, 2019.

(4)  At least 80% of all Department employees shall be trained by December 31, 2020.

(g)  The Department and CHA shall report to the Board, in writing and on a quarterly basis, the number of their respective employees who have been trained during that quarter in accordance with this section. The Department and CHA shall provide their first quarterly report to the Board on May 1, 2017 with respect to the previous three months (i.e., January 1, 2017 through March 31, 2017) and within 30 days of the end of each quarter thereafter, until such training has been completed.

(h)  The training of Department and CHA staff on working with inmates who are transgender or intersex shall include the psychosocial and safety needs of such persons in custody and instruction on communicating in a manner that is respectful of their gender identity. The Department and CHA shall complete such training by January 2, 2018.

(i)  The Department and CHA shall provide to the Board on an annual basis the training schedules, training curriculum and credentials of the trainers, in accordance with this section, starting on March 1, 2017 for the previous year and on the first business day of March following the end of each year thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-13 Volunteer and Contractor Training.

(a)  The Department and CHA shall ensure thateach of their volunteers and contractors who have contact with inmates have been trained on their responsibilities under the Department's and CHA's sexual abuse and sexual harassment prevention, detection, and response policies and procedures.

(c)   The Department shall offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiarily or medically appropriate. Such examinations shall be performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible. If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified medical practitioners. The Department shall document its efforts to provide SAFEs or SANEs.

(d)   Rape crisis intervention and counseling services shall be offered and delivered to inmates in the facility in which they are housed (the "Initiative"). CHA shall be responsible for the delivery of such services by qualified victim advocates. For the purposes of this section, a qualified victim advocate is an individual who has been screened for appropriateness to serve in this role and has received education concerning sexual assault and forensic examination issues in general.

(e)   As requested by the victim, a qualified victim advocate shall accompany and support the victim through the forensic medical examination process and investigatory interviews and shall provide emotional support, crisis intervention, information, and referrals.

(f)   Qualified victim advocates shall assure inmates who request these services that all communications between counselors and inmates shall be kept confidential. Consistent with 40 RCNY § 5-21(b), advocates shall also inform inmates, prior to providing services, of the extent to which their communications with inmates will be monitored and the extent to which reports of sexual abuse will be forwarded to authorities in accordance with mandatory reporting laws.

(g)   Services pursuant to this Initiative shall be offered as soon as possible after an incident of alleged sexual abuse is reported, but in no event later than one week after the report is received by the Department or CHA.

(h)   CHA shall implement this Initiative by June 1, 2018. By June 1, 2017, CHA shall provide the Board with a written plan describing:

(1)   The services to be provided;

(2)   The credentials of the qualified victim advocates who will provide these services;

(3)   Inmates' access to qualified victim advocates;

(4)   Privacy and confidentiality of in-person, written, and telephone communications between inmates and qualified victim advocates; and

(5)   Communication to inmates about these services.

(i)   CHA shall provide the Board with a quarterly report of the steps taken toward implementation of this Initiative. CHA shall provide the first quarterly report to the Board on July 5, 2017 with respect to the previous three (3) months (i.e., April 1, 2017 through June 30, 2017) and on the third business day of the month following the end of each quarter thereafter. CHA shall provide such reports to the Board until the Initiative is fully implemented.

(j)   After implementation of this Initiative, CHA shall provide annually a written report to the Board assessing the Initiative's effectiveness, which shall include the number of inmates who received such services during the year that is the subject of the report. CHA shall provide its first annual report to the Board on July 2, 2019 with respect to the preceding year (i.e., June 1, 2018 through June 1, 2019) and within 30 days of the end of each year thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-11 Policies to Ensure Referrals of Allegations for Investigations.

(a)   The Department shall ensure that an administrative or criminal investigation is completed for all allegations of sexual abuse and sexual harassment.

(b)   The Department shall have in place a policy to ensure that allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to conduct criminal investigations, unless the allegation does not involve potentially criminal behavior. The Departmentshall publish such policy on its website. The Department shall document all such referrals.

(c)   If a separate entity is responsible for conducting criminal investigations, such publication shall describe the responsibilities of both the Department and the investigating entity.

(Added City Record 11/25/2016, eff. 1/2/2017)

## Subchapter D: Training and Education

## § 5-12 Employee Training.

(2)  Has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or

(3)  Has been civilly or administratively adjudicated to have engaged in the activity described in paragraph (a)(2) of this section.

(b)  The Department shall consider any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with inmates.

(c)  Before hiring new employees who may have contact with inmates, the Department shall:

(1)  Perform a criminal background records check; and

(2)  Consistent with Federal, State, and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual abuse.

(d)  The Department shall also perform a criminal background records check before enlisting the services of any contractor or volunteer who may have contact with inmates.

(e)  The Department and CHA shall either conduct criminal background records checks at least every five years of current employees and contractors who may have contact with inmates or have in place a system for otherwise capturing such information for current employees.

(f)  The Department shall ask all applicants and employees who may have contact with inmates directly about previous misconduct described in subdivision (a) of this section in written applications or interviews for hiring or promotions and in any interviews or written self-evaluations conducted as part of reviews of current employees. The Department shall also impose upon employees a continuing affirmative duty to disclose any such misconduct.

(g)  Material omissions regarding such misconduct, or the provision of materially false information, shall be grounds for termination.

(h)  Unless prohibited by law and upon the written consent of a Department employee pursuant to New York Civil Rights Law § 50-a, the Department shall provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work.

(i)  Unless prohibited by law, CHA shall provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-09 Upgrades to Facilities and Technologies.

(a)  When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the Department shall consider the effect of the design, acquisition, expansion, or modification upon the Department's ability to protect inmates from sexual abuse.

(b)  When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, the Department shall consider how such technology may enhance the Department's ability to protect inmates from sexual abuse.

(Added City Record 11/25/2016, eff. 1/2/2017)

# Subchapter C: Responsive Planning

## § 5-10 Evidence Protocol and Forensic Medical Examinations.

(a)  The Department shall follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions.

(b)  The protocol shall be developmentally appropriate for youth where applicable, and, as appropriate, shall be adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," or similarly comprehensive and authoritative protocols developed after 2011.

§5-06 **Limits to Cross-Gender Viewing and Searches.**

(a)   The Department shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners.

(b)   The Department shall not permit cross-gender pat-down searches of female inmates, absent exigent circumstances. The Department shall not restrict female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision.

(c)   The Department shall document all cross-gender strip searches and cross-gender visual body cavity searches, and shall document all cross-gender pat-down searches of female inmates.

(d)   The Department shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Such policies and procedures shall require staff of the opposite gender to announce their presence when entering an inmate housing unit.

