# The Atlantic Foundation

June 11, 2025

**BY ECF**

The Honorable Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Thompson v. Lemon, et al.*, No. 23-cv-2102 (JPO) (KHP)
              *Thompson v. City of New York, et al.*, No. 22-cv-1458 (JPO) (KHP) [related]

Dear Judge Parker:

      I respectfully submit the following on behalf of Plaintiff Kwaine Thompson in reply to Defendant City of New York's letter-response, ECF No. 123 ("Response"), to the concerns first raised in Plaintiff's June 5, 2025 pre-motion letter, ECF No. 121, consistent with Your Honor's June 9, 2025 order. *See* ECF No. 122 (order scheduling conference).[1]

      As previously explained, following an unsuccessful attempt to visit Mr. Thompson, Plaintiff wrote to the Court regarding Mr. Thompson's right and ability to access counsel and ability to assist in the preparation/defense of his litigation. That same morning, DOC staff advised counsel that the denial was based on an ostensible expiration period for legal passes, which remains nowhere to be found in DOC policies, rules, or on their website. It represents the latest in a string of incidents that all but confirm the Department's fraught and perplexing process of screening attorneys for inmate visits. On top of that, the Department's so-called policy on legal passes has changed over the past few months. *Compare* Ex. 1 (in-person applications only), *with* Ex. 2 (accepting email applications).

      Of Plaintiff's original requests, *see* ECF No. 121 at 1, two remain unresolved. Plaintiff alternatively makes a separate, new request for leave to supplement his complaint to add another cause of action and an action in equity arising from violations of Plaintiff's constitutional rights based on Defendant's policies/practices and latest conduct in this litigation. Assuming Defendant remains steadfast in its defense of the Legal Pass office, in the alternative, Plaintiff respectfully requests leave to supplement his complaint to assert an action in equity and an order for preliminary injunction.

---

[1] Filed concurrently herewith is the Declaration of Sami Elamad, dated June 11, 2025, which includes exhibits as well. Any references to "Decl." and "Ex." Refer to that submission.

**Hon. Katharine Parker**
Jun. 11, 25
Page 2 of 5

## Introduction

From the start, it's important to note it is unrealistic for any other DOC detainee to complete this type of marathon simply to have a meeting/communication with a lawyer. As much as Defendant would like to frame this dispute as the result of an overzealous lawyer, that's could not be farther from the truth. Put differently, there's nothing to gain for a pro bono lawyer for the hours spent making the trek to DOC's East Elmhurst offices. And more: That's especially so in light of the resources and effort expended making arrangements for a visit, finding volunteer willing staff, driving a rental car out to Queens, New York. .

### *Corrections to the Record*

Faced with a mountain of serious allegations and evidence, Defendant is left with trying its hand at after-the-fact reasons that never before existed. The proffered reasoning fails under even the smallest amount of scrutiny. Because the City goes out of its way to rewrite the facts, Plaintiff's counsel submits an accompanying declaration with this letter with multiple exhibits.

Defendant offers a revisionist history that has bears no relation to reality. Nor does the counterfactual account even try to grapple with the facts, particularly documentary evidence and contemporaneous accounts, which consistently refute their version of events. Properly framed, then, the record forcefully rejects Defendant's misleading framing of this as a mere meet-and-confer dispute among counsel.

| **Plaintiff's original contention** | **Defendant's response** | **Plaintiff's response in clarification/correction** |
|---|---|---|
| DOC staff arbitrarily process/screen requests for legal passes | Plaintiff's counsel "submitted an expired certificate of good standing," which is what "led to a second-level review, and caused a delay." ECF No. 123 at 2. | DOC staff never mentioned anything related to an expired certificate despite extensive correspondence, over the past six months. *See* Decl. ¶¶ 6-12. |
| Plaintiff's counsel faced multiple incomprehensible complications with obtaining a legal pass despite giving notice to DOC of the upcoming visit | "[T]his is a matter that could have been worked out between the parties had plaintiff met and conferred" ECF No. 123 at 1. | <ul><li>Plaintiff's counsel informed Defendant of the visits weeks before any trip to Rikers (Ex. 5)</li><li>Defense counsel did not reply until Plaintiff expressed his intention to file something with the Court (Ex. 5)</li></ul> |
| DOC's policy/practices have no basis in practice, history, or legitimate authority. | Mr. Accarino (defense counsel) promptly intervened and resolved the situation. | DOC denied an attorney-assistant application, citing a 4-8 week waiting period (Ex. |

## Right/Access to Counsel

It is hornbook constitutional law that, "though his rights may be diminished… a prisoner is not wholly stripped of constitutional protection" once in custody. *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). "There is no iron curtain drawn," after all, "between the Constitution and the prisons of this country." *Id*. In the Second Circuit, a long line of have recognized an inmate's right to access the courts and counsel, including the right to privileged communication and to petition the government for redress. *See, e.g., In re Richard Roe, Inc.*, 68 F.3d 38, 39-40 (2d Cir. 1995). Take, for instance, the right to petition the government for redress: it stands as one "the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967); *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988) (same).