(e)   The Department shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status. If the inmate's genital status is unknown, it may be determined during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner.

(f)   The Department shall train security staff in how to conduct cross-gender pat-down searches, and searches of transgender and intersex inmates, in a professional and respectful manner, and in the least intrusive manner possible consistent with security needs. For purposes of these searches, unless exigent circumstances require otherwise, the Department shall make its best efforts to treat intersex and transgender inmates in accordance with their gender identity. The Department shall conduct this training in accordance with the timelines set forth in 40 RCNY § 5-12(f).

(g)   The Department shall issue a written directive to all staff incorporating the provisions of this section and provide this directive to the Board by June 1, 2017.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-07 Inmates with Disabilities and Inmates Who Are Limited English Proficient.

(a)   The Departmentshall take appropriate steps to ensure that inmates with disabilities (including, for example, inmates who are deaf or hard of hearing, those who are blind or have low vision, or those who have intellectual, psychiatric, or speech disabilities), have an equal opportunity to participate in or benefit from all aspects of the Department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment. Such steps shall include, when necessary to ensure effective communication with inmates who are deaf or hard of hearing, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. In addition, the Department shall ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities, including inmates who have intellectual disabilities, limited reading skills, or who are blind or have low vision. The Department is not required to take actions that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity, or in undue financial and administrative burdens, as those terms are used in regulations promulgated pursuant to title II of the Americans With Disabilities Act, 28 C.F.R. § 35.164.

(b)   The Department shall take reasonable steps to ensure meaningful access to all aspects of the Department's efforts to prevent, detect, and respond to sexual abuse and sexual harassment for inmates who are limited English proficient, including steps to provide interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.

(c)   The Department shall not rely on inmate interpreters, inmate readers, or other types of inmate assistants except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the inmate's safety, the performance of first-response duties under 40 RCNY § 5-26, or the investigation of the inmate's allegations.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-08 Hiring and Promotion Decisions.

(a)   The Department shall not hire or promote anyone who may have contact with inmates, and shall not enlist the services of any contractor who may have contact with inmates, who—

(1)   Has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. § 1997);

(s)  All closing memoranda shall be retained for as long as the alleged perpetrator of sexual abuse or sexual harassment is incarcerated or employed by the Department or CHA, plus five years.

(t)  The Department shall issue a written directive to all ID staff incorporating the provisions of this section and provide this directive to the Board.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-31 Evidentiary Standard for Administrative Investigations.

The Department shall impose no standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-32 Reporting to Inmates.

(a)  Following an investigation into an inmate's allegation that he or she suffered sexual abuse in a facility, the Department shall inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded.

(b)  If the Departmentdid not conduct the investigation, it shall request the relevant information from the investigative agency in order to inform the inmate.

(c)  Following an inmate's allegation that a Department or CHA staff member has committed sexual abuse against the inmate, the Department shall subsequently inform the inmate (unless the Department has determined that the allegation is unfounded) whenever:

(1)  The staff member is no longer posted within the inmate's unit;

(2)  The staff member is no longer employed at the facility;

(3)  The Department learns that the staff member has been indicted on a charge related to sexual abuse within the facility; or

(4)  The Department learns that the staff member has been convicted on a charge related to sexual abuse within the facility.

(d)  Following an inmate's allegation that he or she has been sexually abused by another inmate, the Department shall subsequently inform the alleged victim whenever:

(1)  The Department learns that the alleged abuser has been indicted on a charge related to sexual abuse within the facility; or

(2)  The Department learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility.

(e)  All such notifications or attempted notifications shall be documented.

(Added City Record 11/25/2016, eff. 1/2/2017)

# Subchapter I: Discipline

## § 5-33 Disciplinary Sanctions for Staff.

(a)  Department and CHA staff shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies.

(b)  Termination shall be the presumptive disciplinary sanction for Department and CHA staff who have engaged in sexual abuse.

(c)  Disciplinary sanctions for violations of Department and CHA policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) shall be commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories.

(d)  All terminations for violations of Department and CHA sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.

(b)  Where sexual abuse is alleged, the Department shall use investigators who have received special training in sexual abuse investigations pursuant to 40 RCNY § 5-15.

(c)  Investigators shall gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data; shall interview alleged victims, suspected perpetrators, and witnesses; and shall review prior complaints and reports of sexual abuse involving the suspected perpetrator.

(d)  When the quality of evidence appears to support criminal prosecution, the Department shall conduct compelled interviews only after consulting with DOI and/or prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution.

(e)  The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as inmate or staff. The Department shall not require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding with the investigation of such an allegation.

(f)  All investigations:

(1)  Shall include an effort to determine whether staff actions or failures to act contributed to the abuse; and

(2)  Shall be documented in written reports that include a description of the physical, testimonial, and documentary evidence, the reasoning behind credibility assessments, and investigative facts and findings.

(g)  Criminal investigations shall be documented in a written report that contains a thorough description of physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible.

(h)  Substantiated allegations of conduct that appears to be criminal shall be referred for prosecution.

(i)  The Department shall retain all written reports referenced in this section for as long as the alleged abuser is incarcerated or employed by the Department or CHA, plus five years.

(j)  The departure of the alleged abuser or victim from the employment or control of the Department or the employment of CHA shall not provide a basis for terminating an investigation.

(k)  When outside agencies investigate sexual abuse, the Department shall cooperate with outside investigators and shall endeavor to remain informed about the progress of the investigation.

(l)  The Department shall use its best efforts to conduct an initial evaluation as to whether any involved staff member should be suspended, placed on modified duty, re-assigned to a no-inmate-contact post or reassigned to a restricted-inmate-contact post pending investigation within three (3) business days after an alleged incident of sexual abuse or sexual harassment is reported to the Department (the "Referral Date"). In the event sexual abuse is alleged, the Department shall conduct such an evaluation after consulting with DOI unless doing so would pose a threat to the safety and well-being of the complainant.

(m)  The Department shall complete all investigations of sexual abuse and sexual harassment allegations no later than 90 days from the Referral Date, absent extenuating circumstances outside the Department's control that warrant an extension of this deadline (which shall be documented). The Department shall implement this subsection by the effective date of this rule provided that the Department has sufficient resources and necessary staffing.

(n)  If an incident of alleged sexual abuse is referred to DOI or the DA for investigation or a decision on immunity, the time for completion of the sexual abuse investigation shall be tolled while the other agency is investigating the matter or making a decision on immunity.

(o)  Inmates subject to alleged sexual abuse or sexual harassment shall be interviewed within 72 hours of the Referral Date, absent unusual circumstances (which shall be documented).