Thompson maintains constitutional right of access to the courts, as an inmate, which also gives rise to a number of other "derivative rights" under the Constitutions. *See Griffin v. Corp. Couns.*, No. 22-CV-8521 (LTS), 2022 WL 16926117, at *7 (S.D.N.Y. Nov. 14, 2022). Among other things, "the right to counsel and the right of access to the courts are interrelated, since the provision of counsel can be a means of accessing the courts" within the context of the Sixth Amendment. *Id*. at *8 (cleaned up) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).

As relevant here, "obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy." *Franco*, 854 F.2d 584 at 588-69 (citing, *inter alia, Morello v. James*, 810 F.2d 344, 347 (2d Cir.1987)). Not only that, where civil rights are implicated, such actions "are of fundamental importance in our constitutional scheme." *Bounds v. Smith*, 430 U.S. 817, 827-29 (1977) (cleaned up) (citations omitted); *see also Lonegan v. Hasty,* 436 F.Supp.2d 419, 434 (E.D.N.Y. 2006). Putting all of that together, "[t]he touchstone of due process is protection against arbitrary action of the government." *Wolff*, 418 U.S at 558.

Here, Defendant's continuing violations of Plaintiff's constitutional rights raises major concerns that are in dire need of judicial review and oversight. Either way, should Defendant refuse to provide access for counsel throughout the pendency of these proceedings, in the alternative, Plaintiff respectfully requests leave to supplement his complaint and apply for a preliminary injunction.

For one thing, a plaintiff may add or supplement his pleadings freely with leave of court. *See* Fed. R. Civ. P. 15(d). As opposed to commencing another, new action, it's likely more economic, effective if Plaintiff supplements his pleadings under these proceedings. Thus, Plaintiff modifies his original pre-motion letter request(s): absent access during the pendency of these proceedings, Plaintiff seeks to supplement the complaint and move for a preliminary injunction, on various grounds.

For another, the Department does not even follow it's own prescribed rules when it comes to the screening process—whether the online "general guidance" or local statute, i.e., Rules of

Hon. Katharine Parker
Jun. 11, 25
Page 4 of 5

the City of New York ("RCNY"). Those rules require the Department to for the very minimum in verification standards. Regardless, here, DOC does not even follow its own rules. *See* 40 RCNY § 1-08. At best, the Department's conduct and practices are arbitrary; at worst, the Department's conduct violates inmates' basic constitutional rights.

Indeed, "under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020). Thus, an agency's failure to follow to the rules can give rise to various claims under federal and state law. For example, a plaintiff may invoke the court's equitable powers to enjoin a defendant from further violating his civil rights. *See id*.

Notwithstanding, should Plaintiff (or his counsel) encounter further complications in access to counsel and/or the courts, Plaintiff respectfully requests the Court impose sanctions under its inherent authority and applicable law. Federal courts are uniquely empowered in this context—"courts have 'well-acknowledged inherent power to levy sanctions in response to abusive litigation practices.'" *Bryant v. City of Hartford*, No. 3:17-CV-1374 (VAB), 2020 WL 3619789, at *4 (D. Conn. July 2, 2020) (quoting *DLC Management Corp. v. Town of Hyde Park*, 163 F. 3d 124, 136 (2d Cir. 1998)).

**Preservation Order**

To obtain a preservation order, the movant need not show that the opposing party will destroy evidence. *See Houston v. Coveny*, 2017 WL 972124, at *1 (W.D.N.Y. Mar. 13, 2017) (cleaned up). Rather, Plaintiff needs to only show that evidence is "in some danger of being destroyed." *See id*. For example, where an opposing party has lost or destroyed evidence in the past or had inadequate retention procedures in place. *See, e.g., Treppel v. Biovail Corp.,* 233 F.R.D. 363, 371 (S.D.N.Y. 2006). Courts in this District balance various considerations. *See, e.g., Toussie v. Allstate Ins. Co.,* No. 15-CV-5235, 2018 WL 2766140, at *7 (E.D.N.Y. June 8, 2018).

All things considered, the standard in determining whether to issue a preservation order is not particularly demanding. In this case, there are multiple examples of Defendant's conduct that confirm the risk:

- *Lost/destroyed evidence.* There was not a lot of video or verifiable video/photographic evidence from Plaintiff's detention, even after attempts to search repositories in the related action.

- Of video offered, some footage was choppy and failed to provide an accurate account of the alleged incident. *See Thompson*, 22-cv-1458, ECF No. 121 at 12 [¶ 44] (Defendants' admission that "security camera footage does not run continuously because the cameras activate based on motion and does not run if there is no activity"); *see also Benjamin v. Molina,* ECF 1:75-cv-3073, Dkt. 733 at 92 (Independent Monitor raising concerns about

**Hon. Katharine Parker**
Jun. 11, 25
Page 5 of 5

      "unexplained gaps" in video footage, to which the Department responded that "the system is motion-based" for lack of recorded video).

- *Inadequate retention procedures.* Plaintiff has maintained fundamental concerns about DOC's practices of self-collection and self-review, as previously explained to the Court in the related action.

                          \*      \*      \*

Thank you very much. I sincerely appreciate the Court's time and consideration.

                                          Very truly yours,

                                          */s/ Sami Elamad*