(p)  All interviews of staff involved in a sexual abuse or sexual harassment incident shall be completed within 30 days of any immunity grants, absent unusual circumstances (which shall be documented).

(q)  When requesting an inmate's statement or interview, the inmate shall be assured that the inmate will not be subject to any form of retaliation for providing information in connection with the investigation of alleged sexual abuse or sexual harassment. Requests for statements or interviews shall be made off the living unit and shall not be made within sight or hearing of other inmates or staff involved in the incident. Inmate interviews shall be conducted in a private and confidential setting.

(r)  At the conclusion of an investigation of alleged sexual abuse or sexual harassment, the Department shall prepare a closing memorandum summarizing the findings of the investigation. Within five (5) business days after completion of a closing memorandum, the Department shall provide a copy of it to the Board.

(d)  Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-38 Ongoing Medical and Mental Health Care for Sexual Abuse Victims.

(a)  CHA shall offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility.

(b)  The evaluation and treatment of such victims shall include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody.

(c)  CHA shall provide such victims with medical and mental health services consistent with the community level of care.

(d)  Inmate victims of sexually abusive vaginal penetration while incarcerated shall be offered pregnancy tests.

(e)  If pregnancy results from the conduct described in subdivision (d) of this section, such victims shall receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services.

(f)  Inmate victims of sexual abuse while incarcerated shall be offered tests for sexually transmitted infections as medically appropriate.

(g)  Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.

(Added City Record 11/25/2016, eff. 1/2/2017)

# Subchapter K: Data Collection and Review; Audits

## § 5-39 Sexual Abuse Incident Reviews.

(a)  The Department shall conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, including where the allegation has not been substantiated, unless the allegation has been determined to be unfounded.

(b)  Such review shall ordinarily occur within 30 days of the conclusion of the investigation.

(c)  The review team shall include upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners.

(d)  The review team shall:

(1)  Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse;

(2)  Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; or gang affiliation; or was motivated or otherwise caused by other group dynamics at the facility;

(3)  Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse;

(4)  Assess the adequacy of staffing levels in that area during different shifts;

(5)  Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff;

(6)  Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to paragraphs (d)(1) - (d)(5) of this standard, and any recommendations for improvement and submit such report to the facility head and PREA compliance manager.

(e)  The Department shall implement the recommendations for improvement, or shall document its reasons for not doing so.

(f)  The Department shall provide the Board with all sexual abuse incident review reports on a quarterly basis.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-40 Data Collection and Review.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-34 Corrective Action for Contractors and Volunteers.

(a)  Any contractor or volunteer who engages in sexual abuse shall be prohibited from contact with inmates and shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to relevant licensing bodies.

(b)  The Department shall take appropriate remedial measures, and shall consider whether to prohibit further contact with inmates, in the case of any other violation of Department sexual abuse or sexual harassment policies by a contractor or volunteer.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-35 Disciplinary Sanctions for Inmates.

(a)  Inmates shall be subject to disciplinary sanctions pursuant to a formal disciplinary process following an administrative finding that the inmate engaged in inmate-on-inmate sexual abuse or following a criminal finding of guilt for inmate-on-inmate sexual abuse.

(b)  Sanctions shall be commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories.

(c)  The disciplinary process shall consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior when determining what type of sanction, if any, should be imposed.

(d)  The Department may discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact.

(e)  For the purpose of disciplinary action, a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation.

(f)  The Department may, in its discretion, prohibit all sexual activity between inmates and may discipline inmates for such activity. The Department may not, however, deem such activity to constitute sexual abuse if it determines that the activity is not coerced.

(Added City Record 11/25/2016, eff. 1/2/2017)

## Subchapter J: Medical and Mental Care

### § 5-36 Medical and Mental Health Screenings; History of Sexual Abuse.

(a)  If the screening pursuant to 40 RCNY § 5-17 indicates that an inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, the Department shall ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.

(b)  Any information related to sexual victimization or abusiveness that occurred in an institutional setting shall be strictly limited to medical and mental health practitioners and other staff, as necessary, to inform treatment plans and security and management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law.

(c)  Medical and mental health practitioners shall obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-37 Access to Emergency Medical and Mental Health Services.

(a)  Inmate victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment.

(b)  If no qualified medical or mental health practitioners are on duty at the time a report of recent abuse is made, security staff first responders shall take preliminary steps to protect the victim pursuant to 40 RCNY § 5-24 and shall immediately notify the appropriate medical and mental health practitioners.

(c)  Inmate victims of sexual abuse while incarcerated shall be offered timely information about and timely access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate.

abuse. The Department shall maintain copies of agreements or documentation showing attempts to enter into such agreements.

(d)   The Department shall comply with this section by April 3, 2017.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-22 Third-Party Reporting.

(a)   The Department shall establish a method to receive third-party reports of sexual abuse and sexual harassment and shall distribute publicly information on how to report sexual abuse and sexual harassment on behalf of an inmate.

(b)   The Department shall include in its Visitors Handbook, and post on its website, how third parties can report sexual abuse and sexual harassment on behalf of an inmate.

(Added City Record 11/25/2016, eff. 1/2/2017)

## Subchapter G: Official Response Following an Inmate Report

### § 5-23 Staff and Agency Reporting Duties.

(a)   The Department shall require all staff to report immediately and according to Department policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.

(b)   Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in Department policy, to make treatment, investigation, and other security and management decisions.

(c)   Unless otherwise precluded by Federal, State, or local law, including the Health Insurance Portability and Accountability Act of 1996 (HIPAA), New York Mental Hygiene Law § 33.13(10) and New York Public Health Law § 18, medical and mental health practitioners shall be required to report sexual abuse pursuant to subdivision (a) of this section and to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at the initiation of services.

(d)   If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute, the Department and CHA shall report the allegation to the designated State or local services agency under applicable mandatory reporting laws.

(e)   The Department shall report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the investigators designated to investigate these allegations.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-24 Agency Protection Duties.

When the Department learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-25 Reporting to Other Confinement Facilities.

(a)   Upon receiving an allegation that an inmate was sexually abused while confined at another facility, the head of the facility that received the allegation shall notify the head of the facility where the alleged abuse occurred.

(b)   Such notification shall be provided as soon as possible, but no later than 72 hours after receiving the allegation.

(c)   The facility initially receiving such allegation shall document that it has provided such notification.

(d)   The facility head that receives such notification shall ensure that the allegation is investigated in accordance with these rules.

(Added City Record 11/25/2016, eff. 1/2/2017)

### § 5-26 Staff First Responder Duties.

(a)   Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to:

(1)  Separate the alleged victim and abuser;

(2)  Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence;

(3)  If the abuse occurred within a time period that still allows for the collection of physical evidence, request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and

(4)  If the abuse occurred within a time period that still allows for the collection of physical evidence, ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating.

(b)  If the first staff responder is not a security staff member, the responder shall be required to request that the alleged victim not take any actions that could destroy physical evidence, and then notify security staff.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-27 Coordinated Response.

By April 3, 2017, the Department shall develop a written plan to coordinate actions taken in response to an incident of sexual abuse among staff first responders, medical and mental health practitioners, DOI or ID investigators, and facility leadership.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-28 Agency Protection Against Retaliation.

(a)  The Department shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff, and shall designate which staff members or departments are charged with monitoring retaliation.

(b)  The Department shall employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations.

(c)  For at least 90 days following a report of sexual abuse, the Department shall monitor the conduct and treatment of inmates or staff who reported the sexual abuse and of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff, and shall act promptly to remedy any such retaliation. Items the Department should monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments of staff. The Department shall continue such monitoring beyond 90 days if the initial monitoring indicates a continuing need. No later than December 31, 2017, the Department shall commence such monitoring of inmates and staff who report incidents of sexual abuse.

(d)  In the case of inmates, such monitoring shall also include periodic status checks.

(e)  If any other individual who cooperates with an investigation expresses a fear of retaliation, the Department shall take appropriate measures to protect that individual against retaliation.

(f)  The Department's obligation to monitor shall terminate if the Department determines that the allegation is unfounded.

(g)  By April 3, 2017, the Department shall issue a written directive to all staff incorporating the provisions of this section and provide this directive to the Board.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-29 Post-Allegation Protective Custody.

Any use of segregated housing to protect an inmate who is alleged to have suffered sexual abuse shall be subject to the requirements of 40 RCNY § 5-19.

(Added City Record 11/25/2016, eff. 1/2/2017)

# Subchapter H: Investigations

## § 5-30 Criminal and Administrative Agency Investigations.

(a)  When the Department conducts its own investigations into allegations of sexual abuse and sexual harassment, it shall do sopromptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports.

(1)  The basis for the Department's concern for the inmate's safety; and

(2)  The reason why no alternative means of separation can be arranged.

Documentation in accordance with subdivision (d) of this section shall commence on July 1, 2017.

(e)  Every 30 days, the Department shall afford each such inmate a review to determine whether there is a continuing need for separation from the general population.

(f)  The Department shall issue a written directive to staff incorporating subdivisions (a), (b), (c), (d), and (e) of this section and provide this directive to the Board by July 1, 2017.

(g)  The Department shall provide the Board with a quarterly report detailing:

(1)  The basis for its placement of any inmate at high risk of sexual victimization in involuntary segregated housing and the reasons why no alternative means of separation could be arranged; and

(2)  The number of such inmates who remain in involuntary segregated housing for more than 30 days.

(h)  Commencing on November 1, 2017, the Department shall provide its first quarterly report to the Board with the respect to the previous three months (i.e., July 1, 2017 through September 30, 2017) and within 30 days of the end of each quarter thereafter.

(Added City Record 11/25/2016, eff. 1/2/2017)

# Subchapter F: Reporting

## § 5-20 Inmate Reporting.

(a)  The Department shall provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents.

(b)  The Department shall also provide at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of the Departmentand that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to Departmentofficials, allowing the inmate to remain anonymous upon request.

(c)  Department staff shall accept reports made verbally, in writing, anonymously, and from third parties and shall promptly document any verbal reports.

(d)  The Department shall include all the ways inmates can report sexual abuse and sexual harassment on posters in all housing units, intake and program areas, clinics and mess halls, the Inmate Handbook and Visitors Handbook, and on the Department's public website.

(e)  The Department shall provide a method for staff to privately report sexual abuse and sexual harassment of inmates.

(f)  The Department shall issue a written directive to all staff stating the method for staff to privately report sexual abuse and sexual harassment of inmates and all the ways inmates can report incidents of sexual abuse and sexual harassment. The Department shall provide this directive to the Board.

(g)  The Department shall comply with this section by April 3, 2017, except that the Department's Inmate Handbook and Visitor's Handbook shall be updated by December 31, 2017.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-21 Inmate Access to Outside Confidential Support Services.

(a)  The Department shall provide inmates with access to outside victim advocates for emotional support services related to sexual abuse by giving inmates mailing addresses and telephone numbers, including toll-free hotline numbers where available, of local, State, or national victim advocacy or rape crisis organizations. The Department shall enable reasonable communication between inmates and these organizations and agencies, in as confidential a manner as possible.

(b)  The Department shall inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws.

(c)  The Department shall maintain or attempt to enter into memoranda of understanding or other agreements with community service providers that are able to provide inmates with confidential emotional support services related to sexual

(h)   Inmates may not be disciplined for refusing to answer, or for not disclosing complete information in response to, questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section.

(i)   The Department shall implement appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this section in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-18 Use of Screening Information.

(a)   The Department shall use information from the risk screening required by 40 RCNY § 5-17 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.

(b)   The Department shall make individualized determinations about how to ensure the safety of each inmate.

(c)   In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the Department shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

(d)   The Department shall not assign a transgender or intersex inmate to a men's or women's facility based solely on the inmate's external genital anatomy.

(e)   A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration.

(f)   Placement and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate.

(g)   Transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.

(h)   The Department shall notify the Board, in writing, of each placement of a transgender or intersex inmate, all information considered in making the determination and the reasons for the housing determination. The Department shall provide the Board with such information commencing on January 5, 2017 (with respect to the previous two-week period, i.e., December 19, 2016 - December 31, 2016) and within two (2) business days following the end of each two-week period thereafter.

(i)   The Department shall implement this section by the effective date of this rule provided the Department has sufficient resources and necessary staffing.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-19 Protective Custody.

(a)   Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If the Department cannot conduct such an assessment immediately, the Department may hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment.

(b)   Inmates placed in segregated housing for this purpose shall have access to programs, privileges, education, and work opportunities to the extent possible. If the Department restricts access to programs, privileges, education, or work opportunities, the facility shall document:

(1)   The opportunities that have been limited;

(2)   The duration of the limitation; and

(3)   The reasons for such limitations.

Documentation in accordance with subdivision (b) of this section shall commence on July 1, 2017.

(c)   The Department shall assign such inmates to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.

(d)   If an involuntary segregated housing assignment is made pursuant to subdivision (a) of this standard, the Department shall clearly document:

(17)   If the alleged perpetrator is a staff person, whether the person declined an offer of use immunity pursuant to Mayor's Executive Order No. 16 and, if so, whether that person was subject to discipline as a result;

(18)   Whether DOI assumed the investigation, and if so, the status of the investigation (e.g., pending; referral made to a DA's Office, referred back to the Department, etc.);

(19)   Whether the allegation of staff-on-inmate or inmate-on-inmate sexual abuse was referred to a DA's Office, including whether that DA's Office declined to prosecute, and if the staff perpetrator was prosecuted, the outcome;

(20)   Whether the allegation was referred for disciplinary action, including (a) whether the Department's Trials & Litigation Division declined to file disciplinary charges, or if disciplinary charges were filed, the outcome; and (b) whether the alleged staff-member perpetrator resigned in lieu of charges or as part of a negotiated plea.

(e)   Unless otherwise precluded by law, CHA will assist the Department in collecting the data enumerated in subdivision (d) of this section.

(f)   The Department shall provide to Board the data enumerated in subdivision (d) of this section semiannually, commencing on August 1, 2017 (for the period January 1, 2017 - June 30, 2017) and within 45 days of the end of each six-month period thereafter. The Department shall continue to update data in these reports regarding each alleged incident pending its final outcome.

(g)   The Department shall review this incident data in order to assess and improve the effectiveness of its sexual abuse and sexual harassment prevention, detection, and response policies, practices, and training, including by:

(1)   Identifying problem areas and trends;

(2)   Taking corrective action on an ongoing basis; and

(3)   Including in a semiannual assessment report to the Board its findings and corrective actions for each facility, as well as the Department as a whole.

(h)   Such semiannual assessment report shall also include a comparison of the current six (6) months' data and corrective actions with those from the prior six (6) months and shall provide an assessment of theDepartment's progress in addressing sexual abuse and sexual harassment.

(i)   Such semiannual assessment reports shall be approved by the Commissioner of the Department, submitted to the Board, and made readily available on the Department's website.

(j)   The Department may redact specific material from semiannual assessment reports when publication would present a clear and specific threat to the safety and security of a facility, or would present privacy or other legal considerations, but must indicate the nature of the material redacted.

(k)   The Department shall provide its first semiannual assessment report to the Board on August 1, 2017 (for the period January 1, 2017 - June 30, 2017) and within 45 days of the end of each six-month period thereafter.

(l)   The Department shall ensure that all data collected pursuant to this section is securely retained.

(m)   Before making data collected pursuant to this section publicly available, the Department shall remove all personal identifiers.

(n)   The Department shall maintain all data collected pursuant to this section for at least 10 years after the date of the initial collection unless Federal, State, or local law requires otherwise.

(Added City Record 11/25/2016, eff. 1/2/2017)

## § 5-41 Audits

The Department shall provide the Board with a copy of all audit reports, responses to audit reports, audit correction action plans, appeals of audit findings, and decisions on appeal, submitted to PREA-certified auditors pursuant to PREA Standard § 115.93 and PREA Standards §§ 115.401 through 115.405. The Department shall provide such material to the Board within two (2) business days after its submission to the auditors.

(Added City Record 11/25/2016, eff. 1/2/2017)

# Subchapter L: Variances

## § 5-42 Variances.

(a)   The Department shall collect accurate, uniform data for each alleged incident of sexual abuse at facilities (and in transport vehicles used to transport inmates) using a standardized instrument and definitions. For this purpose, the Department shall use the definitions of and related to inmate-on-inmate and staff-on-inmate sexual abuse set forth in subdivisions (a), (b), (c) and (d) of 40 RCNY § 5-02. The Department shall provide the Board with such standardized instrument for its review at least 30 days before first providing the Board with the incident data specified in subdivision (d) of this section.

(b)   The Department shall maintain, review and collect data pursuant to subdivisions (a), (d), (f) and (g) of this section from all incident-based documents and databases, including reports, investigation files, and sexual abuse incident reviews.

(c)   Within two (2) years of the Effective Date of these rules, the Board will reassess whether the data enumerated in this section is adequate to ensure effective monitoring of the Department's and CHA's compliance with the rules embodied in this Chapter.

(d)   The Department shall provide the Board with the following data regarding each alleged incident of sexual abuse:

(1)   Date, time and location of alleged incident;

(2)   Nature of alleged sexual abuse (e.g., officer-on-inmate; CHA staff-on-inmate; contractor- or volunteer-on-inmate; inmate-on-inmate, etc.);

(3)   Type of alleged sexual abuse (as defined in subdivisions (a), (b), (c) and (d) of 40 RCNY § 5-02);

(4)   Demographics

(i)   Gender of alleged victim (i.e., male or female);

(ii)   Gender of alleged perpetrator (i.e., male or female);

(iii)   Age of alleged victim (i.e., under age 18, 18 - 21, or over 21);

(iv)   Age of alleged perpetrator (if an inmate) (i.e., under age 18, 18 - 21, or over 21) ;

(v)   Race/ethnic origin of alleged victim (i.e., White-not of Hispanic origin; Black-not of Hispanic origin; Hispanic or Latino; other);

(vi)   Whether the alleged victim is known to be transgender or intersex;

(vii)   Whether the alleged victim is known to be lesbian, gay, or bi-sexual;

(viii)   Whether the alleged victim is known to have any mental, physical or developmental disabilities;

(5)   Who reported the incident, if known (e.g., alleged victim; victim's family member, inmate other than victim; Department or CHA staff, etc.);

(6)   Method of reporting (e.g., via hotline, verbally or in writing, 311, etc.);

(7)   Video camera surveillance available (yes/no);

(8)   DNA evidence available (yes/no);

(9)   Other physical evidence available (yes/no);

(10)   Rape kit administered, declined or not applicable;

(11)   Date investigation was opened;

(12)   Date investigation was closed (e.g., by filing a closing memorandum or otherwise);

(13)   Whether the incident was substantiated, unsubstantiated or unfounded;

(14)   Whether the alleged perpetrator and alleged victim were separated during the investigation;

(15)   If the alleged perpetrator is a staff person, whether during the investigation, or after it was closed, the staff person was suspended, placed on modified duty, assigned to a no-inmate contact post, assigned to a restricted-inmate contact post, or placed on administrative leave;

(16)   If the alleged perpetrator is a staff person, whether previous allegations of sexual abuse or sexual harassment were lodged against that person;

exhibit-n

THIS EXHIBIT IS ALL ABOUT THE MENUE FROM GRVC HOUSING UNITS AND AS YOU CAN PLAINYLY SEE THAT NO HALAL WAS SERVED TO PLAINTIFF OR THE TWO OTHER INMATES TREVOR FORREST AND DAQUAN REYES. THIS HURT THE PLAINTIFF SO BAD THAT HE COMMITTED NUMEROUS SUICIDES TO HIS FAILURES BUT REMAINED SCARED TO THIS DAY BEHIND NOT HAVING THE HALAL MEALS HE WAS RAISED UP ON IN HIS MUSLIM HOUSEHOLD.

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/20/2023

**LUNCH**

**FACILITY:**

| HOUSING AREA / MENU ITEM | SERVING PORTION SIZE | Number of Pans/Servings per Pan TODAY'S T/C | G.P. | HALAL | KOSHER | DIETS |
|---|---|---|---|---|---|---|
| **GEN. POPULATION** | | | | | | |
| Vegetarian Chili | 8 oz | | 159 | | | |
| Brown Rice | 10 oz | | 160 | | | |
| Green Beans | 4 oz | | 160 | | | |
| Whole Wheat Bread | 2 Slices | 1A | | | | |
| Fresh Fruit | 1 each | | | | | |
| **HALAL** | | | | | | |
| Vegetarian Chili | 8 oz | 6 | 159 | | | |
| Brown Rice | 10 oz | 6 | | | | |
| Green Beans | 4 oz | | 1 | | | |
| Whole Wheat Bread | 2 Slices | | | | | |
| Fresh Fruit | 1 each | | | | | |
| **KOSHER** | | | | | | |
| K Stuffed Shells | 6 oz | | | | | |
| K Sauce | 2 oz | | | | | |
| K Mixed Vegetables | 4 oz | | | | | |
| K Matzohs | 3 each | | | | | |
| Fresh Fruit | 1 each | 2A | 8 | 7 | 1 | 1 |

### THERAPEUTIC DIETS

| | Carbohydrate Controlled | Modified Consistency | Renal | Full Liquid | Pureed | |
|---|---|---|---|---|---|---|
| Vegetarian Chili | 3 oz | 8 oz | Hot Cereal | Pureed Meat | | |
| Brown Rice | 4 oz | 10 oz | Pudding | Puree Starch | | |
| Green Beans | 4 oz | 8 oz | 4 oz | Milk | Puree Vegetable | |
| Fresh Fruit | 1 each | 1 each (No Apple) | 1 each | Tea | Tea | |
| Simmered Lentils | | | 3 oz | Sugar | | |
| Rice | | | 4 oz | | | |
| Gravy | | | 1 oz | | | |
| Whole Wheat Bread | 1 Slice | 2 Slices | 2 Slices | | | |

**Food Service Assigned Staff** — Meal Components and quantity Verifications

**Signature**

# NEW YORK CITY DEPARTMENT OF CORRECTION
## FOOD SERVICE PORTION CONTROL SHEET

**2/19/2022**

**LUNCH** **TODAY'S T/C** **FACILITY: G.P.** GRVC

| HOUSING AREA / MENU ITEM | PORTION SIZE | Number of Pans/Servings per | | |
|---|---|---|---|---|
| **GEN. POPULATION** | | G.P. | HALAL | KOSHER |
| BBQ Chicken Leg | 1 each | | | |
| Yellow Rice | 6 oz | | | |
| Steamed Brussel Sprouts | 4 oz | | | |
| Crushed Pineapple | 4 oz | | | |
| Whole Wheat Bread | 2 slices | 1A | 6 | 1 |
| **HALAL** | | | | |
| HC BBQ Chicken Leg | 1 each | | | |
| Yellow Rice | 6 oz | | | |
| Steamed Brussel Sprouts | 4 oz | | | |
| Crushed Pineapple | 4 oz | | | |
| Whole Wheat Bread | 2 slices | | 6 | 6 |
| **KOSHER** | | | | |
| K Chicken Cacciatore | 4 oz | | | |
| K Sauce | 2 oz | | | |
| K Elbow Macaroni | 4 oz | | | |
| K Green Beans | 4 oz | | | |
| K Matzohs | 3 each | 2A | 8 | 7 |
| K Fresh Fruit | 1 each | | | |

**THERAPEUTIC DIETS**

| MENU ITEM | Carbohydrate Controlled | Modified Consistency | Renal | Full Liquid | Pureed |
|---|---|---|---|---|---|
| BBQ Chicken Leg | 1 each | 1 each | 1 each | Hot Cereal | Pureed Meat |
| Baked Chicken Leg | | | | | |
| Yellow Rice | 4 oz | 6 oz | | Pudding | Puree Starch |
| Steamed Brussel Sprouts | 4 oz | 8 oz | | Milk | Puree Vegetable |
| Gravy | | | 1 oz | | |
| Green Beans | | | 4 oz | Apple Sauce | Milk |
| Crushed Pineapple | 4 oz | 4 oz | 4 oz | Fruit Drink | Fruit Drink |
| Whole Wheat Bread | 1 slice | 2 slices | 2 slices | Supplement | Margarine |

*Meal Components and quantity Verifications*

Food Service Assigned Staff

Signature OnyAna

# NEW YORK CITY DEPARTMENT OF CORRECTION
## FOOD SERVICE PORTION CONTROL SHEET

| DATE: | 02/9/2023 | | | FACILITY: | | |
| --- | --- | --- | --- | --- | --- | --- |
| HOUSING AREA | | LUNCH | | G.P. | HALAL | KOSHER | DIETS |



| MENU ITEM GEN. POPULATION | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | FACILITY: G.P. | HALAL | KOSHER | DIETS |
| --- | --- | --- | --- | --- | --- | --- |
| Egg Salad | 6 oz | 6 | 6 | | | |
| Pasta Salad | 6 oz | | | | | |
| Pickled Beets | 4 oz | | | | | |
| Carrot & Celery Salad | 4 oz | | | | | |
| Fresh Fruit | 1 each | | | | | |
| Whole Wheat Bread | 2 Slices | | | | | |



# NEW YORK CITY DEPARTMENT OF CORRECTION
## FOOD SERVICE PORTION CONTROL SHEET

DATE: 02/13/2023

DINNER

FACILITY: **GRVC**

| HOUSING AREA | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | | | | |
|---|---|---|---|---|---|---|
| | | G.P. | HALAL | KOSHER | DIETS | |
| **MENU ITEM** | | | | | | |
| **GEN. POPULATION** | | | | | | |
| Vegetarian Chili | 8 oz | | | | | |
| Brown Rice | 10 oz | | | | | |
| Steamed Cabbage | 4 oz | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |
| Crushed Pineapple | 4 oz | | | | | |
| **HALAL** | | | | | | |
| Vegetarian Chili | 8 oz | | | | | |
| Brown Rice | 10 oz | | | | | |
| Steamed Cabbage | 4 oz | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |
| Crushed Pineapple | | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/15/2023

**FACILITY: GRVC**

| HOUSING AREA | | DINNER | | | | |
|---|---|---|---|---|---|---|
| | SERVING PORTION SIZE | TODAY'S T/C | G.P. | HALAL | KOSHER | DIET |
| **MENU ITEM** | | Number of Pans/Servings per Pan | | | | |
| **GEN. POPULATION** | | | | | | |
| Turkey- Roni | 14 oz | | | | | |
| Steamed Carrots | 4 oz | | | | | |
| Chilled Peaches | 4 oz | | | | | |
| Whole Wheat Bread | 2 Slices | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

| DATE: 02/11/2023 | HOUSING AREA | | LUNCH | | FACILITY: G.P. | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | HALAL | KOSHER | DIET |
| | **MENU ITEM** GEN. POPULATION | **SERVING PORTION SIZE** | **TODAY'S T/C** | **Number of Pans/Servings per Pan** | | | | |
| | Chicken Patties | 2 each | | | | | | |
| | Catsup | 1 oz | | | | | | |
| | Mashed Fried Potato MASH POTATO | 100z | 6 | 6 | | | | |
| | Green Beans | 4 oz | | | | | | |
| | Sliced Cucumbers | 4 oz | | | | | | |
| | Whole Wheat Bread | 2 slices | | | | | | |

1A

# NEW YORK CITY DEPARTMENT OF CORRECTION
## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/14/2023

**HOUSING AREA:** GEN. POPULATION

**LUNCH**

**FACILITY:**

| MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C — Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIETS |
|---|---|---|---|---|---|---|
| Veal Patties | 2 each | | | | | |
| Catsup | 1 oz | | | | | |
| Mashed Potatoes | 10 oz | | | | | |
| Mixed Vegetables | 4 oz | | | | | |
| Mixed Green Salad | 4 oz | 6 | | | | |
| Whole Wheat Bread | 2 Slices | | | | | |
| **HALAL** | | | | | | |
| HL Veal Patties | 2 each | 6 | 6 | | | |
| Catsup | 1 oz | | | | | |
| Mashed Potatoes | | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE: 2/10/2023**

**LUNCH**

**FACILITY: G.P.**

| HOUSING AREA | MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C | | | | |
|---|---|---|---|---|---|---|---|
| | | | Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIETS |
| | **GEN. POPULATION** | | | | | | |
| | Meatloaf | 2 slices | | | | | |
| 1A | Corn | 4 oz | | | | | |
| | Steamed Spinach | 4 oz | | | | | |
| | Mixed Green Salad | 4 oz | 6 | 6 | | | |
| | Whole Wheat Bread | 2 slices | | | | | |
| | **HALAL** | | | | | | |
| | H/L Meatloaf | 2 slices | | | | | |
| | Corn | 4 oz | | | | | |
| | Steamed Spinach | 4 oz | | | | | |
| | Mixed Green Salad | 4 oz | | | | | |
| | Bread | 2 slices | | | | | |



## NEW YORK CITY DEPARTMENT OF CORRECTION

### FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 2/8/2023

**HOUSING AREA**

**LUNCH**

**FACILITY:** G.P.

| MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C | G.P. | HALAL | KOSHER | DIETS |
|---|---|---|---|---|---|---|
| **GEN POPULATION** | | Number of Pans/Servings per Pan | | | | |
| Pizza Pockets | 2 each | | | | | |
| Steamed Carrots | 4 oz | | | | | |
| Sliced Cucumbers | 4 oz | 6 | 6 | | | |
| Crushed Pineapple | 4 oz | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/10/2023

**HOUSING AREA**

**DINNER**

**FACILITY: GRVC**

| MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIET |
|---|---|---|---|---|---|---|
| **GEN. POPULATION** | | | | | | |
| Baked Battered Fish | 2 each | | | | | |
| Tartar Sauce | ½ oz | | | | | |
| Lyonnaise Potatoes | 10 oz | 6 | 6 | | | |
| Mixed Vegetables | 4 oz | | | | | |
| Chilled Peaches | 4 oz | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/13/2023

**LUNCH**

**FACILITY:**

| HOUSING AREA | | | | | |
|---|---|---|---|---|---|
| MENU ITEM GEN POPULATION | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | | | |
| | | G.P. | HALAL | KOSHER | DIET |
| Garden Burger | 2 each | | | | |
| Catsup | 1 oz | | | | |
| Scalloped Potatoes | 8 oz | | | | |
| Sliced Cucumbers | 4 oz | | | | |
| Fresh Fruit | 1 each | | | | |
| Whole Wheat Bread | 2 slices | 6 | 6 | / | / |



# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/16/2023

**HOUSING AREA** — **LUNCH** — **FACILITY:**



| MENU ITEM GEN. POPULATION | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIETS |
|---|---|---|---|---|---|---|
| Tuna Salad | 6 oz | 6 | 6 | | | |
| Pasta Salad | 6 oz | | | | | |
| Pickled Beets | 4 oz | | | | | |
| Cole Slaw | 4 oz | | | | | |
| Fresh Fruit | 1 each | | | | | |
| Whole Wheat Bread | 2 Slices | | | | | |
| HALAL | 6 oz | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET



**02/12/2023**

**LUNCH**

**FACILITY:** G.P.

| HOUSING AREA MENU ITEM | PORTION SIZE | TODAY'S T/C Number of Pans/Servings | G.P. | HALAL | KOSHER | DIET |
|---|---|---|---|---|---|---|
| **GEN. POPULATION** | | | | | | |
| Jerk Chicken Leg | 1 each | 1A | 6 | 6 | / | / |
| Steamed Greens | 4 oz | | | | | |
| Fresh Fruit | 1 each | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |
| **HALAL** | | | | | | |
| H. Jerk Chicken Leg | 1 each | | | | | |
| Candied Yams | 6 oz | | | | | |
| Steamed Greens | 4 oz | | | | | |
| Fresh Fruit | 1 each | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/12/2023

**DINNER**

**FACILITY: GRVC**

| HOUSING AREA | MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C — Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIETS |
|---|---|---|---|---|---|---|---|
| | **GEN. POPULATION** | | | | | | |
| | Jamaican Vegetable Patty | 2 each | | | | | |
| | Carrot & Celery Salad | 4 oz | | | | | |
| | Chilled Pears | 4 oz | 6 | 6 | | | |
| | Whole Wheat Bread | 2 slices | | | | | |



# NEW YORK CITY DEPARTMENT OF CORRECTION

## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/11/2023

**FACILITY: GRVC**

**DINNER**

| HOUSING AREA | MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C | Number of Pans/Servings per Pan | | | |
|---|---|---|---|---|---|---|---|
| | | | | G.P. | HALAL | KOSHER | DIETS |
| | **GEN. POPULATION** | | | | | | |
| | Chili Con Carne | 8 oz | | | | | |
| | Brown Rice | 10 oz | | | | | |
| | Steamed Cabbage | 4 oz | | | | | |
| | Fresh Fruit | 1 each | | | | | |
| | Whole Wheat Bread | 2 slices | | | | | |
| | **HALAL** | | | | | | |
| | HL Chili Con Carne | 8 oz | | | | | |
| | Brown Rice | | | | | | |
| | Steamed Cabbage | 10 | | | | | |

# NEW YORK CITY DEPARTMENT OF CORRECTION
## FOOD SERVICE PORTION CONTROL SHEET

**DATE:** 02/2/2023

**HOUSING AREA**

DINNER

**FACILITY:** GRVC

| MENU ITEM GEN. POPULATION | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIET |
|---|---|---|---|---|---|---|
| Curry Flavored Chicken Leg | 1 each | | | | | |
| Candied Yams | 6 oz | | | | | |
| Steamed Spinach | 4 oz | | | | | |
| Carrot & Celery Salad | 4 oz | | | | | |
| Whole Wheat Bread | 2 Slices | 7 | 7 | | | |
| **HALAL** | | | | | | |
| HL Curry Flavored Chicken Leg | 1 each | | | | | |
| Candied Yar | 6 oz | | | | | |
| Steamed S | 4 oz | | | | | |

**NEW YORK CITY DEPARTMENT OF CORRECTION**
**FOOD SERVICE PORTION CONTROL SHEET**

DATE: 02/8/2023

FACILITY: CRVC

## HOUSING AREA — DINNER

| MENU ITEM | SERVING PORTION SIZE | TODAY'S T/C Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIETS |
|---|---|---|---|---|---|---|
| **GEN. POPULATION** | | | | | | |
| Pepper Steak | 8 oz | | | | | |
| Yellow Rice | 10 oz | | | | | |
| Green Beans | 4 oz | | | | | |
| Fresh Fruit | 1 each | | | | | |
| Whole Wheat Bread | 2 slices | 6 | | | | |
| **HALAL** | | | | | | |
| H.L Pepper Steak | 8 oz | | | | | |
| Yellow Rice | 10 oz | | | | | |
| Green Beans | 4 oz | | | | | |
| Fresh Fruit | 1 each | | | | | |
| Whole Wheat Bread | 2 slices | | | | | |
| **KOSHER** | | | | | | |
| K Roast Turkey | 4 oz | | | | | |
| K Gravy | 2 oz | | | | | |
| K Candied Sweet Potatoes | 4 oz | | | | | |
| K Broccoli | 4 oz | | | | | |
| K Matzohs | 3 each | | | | | |
| Fresh Fruit | 1 each | | | | | |

## THERAPEUTIC DIETS

| | Carbohydrate Controlled | Modified Consistency | Renal | Full Liquid | Pureed | |
|---|---|---|---|---|---|---|
| Pepper Steak | 8 oz | 6 oz | 3 oz | Apple Sauce | Puree Fruit | |
| Yellow Rice | 4 oz | 10 oz | 4 oz | Hot Cereal | Hot Cereal | |
| Green Beans | 4 oz | 8 oz | 4 oz | Pudding | Milk | |
| Fresh Fruit | 1 each | 1 each (No Apple ) | 1 each | Milk | Margarine | |
| Whole Wheat Bread | 1 slices | 2 slices | 2 slices | Coffee or Tea | Coffee or Tea | |
| | | | | Supplement | Sugar | |

Meal Components and quantity Verifications

Food Service Assigned Staff

Signature MCLEGGAN/AGEDA

# NEW YORK CITY DEPARTMENT OF CORRECTION
## FOOD SERVICE PORTION CONTROL SHEET



**DATE:** 11/24/2020 **LUNCH** **TODAY'S T/C** **FACILITY:** G.R.V.C.

**HOUSING AREA** 2A 6 6

| MENU ITEM | SERVING PORTION SIZE | Number of Pans/Servings per Pan | G.P. | HALAL | KOSHER | DIET |
|---|---|---|---|---|---|---|
| **GEN. POPULATION** | | | | | | |
| Turkey-Roni | 14 oz | | | | | |
| Carrots | 4 oz | | | | | |
| Wheat Bread | 2 slices | | | | | |
| Peaches | 4 oz | | | | | |
| **HALAL** | | | | | | |
| Chicken | 14 oz | | | | | |
| Carrots | 4 oz | | | | | |
| Wheat Bread | 2 slices | | | | | |
| Peaches | 4 oz | | | | | |
| **KOSHER** | | | | | | |
| Chicken | 4 oz | | | | | |
| Carrots | 2 oz | | | | | |
| Pudding | 4 oz | | | | | |
| Carrots | 4 oz | | | | | |
| Carrots | 4 oz | | | | | |
| Breads | 3 each | | | | | |
| Fruit | 1 each | | | | | |

## THERAPEUTIC DIETS

| MENU ITEM | Carbohydrate Controlled | Modified Consistency | Renal | Full Liquid | Pureed |
|---|---|---|---|---|---|
| Chicken and Ground Turkey | 8 oz | 14 oz | 3 oz | Hot Cereal | Pureed Meat |
| | | | 1 oz | Pudding | Puree Starch |
| Carrots | 4 oz | 8 oz | 4 oz | Milk | Puree Vegetable |
| | | | 4 oz | Apple Sauce | Milk |
| Wheat Bread | 1 slice | 2 slices | 2 slices | Fruit Drink | Fruit Drink |
| Peaches | 4 oz | 4 oz | 4 oz | Supplement | Margarine |
| | | | | Tea | Tea |
| | | | | Sugar | |

**Meal Components and quantity Verifications**

Service Assigned Staff

Certified

Kwuine Thompson
349-19-01450
G.R.V.C
09-09 Hazenst
E. Elmhurst NY, 11370

Retail

U.S. POSTAGE PAID
PM
ASTORIA, NY 11103
MAR 09, 2023

10007

$17.95

RDC 20

R2305M144952-02

PRO-Se Intake unit




united states southern District courts

500 Pearl St

NY, NY, 1000.7

RECEIVED
MAR 10 2023
PRO SE OFFICE



CERTIFIED MAIL

7022 0410 0002 6386 1787



PRIORITY MAIL
★ ★ ★
TRACKED
★ ★ ★
INSURED
★

UNITED STATES POSTAL SERVICE.
For Domestic and International Use    Label 107R, May 2014

