23 Civ. 2102 (JPO) (KHP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KWAINE THOMPSON,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York 10007*

*Of Counsel:  Gregory Accarino*
*Tel:  (212) 356-1945*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. V

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY.................................................................................................... 1

STANDARD OF LAW........................................................................................................... 5

ARGUMENT

       POINT I

             PLAINTIFF BLATANTLY VIOLATED THE COURT'S APRIL 29, 2024 ORDER BY BRINGING CLAIMS AGAINST MULTIPLE INDIVIDUALS FROM SEPARATE DOC FACILITIES AND THEREFORE HIS SECOND AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.............................................................. 7

       POINT II

             PLAINTIFF IMPROPERLY RELIES ON COLLECTIVE OR "GROUP" PLEADING ............................................ 8

       POINT III

             PLAINTIFF'S IMPROPERLY GROUP PLED CLAIMS ARE INSUFFICIENT ON SUBSTANTIVE GROUNDS AND SHOULD BE DISMISSED ...................................................................... 10

             A.  Plaintiff's Retaliation Claim Should Be Dismissed............................................................ 10

             B.  Plaintiff's Deliberate Indifference to Medical Needs Claim Should Be Dismissed .................... 11

             C.  Plaintiff's Access to Courts and Counsel Claim Should Be Dismissed............................................ 14

       POINT IV

             PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THE PERSONAL INVOLVEMENT OF AT

LEAST SEVEN INDIVIDUAL DEFENDANTS: COLLINS, ROLLINSON, LOPEZ, LEITCH, MARDEN, GRAVES, AND MORALES .............................................. 15

POINT V

PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE CITY OF NEW YORK FOR MUNICIPAL LIABILITY ........................................................ 16

POINT VI

PLAINTIFF'S OTHER FEDERAL CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983 AGAINST THE CITY OF NEW YORK ALL SHOULD BE DISMISSED .................................................. 21

A. Plaintiff's Due Process Claim Should Be Dismissed ........................................................... 22

B. Plaintiff's Conditions of Confinement Claim Should Be Dismissed ......................................... 23

C. Plaintiff's Religious Discrimination Claim Should Be Dismissed ......................................... 24

D. Plaintiff's Equal Protection Claim Should Be Dismissed ........................................................... 26

POINT VII

PLAINTIFF'S ALLEGATIONS AGAINST CERTAIN INDIVIDUAL DEFENDANTS DO NOT TO RISE TO THE LEVEL OF CONSTITUTIONAL VIOLATIONS AND SHOULD BE DISMISSED .................................................. 27

A. Plaintiff's Claims Against Captain Abraham Palermo Should be Dismissed ........................... 28

B. Plaintiff's Claims Against Captain Paul Moodie Should be Dismissed ......................................... 28

C. Plaintiff's Claims Against CO Stella Bethea Should be Dismissed ......................................... 29

D.  Plaintiff's Claims Against Captain Alexander Should be Dismissed ......................................................... 30

E.  Plaintiff's Claims Against Assistant Commissioner Christopher Miller Should be Dismissed ................................................................. 30

F.  Plaintiff's Claims Against SRT Officers Murphy White, Paul White, Michael Zderko, Clarence Curley, Alonzo Butler, Samantha Elizer, and Andre Anderson Should be Dismissed ................................................................. 31

POINT VIII

PLAINTIFF'S FEDERAL CLAIMS AGAINST SPECIFIC INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ...................................................... 32

A.  Plaintiff's Claim for Excessive Force Against Defendants Branche and McNeil Should Be Dismissed ................................................................. 32

B.  Plaintiff's Claim for Religious Discrimination Against Defendant Miller Should Be Dismissed .............................. 33

C.  Plaintiff's Claim for Disability Discrimination Pursuant to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act Against Defendant Miller Should Be Dismissed .............................. 34

D.  Plaintiff's Claim for Equal Protection Against Defendant Miller Should Be Dismissed ........................................... 35

POINT IX

PLAINTIFF'S CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT SHOULD BE DISMISSED ...................................................... 35

POINT X

PLAINTIFF'S CLAIMS BROUGHT UNDER NEW YORK STATE LAW AND NEW YORK CITY LAW SHOULD BE DISMISSED ........................................... 37

A.   Plaintiff Failed to Plead Compliance with General Municipal Law ....................................................... 37

B.   Plaintiff's Claims Under New York State Law and New York City Law Should Be Dismissed for Other Reasons ............................................................... 39

CONCLUSION................................................................................................ 40

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*In re Aluminum Warehousing Antitrust Litig.*,
    833 F.3d 151 (2d Cir. 2016)........................................................................5

*Amnesty Am. v. Town of W. Hartford*,
    361 F.3d 113 (2d Cir. 2004).....................................................................16

*Andrews v. Metro North Commuter R. Co.*,
    882 F.2d 705 (2d Cir. 1989).....................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................5, 19

*Assoko v. City of New York*,
    539 F. Supp. 2d 728 (S.D.N.Y. 2008).......................................................27

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ................................................................8, 9

*Bd. of County Comm'rs v. Brown*,
    520 U.S. 397 (1997)................................................................................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................5

*Bouche v. City of Mount Vernon*,
    2012 U.S. Dist. LEXIS 40246, 2012 WL 987592
    (S.D.N.Y. Mar. 23, 2012) ........................................................................10

*Brass v. American Film Technologies, Inc.*,
    987 F.2d 142 (2d Cir. 1993).....................................................................6

*Buari v. City of New York*,
    530 F. Supp. 3d 356
    (S.D.N.Y. Mar. 30, 2021) ........................................................................17

*Candelaria v. Cunningham*,
    98-CV-6273 (LAP), 2000 U.S. Dist. LEXIS 8669,
    2000 WL 798636 (S.D.N.Y. June 19, 2000) .........................................36

*Cash v. County of Erie*,
    654 F.3d 324 (2d Cir. 2011).....................................................................20

*Cerrato v. Durham*,
    941 F. Supp. 388 (S.D.N.Y. 1996) ..........................................................34

**Cases**        **Pages**

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)..................................................................6

*Chance v. Armstrong*,
143 F.3d 698 (2d Cir. 1998)................................................................11

*City of Canton v. Harris*,
489 U.S. 378 (1989)......................................................................17, 18

*Colon v. City of New York*,
No. 19-CV-10435 (PGG) (SLC) 2021 U.S. Dist. LEXIS 184570,
2021 WL 4427169 (S.D.N.Y. Sept. 26, 2021)....................................26

*Connick v. Thompson*,
563 U.S. 51 (2011)......................................................................20, 21

*Cooper v. City of New York*,
No. 17-CV-1517 (NGG) (RLM), 2019 U.S. Dist. LEXIS 131572,
2019 WL 3642996 (E.D.N.Y. Aug. 5, 2019).......................................10

*Cuevas v. City of New York*,
No. 07-CV-4169 (LAP), 2009 U.S. Dist. LEXIS 114984
(S.D.N.Y. Dec. 7, 2009)......................................................................19

*Da Mata v. City of New York*,
No. 21-CV-155 (KPF), 2023 U.S. Dist. LEXIS 2133,
2023 WL 112449 (S.D.N.Y. Jan. 5, 2023) ..........................................38

*Darnell v. Pineiro*,
849 F.3d 17 (2d Cir. 2017)........................................................13, 23, 24

*Dawes v. Walker*,
239 F.3d 489 (2d Cir. 2001)................................................................11

*Demata v. New York State Correctional Dep't of Health Servs.*,
No. 99-0066, 1999 U.S. App. LEXIS 22955
(2d Cir. 1999)......................................................................................12

*DiPippo v. County of Putnam*,
No. 17-CV-7948 (NSR) 2019 U.S. Dist. LEXIS 33071,
2019 WL 1004152 (S.D.N.Y. Feb. 28, 2019)........................................9

*Dunkelberger v. Dunkelberger*,
No. 14-CV-3877, 2015 U.S. Dist. LEXIS 133814
(S.D.N.Y. Sept. 30, 2015).....................................................................6

**Cases**                                                                                          **Pages**

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) ...................................................................................5

*Ferro v. Ry. Exp. Agency, Inc.*,
    296 F.2d 847 (2d Cir. 1961) ...................................................................................8

*Fincher v. County of Westchester*,
    979 F. Supp. 989 (S.D.N.Y. 1997) .......................................................................38

*Fox v. State Univ. of New York*,
    497 F. Supp. 2d 446 (E.D.N.Y. 2007) ..................................................................36

*Fulton v. Goord*,
    591 F.3d 37 (2d Cir. 2009) .....................................................................................37

*Gaston v. Ruiz*,
    No. 17-CV-1252 (NGG), 2018 U.S. Dist. LEXIS 112695,
    2018 WL 3336448 (E.D.N.Y. July 6, 2018) .........................................................18

*Genovese v. Town of Southampton*,
    921 F. Supp. 2d 8 (E.D.N.Y. 2013) ...............................................................19, 20

*Giaccio v. City of New York*,
    308 F. App'x 470 (2d Cir. 2009) ....................................................................18, 22

*Gil-Cabrera v. Dep't of Corr.*,
    No. 20-CV-09493 (LTS) (SDA), 2021 U.S. Dist. LEXIS 221479,
    2021 WL 5282620 (S.D.N.Y. Sept. 27, 2021),
    *report and recommendation adopted sub nom.*,
    *Gil-Cabrera v. City of New York*,
    No. 20-CV-09493 (LTS) (SDA), 2021 U.S. Dist. LEXIS 239144,
    2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021) .......................................................26

*Gill v. Pidlypchak*,
    389 F.3d 379 (2d Cir. 2004) .............................................................................10, 11

*Greathouse v. Vasquez*,
    No. 20-CV-8748 (PAE) (SN) 2021 U.S. Dist. LEXIS 249704,
    2021 WL 6334689 (S.D.N.Y. Dec. 20, 2021) .......................................................15

*Hall v. Ekpe*,
    408 F. App'x 385 (2d Cir. 2010) ...........................................................................25

*Hallett v. New York State Dep't of Corr. Servs.*,
    109 F. Supp. 2d 190 (S.D.N.Y. 2000) ..................................................................34

| Cases | Pages |
|---|---|

*Hardy v. New York City Health & Hosps. Corp.*,
    164 F.3d 789 (2d Cir. 1999)............................................................38

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)............................................................39

*Hathaway v. Coughlin*,
    99 F.3d 550 (2d Cir. 1996)............................................................12

*Hayes v. Perotta*,
    751 F. Supp. 2d 597 (S.D.N.Y. 2010)..............................................17, 22

*Hill v. Curcione*,
    657 F.3d 116 (2d Cir. 2011)........................................................ 12-13

*Holmes v. Allstate Corp.*,
    No. 11-CV-1543 (LTS) (DF), 2012 U.S. Dist. LEXIS 24883,
    2012 WL 627238 (S.D.N.Y. Jan. 27, 2012) ......................................9

*Hudson v. McMillen*,
    503 U.S. 1 (1992).......................................................................11

*Jackson v. Nassau County*,
    552 F. Supp. 3d 350 (E.D.N.Y. 2021) ..............................................19

*Jenkins v. City of New York*,
    478 F.3d 76 (2d Cir. 2007)........................................................20, 21

*Johmanni Anduze v. City of New York*,
    No. 21-CV-519 (PGG) (KHP), 2022 U.S. Dist. LEXIS 140929,
    2022 WL 4586967 (S.D.N.Y. Aug. 8, 2022) ......................................8

*Jones v. Town of E. Haven*,
    691 F.3d 72 (2d Cir. 2012)...................................................... 17-18, 22

*Kaminski v. Semple*,
    No. 3:19-CV-143 (SRU), 2019 U.S. Dist. LEXIS 56335,
    2019 WL 1454950 (D. Conn. Apr. 2, 2019) ......................................22

*Koller v. Wachovia Bank, N.A.*,
    No. 3:10-CVwach-00735 (JAM), 2016 U.S. Dist. LEXIS 122989,
    2016 WL 4773133 (D. Conn. Sept. 12, 2016) ....................................23

*Kwaine Thompson v. City of New York, et al.*,
    No. 22 Civ. 1458 (JPO) (KHP).........................................3, 22, 25, 36

**Cases**          **Pages**

*Lalonde v. City of Ogdensburg*,
  662 F. Supp. 3d 289 (N.D.N.Y. 2023)................................................................36

*Latrieste Rest. v. Village of Port Chester*,
  188 F.3d 65 (2d Cir. 1999)........................................................................27

*Lee v. State of New York Dep't of Corr. Servs.*,
  No. 97-CV-7112, 1999 U.S. Dist. LEXIS 13214,
  1999 WL 673339 (S.D.N.Y. Aug. 30, 1999)...................................................34-35

*Leneau v. Ponte*,
  No. 16-CV-776 (GHW) 2018 U.S. Dist. LEXIS 12272,
  2018 WL 566456 (S.D.N.Y. Jan. 24, 2018) ...................................................15

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)........................................................................15

*Lombardo v. Holanchock*,
  No. 07-CV-8674 (DLC), 2008 U.S. Dist. LEXIS 48753,
  2008 WL 2543573 (S.D.N.Y. June 25, 2008) .................................................25

*Mallet v. Johnson*,
  No. 09-CV 8430 (JGK), 2011 U.S. Dist. LEXIS 73249,
  2011 WL 2652570 (S.D.N.Y. July 7, 2011) ...................................................26

*Marquez v. Starrett City Assocs.*,
  406 F. Supp. 3d 197 (E.D.N.Y. 2017) ..........................................................6

*Mercado v. City of New York*,
  No. 08-CV-2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430,
  2011 WL 6057839 (S.D.N.Y. Dec. 5, 2011) ..................................................18

*Messina v. Mazzeo*,
  854 F. Supp. 116 (E.D.N.Y. 1994) ..............................................................24

*Miller v. County of Nassau*,
  467 F. Supp. 2d 308 (E.D.N.Y. 2006) ..........................................................17

*Mitchell v. Annucci*,
  No. 19-CV-718 (MAD), 2019 U.S. Dist. LEXIS 120546,
  2019 WL 3253192 (N.D.N.Y. July 19, 2019) ..............................................10-11

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)..........................................................................17, 18, 21

**Cases**                                                      **Pages**

*Morris v. City of New York*,
    No. 20-CV-9314 (GBD), 2021 U.S. Dist. LEXIS 186917,
    2021 WL 4461994 (S.D.N.Y. Sept. 29, 2021)......................................................................18

*Muhammad v. City of New York Dep't of Corr.*,
    904 F. Supp. 161
    (S.D.N.Y. Oct. 16, 1995) ........................................................................................................25

*Myers v. Moore*,
    326 F.R.D. 50 (S.D.N.Y. 2018) ..........................................................................................9-10

*Myrie v. Calvo*,
    615 F. Supp. 2d 246 (S.D.N.Y. 2009)....................................................................................12

*Norman v. City of New York*,
    No. 20-CV-5560 (LTS), 2022 U.S. Dist. LEXIS 144631,
    2022 WL 3354707 (S.D.N.Y. Aug. 12, 2022) .......................................................................38

*Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985)....................................................................................................17, 21, 22

*Oliva v. Town of Greece*,
    630 F. App'x 43 (2d Cir. 2015) .............................................................................................14

*Pabon v. Goord*,
    No. 99 Civ. 5869, 2003 U.S. Dist. LEXIS 5359,
    2003 WL 1787268 (S.D.N.Y. Mar. 28, 2003) ......................................................................13

*Pembaur v. City of Cincinatti*,
    475 U.S. 479 (1986)..........................................................................................................16, 17

*Price v. City of New York*,
    No. 15-CV-5871 (KPF) 2018 U.S. Dist. LEXIS 105815,
    2018 WL 3117507 (S.D.N.Y. June 25, 2018) .................................................................18, 22

*Rockefeller v. Dutchess County Dep't of Soc. Servs.*,
    No. 25-CV-5210 (KMK), 2025 U.S. Dist. LEXIS 139172,
    2025 WL 2042309 (S.D.N.Y. July 21, 2025) .......................................................................37

*Rodriguez v. City of New York Dep't of Educ.*,
    No. 21-CV-6551 (LDH) (RER) 2023 U.S. Dist. LEXIS 56977,
    2023 WL 2741179 (E.D.N.Y. Mar. 31, 2023) ..................................................................18-19

*Rodriguez v. Cohall*,
    No. 21-CV-1810 (JGK), 2022 U.S. Dist. LEXIS 76633,
    2022 WL 1228411 (S.D.N.Y. Apr. 26, 2022)........................................................................13

**Cases**                                                                                    **Pages**

*Rodriguez v. Winski*,
    973 F. Supp. 2d 411 (S.D.N.Y. 2013)....................................................................16

*Saimels v. Air Transp. Local 504*,
    992 F.2d 12 (2d Cir. 1993)...............................................................................5-6

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006)...............................................................................12

*Santiago v. City of New York*,
    No. 09-CV-856 (BMC) 2009 U.S. Dist. LEXIS 75372,
    2009 WL 2734667 (E.D.N.Y. Aug. 18, 2009).........................................................19

*Savino v. Town of Southeast*,
    983 F. Supp. 2d 293 (S.D.N.Y. 2013)....................................................................27

*Schoolcraft v. City of New York*,
    81 F. Supp. 3d 295 (S.D.N.Y. 2015).....................................................................38

*Shapiro v. Cmty. First Servs., Inc.*,
    No. 11-CV-4061 (KAM) (LB), 2014 U.S. Dist. LEXIS 42459
    (E.D.N.Y. Mar. 27, 2014)..............................................................................24-25

*Simmons v. Abruzzo*,
    49 F.3d 86 (2d. Cir. 1995)...................................................................................8

*Smith v. Carpenter*,
    316 F.3d 178 (2d Cir. 2003)...........................................................................11, 12

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009)...................................................................................5

*Stewart v. Riviana Foods Inc.*,
    No. 16-CV-6157, 2017 U.S. Dist. LEXIS 146665,
    2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017)..........................................................6

*Stuyvesant v. Crane*,
    No. 23-CV-4394 (LTS), 2023 U.S. Dist. LEXIS 130880,
    2023 WL 4848404 (S.D.N.Y. July 27, 2023)..........................................................16

*Sulton v. Wright*,
    265 F. Supp. 2d 292
    (S.D.N.Y. May 29, 2003)...............................................................................25-26

*Tardif v. City of New York*,
    991 F.3d 394 (2d Cir. 2021)...........................................................................36, 37

**Cases**                                                                                                          **Pages**

*Taylor v. Ridley*,
    904 F. Supp. 2d 234 (E.D.N.Y. 2012) ..................................................................38

*Treadwell v. County of Putnam*,
    No. 14-CV-10137 (KMK), 2016 U.S. Dist. LEXIS 44335
    (S.D.N.Y. Mar. 30, 2016) .................................................................................20

*Vazquez v. Spear*,
    No. 12-CV-6883 (VB), 2014 U.S. Dist. LEXIS 113018,
    2014 WL 3887880 (S.D.N.Y. Aug. 5, 2014 ) .......................................................13

*Velez v. Levy*,
    401 F.3d 75 (2d Cir. 2005).................................................................................22

*Vippolis v. Village of Haverstraw*,
    768 F.2d 40 (2d Cir. 1985)................................................................................18

*Walker v. City of New York*,
    974 F.2d 293 (2d Cir. 1992),
    *cert. denied*, 507 U.S. 961 (1993) ......................................................................20

*Wallace v. Conroy*,
    945 F. Supp. 628 (S.D.N.Y. 1996) ....................................................................15

*Willey v. Kirkpatrick*,
    801 F.3d 51 (2d Cir. 2015)...........................................................................23, 24

*Winter v. Pinkins*,
    No. 14-CV-8817 (RJS), 2016 U.S. Dist. LEXIS 29349,
    2016 WL 1023319 (S.D.N.Y. Mar. 8, 2016) ....................................................6-7

*Wray v. City of New York*,
    490 F.3d 189 (2d Cir. 2007)........................................................................16, 21

*Zhang v. City of New York*,
    No. 17-CV-5415 (JFK) 2018 U.S. Dist. LEXIS 108441,
    2018 WL 3187343 (S.D.N.Y. June 28, 2018) ....................................................15

**Statutes**

42 U.S.C. § 1983................................................................1, 8, 10, 15, 16, 17, 21, 32

**Statutes**                                                                    **Pages**

42 U.S.C. § 12132 ...........................................................................................36

Fed. R. Civ. P. 8 .........................................................................................2, 9

Fed. R. Civ. P. 8(a) .........................................................................................9

Fed. R. Civ. P. 12(b)(6) ....................................................................5, 8, 17, 26, 40

Gen. Mun. Law § 50-e .................................................................................. 38-39

Gen. Mun. Law § 50-i(1) ...............................................................................38

## PRELIMINARY STATEMENT

Plaintiff Kwaine Thompson, by counsel, has filed an improper Second Amended Complaint in violation of the Court's April 29, 2024 Order and federal pleading standards, largely alleging retaliation by New York City Department of Correction ("DOC") Officers due to plaintiff filing multiple lawsuits, which have all been terminated or settled.

On April 29, 2024, the Court ordered plaintiff to amend the Complaint within sixty (60) days. Without showing good-cause, and after that deadline had passed, plaintiff, by counsel, filed his Amended Complaint, and then Second Amended Complaint, which blatantly violated the Court's April 29, 2024 Order by pleading multiple different claims against multiple different individual defendants from multiple different Department of Correction facilities.

In any event, putting the April 29, 2024 Court Order aside, this absolutely unwieldy Second Amended Complaint is problematic for a whole host of other reasons, including, *inter alia*, that it violates federal pleading standards by improperly group pleading and not putting the thirty-four (34) individual defendants on notice of what claims are brought against them, not pleading any personal involvement whatsoever for seven (7) of the individual defendants, not pleading sufficient facts to make out constitutional violations for twelve (12) of the individual defendants. For as long as the Second Amended Complaint is, there is an utter lack of detail, with plaintiff pleading conclusory, vague, and non-specific allegations and facts, which are altogether insufficient. Accordingly, plaintiff's Second Amended Complaint is completely improper and should be dismissed.

## PROCEDURAL HISTORY

On March 10, 2023, plaintiff, proceeding *pro se*, filed this lawsuit pursuant to 42 U.S.C. § 1983 asserting what could be considered federal and state law claims, in a three-hundred and twenty-two (322) page Complaint, which included a variety of exhibits. *See* Dkt. No. 1,

Complaint. On April 29, 2024, prior to any defendant being served, the Court ordered plaintiff to amend his Complaint within sixty (60) days, by June 28, 2024, and have it conform with Rule 8 of the Federal Rules of Civil Procedure's pleading standards. *See* Dkt. No. 7, Order, April 29, 2024. In its fifteen (15) page Order, the Court listed two actions plaintiff filed in the United States District Court for the Eastern District of New York, and nine actions plaintiff filed in the United States District Court for the Southern District of New York, including two actions which were dismissed for failure to state a claim. *See id.* at 2-3.

The Court cautioned plaintiff, stating, "[h]ere, it appears that Plaintiff is attempting to assert unrelated claims against multiple different defendants regarding events that occurred at two different facilities on Rikers Island. The Court grants Plaintiff leave to file an amended complaint concerning the related claims he details in his current complaint. If he wishes to pursue **unrelated claims against multiple different defendants regarding events that occurred at different facilities,** he must bring those claims in separate actions." *Id.* at 6-7 (emphasis added). "Because Plaintiff may be able to allege related claims against multiple defendants regarding events that occurred at **one facility** on Rikers Island, the Court grants Plaintiff 60 days' leave to amend his complaint to detail those claims. Plaintiff must, however, **assert unrelated claims in separate actions,** and he may not assert claims raised in his pending cases." *Id.* at 7 (emphasis added).

The Court further stated that "[b]ecause Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint." *Id.* at 8. In addition, the Court stated that the process of amending the Complaint, "does *not* toll the three-year statute of limitations period governing this action." *Id.* (emphasis included). "If Plaintiff fails to comply

within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to comply with this order." *Id.* at 9.

On May 29, 2024, plaintiff filed a non-specific letter including, what appeared to be, various New York *State* Department of Corrections and Community Supervision ("DOCCS") paperwork, even though plaintiff's Complaint alleged incidents while plaintiff was incarcerated in New York *City* Department of Correction ("DOC") custody. *See* Dkt. No. 8. On May 31, 2024, plaintiff filed a letter requesting *pro bono* counsel, which did not demonstrate "good cause to excuse such failure" as to why plaintiff was unable to file an Amended Complaint within sixty (60) days, pursuant to the Court's April 29, 2024 Order, nor free him of the obligation to do so. *See* Dkt. No. 9, Application, May 31, 2024; Dkt. No. 7, Order, April 29, 2024.

The sixty (60) day deadline for plaintiff to file his Amended Complaint passed, without plaintiff filing an Amended Complaint, and without any defendant served or put on notice of this lawsuit. On July 16, 2024, this matter was reassigned to District Judge J. Paul Oetken and referred to Magistrate Judge Katherine H. Parker for general pre-trial matters. *See* Dkt. Entry, Notice, July 16, 2024; Dkt. No. 10, Order, July 16, 2024. On July 17, 2025, the Court scheduled a status conference for this matter and another of plaintiff's lawsuits, *Kwaine Thompson v. City of New York, et al.*, No. 22 Civ. 1458 (JPO) (KHP), which was also pending in the Southern District of New York, setting a new deadline for plaintiff to amend his Complaint. *See* Dkt. No. 11, Order, July 17, 2025; Dkt. No. 16, Order, September 4, 2025. On July 30, 2025, this Court granted plaintiff's May 31, 2024 motion to appoint Counsel, and appointed Mr. Sami Elamad as his attorney, and Mr. Elamad filed a Notice of Limited Appearance for the "limited purpose of amending [plaintiff's] original complaint." *See* Dkt. No. 13, Order, July 30, 2025; Dkt. No. 24, Notice of Limited Appearance, October 30, 2024. On November 1, 2024, plaintiff filed his

Amended Complaint, alleging nineteen (19) claims against the City of New York, twenty-three (23) individually named DOC employees, and John/Jane Doe Correction Officers, from multiple DOC facilities, in violation of the Court's April 29, 2024 Order. *See* Dkt. No. 25, Amended Complaint, November 1, 2024; Dkt. No. 7, Order, April 29, 2024.

On January 23, 2025, defendant City informed the Court of its intention to file a motion to dismiss plaintiff's Amended Complaint, and the Court stayed discovery "pending a decision on the Motion to Dismiss." *See* Dkt. No. 96, Post Conference Order, January 23, 2025. The Court also stayed "the deadline for the individual defendants to respond to plaintiff's Amended Complaint until the resolution of the City's motion to dismiss." *See* Dkt. No. 104, Order, February 24, 2025. On March 20, 2025, defendant City filed its Motion to Dismiss Plaintiff's Amended Complaint. *See* Dkt. No. 110, Motion to Dismiss, March 20, 2025.

On April 11, 2025, Mr. Sami Elamad, who drafted plaintiff's Amended Complaint, filed a Notice of Limited Appearance for the purpose of "drafting opposition papers to the motion to dismiss." *See* Dkt. No. 114, Notice of Limited Appearance, April 11, 2025. On August 18, 2025, Mr. Elamad filed a Second Amended Complaint on behalf of plaintiff, as well as a motion for a conference regarding its submission. *See* Dkt. No. 142, Letter Motion, August 18, 2025. On August 20, 2025, the Court stated that no pre-motion conference was needed and permitted plaintiff to file a motion to Amend the Complaint by September 8, 2025. *See* Dkt. No. 143, Order, August 20, 2025. On September 8, 2025, Mr. Elamad filed a re-worked and edited version of the Second Amended Complaint, different than the draft submitted on August 18, 2025 (therefore becoming the third Amended Complaint drafted), accompanied by a motion to amend. *See* Dkt. No. 144, Motion to Amend, September 8, 2025. On October 10, 2025, the Court set a briefing schedule for defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. *See* Dkt. No.

149, Opinion and Order, October 10, 2025.   On October 31, 2025, plaintiff filed a Second Amended Complaint, with his signed verification.   *See* Dkt. No. 151, Second Amended Complaint ("SAC"), October 31, 2025.

## **STANDARD OF LAW**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading may be dismissed for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).   In considering a motion to dismiss, a district court must "accept as true all factual claims in the complaint, and draw all reasonable inferences in the Plaintiff['s] favor."   *In re Aluminum Warehousing Antitrust Litig.,* 833 F.3d 151, 157 (2d Cir. 2016).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Iqbal,* 556 U.S. at 678.   A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly,* 550 U.S. at 555; *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir. 2007) ("While [*Twombly*] does not require heightened fact pleading of specifics, it does require enough facts to nudge Plaintiff's claims across the line from conceivable to plausible.").   A court should therefore dismiss a complaint when it appears that a plaintiff has failed to plead a plausible claim of relief.   *See Spagnola v. Chubb Corp.,* 574 F.3d 64, 67 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken."   *Saimels v. Air Transp. Local 504,* 992 F.2d 12,

15 (2d Cir. 1993). "Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana Foods Inc.,* No. 16-CV-6157, 2017 U.S. Dist. LEXIS 146665, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 U.S. Dist. LEXIS 133814, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.") (citations omitted). "[A] court may consider documents attached to the complaint as an exhibit or incorporated in it by reference … matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)) (internal quotation marks omitted).

Although plaintiff initially brought this case *pro se*, he was represented by counsel when the Amended Complaint was filed, and when the Second Amended Complaint was filed, which were both drafted by his attorney, Mr. Elamad. *See* Dkt. No. 25, Amended Complaint, November 1, 2024; SAC. Therefore, plaintiff is not entitled to have the Court construe his pleadings liberally. *See Marquez v. Starrett City Assocs.,* 406 F. Supp. 3d 197, 205 (E.D.N.Y. 2017) ("In this case, although Plaintiff is currently proceeding *pro se*, he was represented at the time the complaint was filed. Because the complaint was drafted by a lawyer, it is not entitled to the generous reading given to *pro se* complaints."); *Winter v. Pinkins*, No. 14-CV-8817 (RJS), 2016 U.S. Dist. LEXIS

29349, 2016 WL 1023319, at *4 (S.D.N.Y. Mar. 8, 2016) ("the Court has no obligation to liberally construe Plaintiff's complaint, since it was filed with the assistance of counsel.").

## ARGUMENT

### POINT I

**PLAINTIFF BLATANTLY VIOLATED THE COURT'S APRIL 29, 2024 ORDER BY BRINGING CLAIMS AGAINST MULTIPLE INDIVIDUALS FROM SEPARATE DOC FACILITIES AND THEREFORE HIS SECOND AMENDED COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY**

Plaintiff has continued to blatantly violate Chief District Judge Laura Taylor Swain's April 29, 2024 Order, which explicitly instructed him to bring "unrelated claims against multiple different defendants regarding events that occurred at different facilities... in separate actions." Dkt. No. 7, Order at 6, April 29, 2024. The sentiment of this Court Order was to not bring multiple unrelated lawsuits in this one case. However, plaintiff, by counsel, completely ignored this Court Order, and, in his Amended Complaint, plaintiff brought multiple unrelated claims against twenty-three (23) individual defendant correction officers from two separate DOC facilities – the West Facility and the George R. Vierno Center ("GRVC") – in violation of the Court's April 29, 2024 Order. *See* Dkt. No. 25, Amended Complaint, November 1, 2024. Defendant City raised this issue in its March 20, 2025 Motion to Dismiss, which plaintiff ignored, and, through his Second Amended Complaint, he has continued to flaunt the Court's April 29, 2024 Order by going even further and adding even more unrelated claims to an expanded total of four separate DOC facilities – the West Facility, GRVC, Harmony House, and Otis Bantum Correctional Center ("OBCC") – against an increased total of thirty-four (34) individual defendant correction officers. *See* SAC. Not only does plaintiff bring multiple unrelated claims from two separate facilities from the specific period of December 2022 through February 2023, as outlined originally in his Amended

Complaint, but plaintiff has further expanded the scope of the timeframe of this lawsuit in his Second Amended Complaint, by adding almost fifty (50) paragraphs of allegations from March 11, 2025 until present, from two new and separate DOC facilities, which were completely unrelated from the prior facilities and claims.  *See* SAC at ¶¶ 171-216.  Pursuant to the Court's April 29, 2024 Order, plaintiff cannot continue to make this lawsuit a never-ending and running list of newly alleged complaints against new individual defendants at new facilities.

Accordingly, for these reasons alone, the Court should dismiss the Second Amended Complaint in its entirety.  *See* Dkt. No. 7, Order at 6, April 29, 2024.

## POINT II

## PLAINTIFF IMPROPERLY RELIES ON COLLECTIVE OR "GROUP" PLEADING

Plaintiff plainly fails to articulate the majority of his claims and does not put the individual defendants on notice of the claims asserted against them.  The purpose of pleadings under the Federal Rules is to give adverse parties fair notice of the claim asserted so that they may answer and prepare for litigation.  *See Simmons v. Abruzzo*, 49 F.3d 86 (2d. Cir. 1995).  A complaint need not "be a model of clarity or exhaustively present the facts alleged, [but] it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"  *Atuahene v. City of Hartford,* 10 F.App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Exp. Agency, Inc.,* 296 F.2d 847, 851 (2d Cir. 1961).  Group pleading, which fails to differentiate as to which defendant was involved in the alleged unlawful conduct, is insufficient to state a claim under Section 1983.  *Johmanni Anduze v. City of N.Y.*, No. 21-CV-519 (PGG) (KHP), 2022 U.S. Dist. LEXIS 140929, 2022 WL 4586967, at *19-20 (S.D.N.Y. Aug. 8, 2022) (internal citations and quotations omitted).  To satisfy Rule 12(b)(6), a plaintiff must make "specific factual allegations" against each defendant.  *Id.*  A complaint that "lump[s] all the defendants together in

each claim and provid[es] no factual basis to distinguish their conduct fails to satisfy this minimum standard." *Atuahene,* 10 F. App'x 33, 34; *see also DiPippo v. Cty. of Putnam*, No. 17-CV-7948 (NSR) 2019 U.S. Dist. LEXIS 33071, 2019 WL 1004152, at **46-47 (S.D.N.Y. Feb. 28, 2019) (dismissing "general, conclusory, blanket claims against all Defendants, and [were] insufficient to put each Defendant on notice about what Plaintiff's actual grievances [were]"); *Holmes v. Allstate Corp.*, No. 11-CV-1543 (LTS) (DF), 2012 U.S. Dist. LEXIS 24883, 2012 WL 627238, at *69 (S.D.N.Y. Jan. 27, 2012) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

Plaintiff advances the type of "group pleading" that falls below the "pleadings" watermark and only refers to a collective group of defendants for most of the claims alleged, bringing them against "Individual Defendants," "All Individual Defendants," "All Defendants," or "All." *See* SAC at pages 28-38. Specifically, plaintiff fails to state: what each individual defendant allegedly did to subject plaintiff to retaliation, and which individual defendant allegedly did so (*see id.* at ¶¶ 218-226); what each individual defendant allegedly did to be indifferent to plaintiff's medical needs, and which individual defendant allegedly did so (*id.* at ¶¶ 227-232); what each individual defendant allegedly did to deny plaintiff access to Courts and counsel, and which individual defendant allegedly did so (*id.* at ¶¶ 257-264); what each individual defendant allegedly did to establish a claim negligence, and which individual defendant allegedly did so (*id.* at ¶¶ 315–320); and how the actions of each defendant individually rises to the level of a constitutional violation or a violation under New York state law.

This form of "group pleading," or referring only to "defendants" as a collective, is not sufficient and, pursuant to Rule 8, does not give the defendants fair notice on what grounds plaintiff's claims are based. *See Atuahene,* 10 F. App'x 33 at 34; *see also Myers v. Moore,* 326

F.R.D. 50, 60 (S.D.N.Y. 2018) (dismissing malicious prosecution claim where the complaint relied on group pleading); *Cooper v. City of New York*, No. 17-CV-1517 (NGG) (RLM), 2019 U.S. Dist. LEXIS 131572, 2019 WL 3642996, at *21-22 (E.D.N.Y. Aug. 5, 2019) (same); *Bouche v. City of Mount Vernon,* 2012 U.S. Dist. LEXIS 40246, 2012 WL 987592, at *25 (S.D.N.Y. Mar. 23, 2012) (dismissing claim because plaintiff "only refer[red] to the defendants in the collective, never identifying which defendants were responsible for specific actions").  As such, plaintiff's first, second, sixth, and thirteenth claims should be dismissed.

## POINT III

### PLAINTIFF'S IMPROPERLY GROUP PLED CLAIMS ARE INSUFFICIENT ON SUBSTANTIVE GROUNDS AND SHOULD BE DISMISSED

Plaintiff's federal claims of (1) retaliation, (2) deliberative indifference to medical needs, and (3) access to Courts and counsel, brought pursuant to 42 U.S.C. § 1983, should also be dismissed on substantive grounds.

**A.**   **Plaintiff's Retaliation Claim Should Be Dismissed**

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citations omitted). As this Circuit has made clear, "courts must approach prisoner retaliation claims 'with skepticism and particular care,' since 'virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act.'" *Mitchell v. Annucci*, No. 19-CV-718 (MAD), 2019 U.S. Dist. LEXIS 120546, 2019 WL 3253192,

at * 17-18 (N.D.N.Y. July 19, 2019) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

It is well-established in this Circuit that *de minimis* conduct "does not give rise to actionable

retaliation," and only "'retaliatory conduct that would deter a similarly situated individual of

ordinary firmness from exercising . . . constitutional rights'" constitutes an adverse action. *Id.* at

*18-19 (quoting Gill, 389 F.3d at 381). To determine whether the alleged conduct is *de minimis*,

courts analyze whether the alleged retaliation would likely "chill a person of ordinary firmness

from continuing to engage" in the alleged protected activity. *Dawes*, 239 F.3d at 493.

Here, plaintiff fails to allege any conduct that would likely "chill a person of ordinary

firmness" from continuing the instant federal action. *See id.* Moreover, plaintiff has not pled

sufficient facts to demonstrate a causal connection between the alleged adverse action and the

protected speech beyond speculative, unsupported, vague, and conclusory assertions. In any event,

as discussed in Point II, *supra*, this claim is improperly group pled. Accordingly, plaintiff's

retaliation claim should be dismissed.

**B.**     **Plaintiff's Deliberate Indifference to Medical Needs Claim Should Be Dismissed**

Plaintiff's Second Amended Complaint fails to state a claim for deliberate indifference to

medical needs. A claim for deliberate indifference to medical needs has both an objective and

subjective prong. *See Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003); *Chance v. Armstrong*,

143 F.3d 698, 702 (2d Cir. 1998). To satisfy the objective prong, "the alleged deprivation must be,

in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702. "Because society does not

expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a]

threshold showing of serious illness or injury" to state a cognizable claim. *Smith*, 316 F.3d at 184

(quoting *Hudson v. McMillen*, 503 U.S. 1, 19 (1992)).

Plaintiff made vague allegations that unspecified defendants (1) "frequently *delayed*

plaintiff's daily medication trips," without any specificity of the actual period of delay, what

medication was actually delayed, or whether the delay in medication had any effects; and (2) ignored plaintiff's medical emergencies, without any specificity of any medical condition, other than alleged asthma or high blood pressure. *See* SAC at ¶ 97, 230-231. If the alleged unreasonable care consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *See Smith*, 316 F.3d at 185-86. However, where the plaintiff alleges a delay in medical treatment (rather than the outright denial of medical treatment), then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Thus, a short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where "the alleged lapses in treatment are minor." *Smith*, 316 F.3d at 186. "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition **for three days**, or delayed major surgery **for over two years**." *Demata v. New York State Correctional Dep't of Health Servs.*, No. 99-0066, 1999 U.S. App. LEXIS 22955 at *5 (2d Cir. 1999) (internal citations and quotation marks omitted) (emphasis added); *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) (same); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (conditions which have been held to rise to an objectively serious level are those that demonstrate "a condition of urgency, one that may produce **death, degeneration, or extreme pain**") (emphasis added).

Plaintiff has not pled and specific temporal period for a delay, other than the word "delay" itself, which is insufficient. Furthermore, asthma does meet the definition of a "serious medical condition," or one that is "a condition of urgency, one that may produce death, degeneration, or

extreme pain." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted); *see, e.g., Rodriguez v. Cohall*, No. 21-CV-1810 (JGK), 2022 U.S. Dist. LEXIS 76633, 2022 WL 1228411, *10–*11 (S.D.N.Y. Apr. 26, 2022), (dismissing plaintiff's claim where "the chemical agent aggravated his asthma and . . . he experienced 'breathing difficulties, chest pains, blurry vision, dizzyness [sic], skin burning/irritation, trauma, [and] anxiety.'")   In that case, the Honorable Judge Koeltl held that "[c]ourts in this Circuit have found consistently that plaintiffs who complained of similar injuries arising out of exposure to chemical agents while in custody failed to plead adequately that they suffered sufficiently serious injuries." *Id.* (citations omitted). Furthermore, having asthma is not, in and of itself, a "sufficiently serious" medical condition to support a deliberate indifference to medical care claim. *Vazquez v. Spear*, No. 12-CV-6883 (VB), 2014 U.S. Dist. LEXIS 113018, 2014 WL 3887880 at *12-13 (S.D.N.Y. Aug. 5, 2014 ) ("Plaintiff's claim of deliberate indifference fails to meet the objective prong of the analysis, as his asthmatic condition alone does not impose a substantial risk of serious harm.").

The "subjective prong" of a constitutional claim for inadequate or delayed medical care requires a showing that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Mere negligence, or the plaintiff's disagreement with the prescribed course of treatment, is insufficient to support a claim. *See Pabon v. Goord*, No. 99 Civ. 5869, 2003 U.S. Dist. LEXIS 5359, 2003 WL 1787268 *10-11, 37-38 (S.D.N.Y. Mar. 28, 2003).

Plaintiff fails to satisfy the subjective prong of a constitutional claim for deliberate indifference to a medical need by not sufficiently pleading that any defendant intentionally or

recklessly failed to act with reasonable care in mitigating any risk posed to him, or should have known the conditions posted an excessive risk to plaintiff's health or safety. As plaintiff failed to satisfy the subjective prong and objective prong of a constitutional claim for deliberate indifference to a medical need, the claim should be dismissed. In any event, as discussed in Point II, *supra*, this claim is improperly group pled.

At the very least, the individual defendants are entitled to qualified immunity as to this claim, as constitutional violations based on the unspecified period of delay that plaintiff alleges of unspecified medical treatment or medication, with the unspecified impact that plaintiff alleges, with the seriousness of the medical conditions are not clearly established.

**C.**     **Plaintiff's Access to Courts and Counsel Claim Should Be Dismissed**

Plaintiff has pled insufficient facts to support a claim for access to Courts and counsel. Plaintiff alleges that unspecified individual defendants have "repeatedly imposed unfair and impermissible restrictions on Plaintiff's access to the courts" and did not specify how his access to counsel was affected, only that his "legal mail would be withheld or disposed of." *See* SAC at ¶¶ 257-264. These assertions are conclusory, vague, and nonspecific and should be dismissed. *See Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015). Plaintiff has not pled (1) who told him that his mail was withheld, (2) whether plaintiff's mail was actually withheld or disposed of, (3) what the legal mail consisted of, or (4) how the withholding of mail affect plaintiff. Furthermore, as discussed in Point VI, *infra*, this claim cannot be brought against the City of New York. In any event, as discussed in Point II, *supra*, this claim is improperly group pled.

At the very least, the individual defendants are entitled to qualified immunity as to this claim because it is not clearly established whether a corrections officer only informing an individual that their legal mail would be withheld or disposed of, without further information,

under the specific circumstances plaintiff alleges, amounts to a constitutional violation of access to Courts and counsel.

## POINT IV

### PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THE PERSONAL INVOLVEMENT OF AT LEAST SEVEN INDIVIDUAL DEFENDANTS: COLLINS, ROLLINSON, LOPEZ, LEITCH, MARDEN, GRAVES, AND MORALES

Under a § 1983 claim, an individual may be held liable only if that individual is "personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Because vicarious liability is inapplicable in a § 1983 suit, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution. *Id.* at 314 (internal citations and quotations omitted); *Greathouse v. Vasquez,* No. 20-CV-8748 (PAE) (SN) 2021 U.S. Dist. LEXIS 249704, 2021 WL 6334689, at *12 (S.D.N.Y. Dec. 20, 2021) (same); *Zhang v. City of N.Y.,* No. 17-CV-5415 (JFK) 2018 U.S. Dist. LEXIS 108441, 2018 WL 3187343, at *27 (S.D.N.Y. Jun. 28, 2018). Liability will not be imputed to an official merely on the basis of *respondeat superior*. *See Wallace v. Conroy*, 945 F. Supp. 628 at 637 (S.D.N.Y. 1996). Accordingly, an allegation that a defendant is in a high position of authority, such as the warden of a prison, is, in and of itself, insufficient to impose liability absent proof of personal involvement in the constitutional deprivation. *See id.* at 637–38. Further, as stated previously, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations. *See Leneau v. Ponte*, No. 16-CV-776 (GHW) 2018 U.S. Dist. LEXIS 12272, 2018 WL 566456, at *40 (S.D.N.Y. Jan. 24, 2018). In order to survive a motion to dismiss, a plaintiff alleging a Section 1983 claim must set forth specific and detailed factual allegations of personal involvement as opposed to bald assertions and conclusory terms.

*See Stuyvesant v. Crane*, No. 23-CV-4394 (LTS), 2023 U.S. Dist. LEXIS 130880, 2023 WL 4848404, at *20 (S.D.N.Y. Jul. 27, 2023).

Plaintiff fails to allege how individual defendants (1) Warden Karen Collins; (2) Captain Adam Rollinson; (3) Captain Christopher Lopez; (4) CO Keesia Leitch; (5) CO Anthony Marden; (6) CO Antonio Graves; and (7) Deputy Commissioner Annais Morales, were personally involved in violating his constitutional rights.  *See* SAC.  In fact, plaintiff does not even mention these seven (7) individual defendants throughout his Second Amended Complaint other than in the caption of his case and the fact that they work, or worked, for DOC.  *See id.* Accordingly, because plaintiff fails to allege any actions whatsoever on the part of defendants (1) Karen Collins; (2) Adam Rollinson; (3) Christopher Lopez; (4) Keesia Leitch; (5) Anthony Marden; (6) Antonio Graves; and (7) Annais Morales, including any actions that could plausibly be construed as personal involvement in any of these alleged constitutional violations, all claims against these defendants must be dismissed for lack of personal involvement.

## POINT V

### PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE CITY OF NEW YORK FOR MUNICIPAL LIABILITY

To state a claim for municipal liability, a plaintiff must plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York,* 490 F.3d 189, 195 (2d Cir. 2007); *see also Rodriguez v. Winski,* 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013).  Municipalities can only be liable for "their own illegal acts." *Pembaur v. City of Cincinatti,* 475 U.S. at 479 (1986) (plurality opinion).  This is to say, the City of New York cannot be "held liable under § 1983 on a theory of *respondeat superior*." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).  A plaintiff seeking to hold a municipality liable as a "person" within the meaning of § 1983, must establish that the municipality

itself was somehow at fault. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 810 (1985). A plaintiff can satisfy the "policy or custom" prong required to establish municipal liability by alleging "the existence of (1) a formal policy, *see Monell*, *supra*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, *see Pembaur*, 475 U.S. 469, 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell,* 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

The Second Amended Complaint comes closest to stating a claim under either the first, third, or fourth categories of *Monell* liability—i.e., "a formal policy," a "custom or usage," or "failure to properly train." However, as set forth below, plaintiff's *Monell* claim should be dismissed with prejudice pursuant to Rule 12(b)(6) because plaintiff's allegations are facially insufficient to hold the City liable under § 1983. First, plaintiff fails to adequately plead the existence of a policy/custom or usage as is necessary. In order for a plaintiff to establish municipal liability by invoking a custom or usage, they need to show that the City "indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may be fairly said to represent official policy." *Buari v. City of New York,* 530 F. Supp. 3d 356, 398 (S.D.N.Y Mar. 30, 2021) (quoting *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006). It is well established that a single isolated incident alleged in a complaint, especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom. *See Oklahoma City*, 471 U.S. 808 at 824; *see also e.g. Hayes v. Perotta,* 751 F. Supp. 2d 597, 601 (S.D.N.Y. 2010); *Jones v. Town*

*of E. Haven,* 691 F.3d 72, 85 (2d Cir. 2012) (holding that three incidents "fell far short of showing a policy, custom, or usage of officers"); *Giaccio v. City of New York,* 308 F. App'x 470, 472 (2d Cir. 2009) (holding that four constitutional violations "falls far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability"); *Price v. City of New York,* No. 15-CV-5871 (KPF) 2018 U.S. Dist. LEXIS 105815, 2018 WL 3117507, at *47 (S.D.N.Y. Jun. 25, 2018) ("But Plaintiff's allegations of three similar constitutional violations do not allow the Court plausibly to infer the existence of a widespread custom or practice that can be attributed to the City.").

"A plaintiff bringing a *Monell* claim also must establish a causal connection between the municipality's official policy and the underlying constitutional violation." *Gaston v. Ruiz*, No. 17-CV-1252 (NGG), 2018 U.S. Dist. LEXIS 112695, 2018 WL 3336448, at *15-16 (E.D.N.Y. Jul. 6, 2018) (citing *City of Canton, supra*, at 385). In fact, "the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). "To establish *Monell* liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." *Mercado v. City of N.Y.*, No. 08-CV-2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, 2011 WL 6057839, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting *Monell,* 436 U.S. at 694); *see also Morris v. City of New York,* No. 20-CV-9314 (GBD), 2021 U.S. Dist. LEXIS 186917, 2021 WL 4461994, at *19-22 (S.D.N.Y. Sept. 29, 2021) ("Plaintiff's *Monell* claim fails because the [complaint] does not sufficiently allege the existence of a policy, custom or practice that was the driving force of any violation of Plaintiff's constitutional rights."). "Boilerplate allegations of a municipal practice or custom" do not meet the plausibility standard for a *Monell* claim. *Rodriguez v. City of New York Dep't of Education*, No.

21-CV-6551 (LDH) (RER) 2023 U.S. Dist. LEXIS 56977, 2023 WL 2741179, at *10 (E.D.N.Y. Mar. 31, 2023) (*citing Jackson v. Nassau Cnty.,* 552 F. Supp. 3d 350, 381 (E.D.N.Y. 2021); *see also Santiago v. City of N.Y.,* No. 09-CV-856 (BMC) 2009 U.S. Dist. LEXIS 75372, 2009 WL 2734667, at *7 (E.D.N.Y. Aug. 18, 2009) ("[I]t is now clear that such boilerplate [*Monell*] claims do not rise to the level of plausibility"); *Genovese v. Town of Southhampton,* 921 F. Supp. 2d 8, 25 (E.D.N.Y. 2013) ("[V]ague and conclusory assertions that the Town should have known that officers would encounter these situations, and that the Town did not adequately train officers to properly respond …without any actual supporting [allegations]…are insufficient to adequately plead a *Monell* claim.").

Plaintiff fails to identify any specific policy, practice, or custom that resulted in a violation of his rights. Plaintiff merely makes boilerplate assertions that "DOC leadership and policymakers are 'knowingly and deliberately indifferent to the possibility that its officers violate the constitutional rights of individuals…'" and DOC's "need for better supervision to protect against constitutional violations was obvious… No doubt, City's failure to supervise or even discipline its employees amounted to deliberate indifference." *See* SAC at ¶¶ 301-303. Plaintiff does not plead facts to support the existence of a pattern of similar constitutional violations, or a likelihood that a particular personnel decision would result in a violation of one or more of plaintiff's rights. The conclusory nature of plaintiff's allegations alone warrants dismissal of this claim. *See, e.g. Cuevas v. City of N.Y.,* No. 07-CV-4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in *Iqbal*"). Plaintiff repeats allegations that are prototypical of the type of "vague and conclusory assertions…without any actual

supporting evidence" that courts have found "insufficient to adequately plead a *Monell* claim." *Genovese*, 921 F. Supp. 2d at 25.

Further, the Second Amended Complaint seeks to establish municipal liability based on a "failure to supervise or discipline" theory. *See* SAC at ¶¶ 301–303. To state a *Monell* claim based on a failure to supervise, a plaintiff must allege "(1) . . . a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Treadwell v. Cty. of Putnam*, No. 14-CV-10137 (KMK), 2016 U.S. Dist. LEXIS 44335, at *9 (S.D.N.Y. Mar. 30, 2016). Once again, plaintiff does not allege any such facts, and only asserts conclusory and boilerplate allegations, which are insufficient to plead a *Monell* claim. *See Genovese*, 921 F. Supp. 2d at 25.

To show deliberate indifference, a plaintiff must allege facts to demonstrate that the policymaker's inaction was the product of conscious choice. *Cash v. County of Erie,* 654 F.3d 324, 334 (2d Cir. 2011). A pattern of similar constitutional violations by untrained employees is typically necessary to demonstrate deliberate indifference for the purposes of a theory of a failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Beyond a showing of deliberate indifference, a plaintiff must also identify a specific deficiency in training or supervision and establish that that deficiency is causally related to the injury. *See, e.g., Jenkins v. City of N.Y.,* 478 F.3d 76, 94 (2d Cir. 2007); *Walker v. City of N.Y.*, 974 F.2d 293, 298 (2d Cir. 1992), *cert. denied*, 507 U.S. 961 (1993). Notably, municipal liability is "at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. To show deliberate indifference as a result of inadequate hiring or screening, plaintiff must demonstrate that the plainly obvious consequence of the hiring decision would be that the particular employee was highly likely to inflict the particular injury suffered by the plaintiff and a strong connection between the employee's background and the

violation of the specific constitutional right. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 412 (1997). Again, plaintiff has done none of this and his conclusory allegations are insufficient to plead a *Monell* claim.

Accordingly, plaintiff has failed to sufficiently allege a claim for municipal liability, and thus his claim should be dismissed.

## POINT VI

### PLAINTIFF'S OTHER FEDERAL CLAIMS BROUGHT PURSUANT TO 42 U.S.C. § 1983 AGAINST THE CITY OF NEW YORK ALL SHOULD BE DISMISSED

Plaintiff brings the following claims, under 42 U.S.C. § 1983, against only the City of New York (1) Due Process; (2) Conditions of Confinement; (3) Religious Discrimination; and (4) Equal Protection, and therefore, these claims should be dismissed.

A municipality can only be held liable under Section 1983 if the plaintiff's injury is caused by the "government's policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *See id.* at 691. Municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. 51, 60 (quoting *Monell*, 436 U.S. 658, 691). As discussed in Point V, *supra*, plaintiff seeking to hold a municipality liable as a "person" within the meaning of §1983, must establish that the municipality itself was somehow at fault through an official policy or custom that caused the plaintiff to be subjected to a denial of a federally guaranteed right. *See Wray,* 490 F.3d 189, 195; *Oklahoma City,* 471 U.S. 808, 810. Here, plaintiff has not pled that any official policy or custom caused the alleged constitutional violations of (1) Due Process; (2) Conditions of Confinement; (3) Religious Discrimination; (4) Equal Protection; and (5) Access to Courts and Counsel. *See* SAC at Pages 30-34; *see, e.g., Jenkins v. City of New York,* 478 F.3d 76, 94-95 (2d

Cir. 2007) ("Because [plaintiff] failed to allege facts establishing that any constitutional deprivations he suffered were a consequence of the City's [custom or policy], summary judgment dismissing his section 1983 claim . . . was proper.").

It is also established that, as discussed in Point V, *supra*, isolated incidents, involving officials below the policy making level, will not be enough to establish a municipal policy or custom. *See Oklahoma City*, 471 U.S. 808 at 824; *see also e.g. Hayes,* 751 F. Supp. 2d 597, 601; *Jones,* 691 F.3d 72, 85; *Giaccio,* 308 F. App'x 470, 472; *Price,* 2018 U.S. Dist. LEXIS 105815, 2018 WL 3117507, at *47. Therefore, plaintiff's claims of (1) Due Process; (2) Conditions of Confinement; (3) Religious Discrimination; and (4) Equal Protection brought specifically and only against the City of New York, and his claim of access to Courts and counsel should be dismissed.

In any event, plaintiff has not plead sufficient facts to make out his claims of (1) Due Process; (2) Conditions of Confinement; (3) Religious Discrimination; and (4) Equal Protection.

## A. Plaintiff's Due Process Claim Should Be Dismissed

Plaintiff's process claims should be dismissed because plaintiff's claims fail to state a plausible claim for relief for both substantive and procedural due process.

Plaintiff's substantive due process claim is devoid of allegations of affirmative government actions, and how those specific action shocked contemporary conscience, especially as plaintiff pled that he was on court-ordered lockdown, presumably to protect plaintiff and/or other inmates. *See* Dkt. No. 25, Amended Complaint ¶ 49 (citing *Kwaine Thompson v. City of New York, et al.* No. 22-CV-1458 (JPO) (KHP), ECF No. 113 at ¶ 6); *see also Velez v. Levy,* 401 F.3d 75, 94 (2d Cir. 2005) (Affirming a dismissal of a plaintiff's substantive due process claim because the alleged conduct failed to be so egregious to be sufficiently shocking); *see also Kaminski v. Semple*, No. 3:19-CV-143 (SRU), 2019 U.S. Dist. LEXIS 56335, 2019 WL 1454950 at *10 (D. Conn. Apr. 2, 2019) (Dismissing a claim because the court could not discern a government action so egregious

to rise to the level of a substantive due process violation). Therefore, plaintiff's substantive due process claim should be dismissed.

Plaintiff's procedural due process claim fails because plaintiff does not sufficiently allege what process was due to him and the manner in which that process was denied. *See Koller v. Wachovia Bank, N.A.*, No. 3:10-CV-00735 (JAM), 2016 U.S. Dist. LEXIS 122989, 2016 WL 4773133 at *17 (D. Conn. Sep. 12, 2016) ("[P]laintiff has not shown that she lacked a post-deprivation procedure and remedy to seek the return of her property."). Therefore, plaintiff's due process claim must be dismissed.

## B. Plaintiff's Conditions of Confinement Claim Should Be Dismissed

Plaintiff alleges that he suffered from unconstitutional conditions of confinement because (1) he was withheld cleaning supplies, (2) unspecified defendants failed to observe DOC separation orders, and (3) unspecified defendants exhibit deliberate indifference to plaintiff's reports about his health and medical conditions. *See* SAC, at ¶¶ 251, 252, 255

First, plaintiff has pled insufficient facts to establish the objective prong of this claim. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness."). "[T]here are many exposures of inmates to unsanitary conditions that do not amount to a constitutional violation," and "any analysis must consider both the duration and the severity of an inmate's experience of being exposed to unsanitary conditions." *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015).

The deprivations of which plaintiff complains do not rise to an unconstitutional level. Cases in which deliberate indifference to conditions of confinement has been found have involved much more severe circumstances than those alleged by plaintiff here. In *Willey*, for example, the Second Circuit vacated the dismissal of an inmate's deliberate indifference claim where he was

exposed to, inter alia, 1) a cell in which the toilet did not flush, exposing the inmate to human waste, and in which a Plexiglas cell shield had been placed over the bars, restricting air flow, for an unknown period, and 2) a filthy observation cell smelling of urine and feces, in which he was kept naked for fourteen days. *Willey*, 801 F.3d 51, 68. And in *Darnell v. Pineiro*, 849 F.3d 17, 23-24 and 36-37 (2d Cir. 2017), the Second Circuit overturned a district court's grant of summary judgment to defendants because the "appalling" and "atrocious" conditions to which inmates were exposed, albeit only for periods of less than 24 hours, included cells overcrowded to the point where there was nowhere to stand, cells containing unusable toilets covered with "some combination of feces, maggots, urine, vomit and rotten milk" and cells that had "feces and dried urine caked to the floors." *Id*. Plaintiff does not allege conditions even approaching such a level of severity, including, *inter alia*, his allegations of withheld clearing supplies, separation orders, or rehashing his deliberate indifference to medical needs claim here (which should be dismissed for these reasons as well as the reasons discussed in Point III(B), *supra*). Nor has plaintiff pled that the conditions he alleged posed an *excessive* risk to his health and safety, or any serious effects to his health. Therefore, plaintiff's claim should be dismissed.

## C.     Plaintiff's Religious Discrimination Claim Should Be Dismissed

Plaintiff fails to state a free-exercise claim. Plaintiff pleads insufficient facts to demonstrate (1) that he sincerely held certain religious beliefs, (2) notified anyone in DOC of his alleged religious beliefs, (3) notified anyone in DOC of his alleged dietary restrictions or (3) that plaintiff requested the right to practice his religion. *See. Messina v. Mazzeo*, 854 F. Supp. 116, 137 (E.D.N.Y. 1994) (dismissing free-exercise claim based on denial of kosher food because inmate did not allege that he told prison officials he required kosher food).

Furthermore, legitimate penological may that justify impinging conduct, including prison security and institutional safety goals. *See, e.g.*, *Shapiro v. Cmty. First Servs.*, Inc., No. 11-CV-

4061 (KAM) (LB), 2014 U.S. Dist. LEXIS 42459, at *29 (E.D.N.Y. March 27, 2014); *Lombardo v. Holanchock*, No. 07-CV-8674 (DLC), 2008 U.S. Dist. LEXIS 48753, 2008 WL 2543573 at *6 (S.D.N.Y. June 25, 2008); *Muhammad v. City of N.Y. Dep't of Corr.*, 904 F. Supp. 161, 189 (S.D.N.Y. Oct. 16, 1995). It is well-established "that a generally applicable policy will not be held to violate a [prisoner's] right to free exercise of that religion if that policy is reasonably related to legitimate penological interests." *Hall v. Ekpe*, 408 F. App'x 385, 387-88 (2d Cir. 2010). After defendant has made its showing, the burden then shifts back to the prisoner to "show that these articulated concerns were irrational." *Id.* (internal brackets and quotations omitted).

As an initial matter, plaintiff does not allege any facts demonstrating he has a sincerely held belief in Islam. This deficiency is fatal to plaintiff's free-exercise claim. *See, e.g.*, *Shapiro*, 2014 U.S. Dist. LEXIS 42459, at *31, 34-35 (granting 12(b)(6) motion where, among other things, plaintiff failed to "demonstrate" a sincerely held belief). Plaintiff has only plead that he is "a practicing Muslim and, as part of his beliefs, maintains a halal diet." *See* SAC at ¶ 157. Plaintiff makes no effort to discuss his adherence to faith, his past participation in congregate services, or to otherwise demonstrate that his beliefs are sincerely held.

Assuming that plaintiff has made the threshold showing, plaintiff himself identified a legitimate penological interest that justifies the allegedly impinging conduct. In particular, plaintiff alleged that he is on court-ordered lockdown, presumably to protect plaintiff and/or other inmates. *See* Dkt. No. 25, Amended Complaint ¶ 49 (citing *Thompson v. City of New York, et al.* No. 22-CV-1458, ECF No. 113 at ¶ 6). These prior admissions are binding on plaintiff and may be considered by the Court. *See Sulton v. Wright*, 265 F. Supp. 2d 292, 295 (S.D.N.Y. May 29, 2003) ("[a]dmissions in earlier complaints remain binding when a plaintiff files subsequent pleadings) (citing *Andrews v. Metro N. C.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *see also Sulton v. Wright*,

265 F. Supp. 2d 292, 295. ("As such, the Court may consider them on a motion to dismiss under Rule 12(b)(6).") (citations omitted).  Therefore, defendant had a legitimate penological interest.

Accordingly, plaintiff has failed to state a violation of his free-exercise rights against the City of New York, and therefore this claim should be dismissed.

## D.     Plaintiff's Equal Protection Claim Should Be Dismissed

Plaintiff fails to sufficiently plead an equal protection claim under the Fourteenth Amendment. To state a cognizable equal protection claim "a plaintiff must allege purposeful discrimination directed at an identifiable or suspect class or that, as a class of one, he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gil-Cabrera v. Dep't of Corr.*, No. 20-CV-09493 (LTS) (SDA), 2021 U.S. Dist. LEXIS 221479, 2021 WL 5282620, at *5 (S.D.N.Y. Sept. 27, 2021), *report and recommendation adopted sub nom. Gil-Cabrera v. City of New York*, No. 20-CV-09493 (LTS) (SDA), 2021 U.S. Dist. LEXIS 239144, 2021 WL 5910055 (S.D.N.Y. Dec. 14, 2021).  "A plaintiff must allege that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination, and to be similarly situated, means that the individuals with whom the plaintiff attempts to compare himself must be similarly situated in all material respects." *Colon v. City of New York*, No. 19-CV-10435 (PGG) (SLC) 2021 U.S. Dist. LEXIS 184570, 2021 WL 4427169 at **21–22 (S.D.N.Y. Sept. 26, 2021).

Here plaintiff alleges that he was mistreated based on his religion as a Muslim.  *See* SAC ¶ 279.  Plaintiff fails to directly identify any similarly situated individuals who were treated differently. *See Mallet v. Johnson*, No. 09-CV 8430 (JGK), 2011 U.S. Dist. LEXIS 73249, 2011 WL 2652570 at *15-16 (S.D.N.Y. July 7, 2011) (dismissing plaintiff's equal protection claim because plaintiff did not assert class membership in a protected class nor allege that he was being treated differently from any similarly situated individuals). Courts have dismissed equal protection

claims in situations where plaintiffs failed to "adequately identify any similarly situated individuals who were treated differently." *Assoko v. City of New York,* 539 F. Supp. 2d 728, 735 (S.D.N.Y. 2008). Here plaintiff's allegations are too generalized and fail to include specific allegations demonstrating other similar situated individuals that were treated differently.

Plaintiff's equal protection claim also fails because plaintiff does not allege that the defendants knew they were treating plaintiff differently from similarly situated individuals. *See Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 306 (S.D.N.Y. 2013); *see also Latrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999). Here, plaintiff merely includes a broad generalized allegation that he was discriminated against. Plaintiff does not allege defendants' intentional conduct or knowledge that they were treating other individuals differently. Therefore, plaintiff's due process claim is factually deficient and must also be dismissed.

### POINT VII

**PLAINTIFF'S ALLEGATIONS AGAINST CERTAIN INDIVIDUAL DEFENDANTS DO NOT TO RISE TO THE LEVEL OF CONSTITUTIONAL VIOLATIONS AND SHOULD BE DISMISSED**

Plaintiff's allegations against individual defendants: (1) Captain Abraham Palermo; (2) Captain Paul Moodie; (3) CO Stella Bethea; (4) Captain Alexander; (5) Doc Assistant Commissioner Christopher Miller; and (6) SRT Officers (a) Murphy White, (b) Paul White, (c) Michael Zderko, (d) Clarence Curley, (e) Alonzo Butler, (f) Samantha Elizer, and (g) Andre Anderson do not to rise to the level of constitutional violations, and therefore claims against these defendants should be dismissed. The actions pled against these individual defendants are insufficient to establish federal claims, and plaintiff improperly group please claims against these defendants, as discussed in Point II, *supra*, without alleging which specific alleged actions performed by which individual defendant caused which specific violation. Furthermore, as

discussed in Point X, *infra*, plaintiff's claims under New York state law, including plaintiff's claim of negligence which was improperly group pled against all defendants, should all be dismissed on procedural and substantive grounds. Therefore, defendants Palermo, Moodie, Bethea, Alexander, M. White, P. White, Zderko, Curley, Butler, Elizer, and Anderson should be dismissed. At the very least, it is not clearly established whether the allegations pled against all these individual defendants are unconstitutional, and therefore they are each entitled to qualified immunity.

## A.  Plaintiff's Claims Against Captain Abraham Palermo Should be Dismissed

As an initial matter, plaintiff failed to sufficiently put defendant Palermo on notice as to what claims are brought against him due to plaintiff's impermissible group pleading as discussed in Point II, *supra*,  In any event, the allegations pled in the Second Amended Complaint against defendant Palermo do not rise to the level of constitutional violations and therefore defendant Palermo should be dismissed from this action.

Plaintiff alleges that "[o]n or about February 4, 2023, Defendant Palermo escorted Plaintiff to the clinic for his daily medications. Upon arrival, Defendant Blount declined to give Plaintiff his medication, and even though Captain Palermo tried to step in and say something without much luck." *See* SAC at ¶ 106.  Plaintiff pleads that defendant Palermo took affirmative steps to attempt to ensure that plaintiff received his medication, which is insufficient for a constitutional violation. Accordingly, the allegations pled against defendant Palermo do not rise to the level of constitutional violations, and therefore defendant Palermo should be dismissed from this action.

## B.  Plaintiff's Claims Against Captain Paul Moodie Should be Dismissed

As an initial matter, plaintiff failed to sufficiently put defendant Moodie on notice as to what claims are brought against him due to plaintiff's impermissible group pleading as discussed in Point II, *supra*,  In any event, the allegations plead in the Second Amended Complaint against

defendant Moodie do not rise to the level of constitutional violations and therefore defendant Moodie should be dismissed from this action.

Plaintiff alleges that "Defendant Captain Moodie even tried to respond to Plaintiff's medical emergencies, but Defendant Henry did not allow him to assist or intervene." *See id.* at ¶ 118. Plaintiff pleads that defendant Moodie took affirmative steps to try to respond to plaintiff's medical emergency, which is insufficient for a constitutional violation. Accordingly, the allegations pled against defendant Moodie do not rise to the level of constitutional violations, and therefore defendant Moodie should be dismissed from this action.

## C. Plaintiff's Claims Against CO Stella Bethea Should be Dismissed

As an initial matter, plaintiff failed to sufficiently put defendant Bethea on notice as to what claims are brought against her due to plaintiff's impermissible group pleading as discussed in Point II, *supra*, In any event, the allegations plead in the Second Amended Complaint against defendant Bethea do not rise to the level of constitutional violations and therefore defendant Bethea should be dismissed from this action.

Plaintiff alleges that "Defendant Bethea openly aired her disdain for Thompson and acknowledged that other inmates could access the outdoors and common areas. In part, this was because of Bethea's relationship to CO Kenol—her biological sister—who Plaintiff had named as a defendant in Thompson III." *See id.* at ¶ 84. Here, plaintiff pleads that defendant Bethea only made verbal comments to plaintiff, but did not take any specific actions to prevent plaintiff from receiving services or violate plaintiff's constitutional rights. Accordingly, the allegations pled against defendant Bethea do not rise to the level of constitutional violations, and therefore defendant Bethea should be dismissed from this action.

**D.     Plaintiff's Claims Against Captain Alexander Should be Dismissed**

As an initial matter, plaintiff failed to sufficiently put defendant Alexander on notice as to what claims are brought against her due to plaintiff's impermissible group pleading as discussed in Point II, *supra*,  In any event, the allegations plead in the Second Amended Complaint against defendant Alexander do not rise to the level of constitutional violations and therefore defendant Alexander should be dismissed from this action.

Plaintiff alleges that "plaintiff filed multiple grievances about Defendant Alexander," and that defendant Alexander walked up to his bed "and stated "Your separation order don't mean shit to me. I still do what I want, you will get maced and ticketed like I did in the clinic…" *See id.* at ¶ 196-201.   Here, plaintiff pleads only that defendant Alexander made verbal comments to plaintiff, but did not take any specific actions to prevent plaintiff from receiving services, use excessive force on plaintiff, or violate plaintiff's constitutional rights.  Accordingly, the allegations pled against defendant Alexander do not rise to the level of constitutional violations, and therefore defendant Alexander should be dismissed from this action.

**E.     Plaintiff's Claims Against Assistant Commissioner Christopher Miller Should be Dismissed**

As an initial matter, plaintiff failed to sufficiently put defendant C. Miller on notice as to what claims are brought against him due to plaintiff's impermissible group pleading as discussed in Point II, *supra*,  In any event, the allegations pled in the Second Amended Complaint against defendant C. Miller do not rise to the level of constitutional violations and therefore defendant C. Miller should be dismissed from this action.

Plaintiff alleges that "Meanwhile, another high-ranking DOC official—who Plaintiff later learned was Assistant Commissioner Miller—stood outside the cell. Once Fluker and the other CIB officers left, Plaintiff heard a conversation between Fluker and the commissioner, in which

Fluker stated that he would continue to harass and intimidate Plaintiff for his litigation against the City." *See id.* at ¶ 89. Here, plaintiff only alleges that defendant C. Miller heard defendant Fluker make a statement, but does not allege that defendant C. Miller was present for any alleged constitutional violation, committed any alleged constitutional violation, had a reasonable opportunity to prevent an alleged constitutional violation from occurring, or that a constitutional violation occurred *after* this conversation that defendant C. Miller could have intervened. Accordingly, the allegations plead against defendant C. Miller do not rise to the level of constitutional violations, and therefore defendant C. Miller should be dismissed from this action.

### F.    Plaintiff's Claims Against SRT Officers Murphy White, Paul White, Michael Zderko, Clarence Curley, Alonzo Butler, Samantha Elizer, and Andre Anderson Should be Dismissed

As an initial matter, plaintiff failed to sufficiently put defendant SRT Officers M. White, P. White, Zderko, Curley, Butler, Elizer, or Anderson on notice as to what claims are brought against them due to plaintiff's impermissible group pleading as discussed in Point II, *supra*, In any event, the allegations plead in the Second Amended Complaint against these individual defendants do not rise to the level of constitutional violations and therefore defendants M. White, P. White, Zderko, Curley, Butler, Elizer, and Anderson should be dismissed from this action.

Plaintiff alleges that "While at West, Plaintiff was subject to arbitrary searches, including strip searches and inside his cell, on an almost daily basis by unnamed SRT officers (badge nos. 102, 120, 182, 74, 75, 78, 77, 79, 65, 80, 88, 82, 203, 111, 113, and 112), as well as an ESU captain and officer (badge nos. 28 and 4190, respectively)." *See id.* at ¶ 81. Here, plaintiff makes conclusory allegations and insufficiently pleads that SRT Officers, searched his jail cell and performed strip searches, which are permissible actions for correction officers to perform, without alleging that these individuals did so to violate plaintiff's constitutional rights. In any event, plaintiff failed to plead sufficient personal involvement for these specific individual defendants.

Accordingly, these allegations pled against defendant SRT Officers M. White, P. White, Zderko, Curley, Butler, Elizer, and Anderson do not rise to the level of constitutional violations, and therefore these individual defendants should be dismissed from this action.

**POINT VIII**

**PLAINTIFF'S FEDERAL CLAIMS AGAINST SPECIFIC INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED**

Many of plaintiff's federal claims brought against specific individual defendants are insufficiently pled, and accordingly should be dismissed.

**A.     Plaintiff's Claim for Excessive Force Against Defendants Branche and McNeil Should Be Dismissed**

Plaintiff's claim of excessive force, brought pursuant to 42 U.S.C. §1983 against defendants Branche and McNeil, should be dismissed.  Plaintiff's Second Amended Complaint does not plead that defendant Branche or McNeil used any alleged excessive physical force.  In fact, these two individual defendants are not even mentioned in plaintiff's Excessive Force count other than being named, while plaintiff makes specific allegations against another individual defendant, "For example, Defendant Henry entered Plaintiff's cell and used pepper before closing the door shut and letting him nearly suffocate."  *See* SAC at ¶ 236.

Plaintiff's only mention of defendant McNeil in the Second Amended Complaint does not include any alleged use of excessive physical force and is insufficient to make out the claim.  *See id.* at ¶ 70 ("According to Defendants McNeil and Henry, the transfer was part of an attempt to stymie Plaintiff's various lawsuits against the City and officers. They even added that, apart from being sent to West Facility, Plaintiff would soon face other repercussions for his decision to sue (e.g., family visits would soon be cut off).");  *see also id.* at  ¶ 86 ("Plaintiff often was exploited and purposely forced to shower in front of female officers, which is not a first for West Facility's

detainees. McNeil even added that Plaintiff would never have a shower curtain and thus be forced to shower fully exposed to female COs."). Therefore, plaintiff's federal excessive force claim against defendant McNeil is insufficiently pled and should be dismissed.

In addition, plaintiff's only mention of defendant Branche in the Second Amended Complaint does not include any alleged use of excessive physical force by defendant Branche and is insufficient to make out the claim. *See id.* at ¶¶ 112-113, 115-116 ("Plaintiff alerted officers, including Defendant Wolosik, of another medical emergency and breathing difficulties …Defendant Branche refused to call an emergency, however, leaving Thompson on the floor helpless for hours. "I'm not calling no clinic for Thompson," she exclaimed, "I hope he dies." … Around that same time, Defendant Acting Warden Henry walked into Plaintiff's cell and sprayed mace or another similar chemical agent throughout the room before closing the door shut … Henry called out to Branche, instructing her to keep Thompson's cell locked. "Let him breathe in as much mace as possible. I want to send Thompson to the hospital."); *see also id.* at ¶¶ 120, 122 ("Plaintiff had a separation order against Defendant Branche, which was rarely followed or applied by the Department or its staff. … Plaintiff made multiple reports about Defendant CO Branche and obtained a separation order. However, the separation order was nothing more than an exercise in futility because, Branche nonetheless continued in the same position, working in close proximity to Plaintiff and finding new ways to harass him."). Therefore, plaintiff's federal excessive force claim against defendant Branche is insufficiently pled and should be dismissed.

## B. Plaintiff's Claim for Religious Discrimination Against Defendant Miller Should Be Dismissed

Plaintiff fails to specify whether his claim for Religious Discrimination is brought against defendant Ronald Miller or Christopher Miller. *See id.* at 33-34. In any event, the claim is insufficient as to both individual defendants and should be dismissed.

Plaintiff's allegations against defendant Ronald Miller in the Second Complaint make no mention of any action that could remotely be considered discrimination based on religion, which is insufficient. *See id.* at ¶ 71 ("Defendant Acting Warden Miller visited Plaintiff's cell on or about January 6, 2023, to reinforce Defendants' retaliatory motive. Miller said that, so long as Thompson was at West, he'd be placed in enhanced restraints even though they were not required or helpful. "You better drop your lawsuits if you know what's good for you," Miller added."). Similarly, plaintiff's allegations against defendant Christopher Miller also make no mention of any action that could remotely be considered discrimination based on religion. *See id.* at ¶ 71 ("Meanwhile, another high-ranking DOC official—who Plaintiff later learned was Assistant Commissioner Miller—stood outside the cell. Once Fluker and the other CIB officers left, Plaintiff heard a conversation between Fluker and the commissioner, in which Fluker stated that he would continue to harass and intimidate Plaintiff for his litigation against the City."). Therefore, this claim is insufficiently pled and should be dismissed as to defendants Ronald Miller and Christopher Miller.

**C.     Plaintiff's Claim for Disability Discrimination Pursuant to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act Against Defendant Miller Should Be Dismissed**

Plaintiff fails to specify whether his claim for Discrimination Pursuant to the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act is brought against defendant Ronald Miller or Christopher Miller. *See id.* at 37-38. In any event, the claim is insufficient as to both individual defendants and should be dismissed.

Because Title II of the ADA provides redress to disabled individuals for discrimination by a public entity, and individuals may not be sued. *See Hallett v. New York State Dep't of Correctional Servs.*, 109 F. Supp. 2d 190, 199 (S.D.N.Y. 2000); *Cerrato v. Durham*, 941 F. Supp. 388, 395 (S.D.N.Y. 1996); *Lee v. State of New York Dep't of Corr. Servs.*, No. 97-CV-7112, 1999

U.S. Dist. LEXIS 13214, 1999 WL 673339, at *13 n. 14 (S.D.N.Y. Aug. 30, 1999). Accordingly, the ADA and Rehabilitation Act claims against defendant "Miller" should be dismissed.

Furthermore, as discussed in Point VIII(B), *supra*, the only mention of the two defendant Millers in the Second Amended Complaint has nothing to do with disability discrimination (*see* Dkt. No. ¶¶ 71, 89). Therefore, this claim is insufficiently pled and should be dismissed as to defendants Ronald Miller and Christopher Miller.

**D.** **Plaintiff's Claim for Equal Protection Against Defendant Miller Should Be Dismissed**

Plaintiff fails to specify whether his claim for Religious Discrimination is brought against defendant Ronald Miller or Christopher Miller. *See* SAC at 36. In any event, the claim is insufficient as to both individual defendants and should be dismissed.

As discussed in Point VIII(B), *supra*, the allegations made against defendants Ronald Miller and Christopher Miller are insufficient to plead a claim for Equal Protection (*see* Dkt. No. ¶¶ 71, 89). Therefore, this claim is insufficiently pled and should be dismissed as to defendants Ronald Miller and Christopher Miller.

**POINT IX**

**PLAINTIFF'S CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT SHOULD BE DISMISSED**

Plaintiff's Americans with Disabilities Act ("ADA") claim should be dismissed because it is based solely on a bare, conclusionary allegation, and does not assert actual discrimination based on a disability.

Plaintiff alleges that he had "hearing impairment" and requested "accommodations to DOC employees, none of which proved to be successful." *See* SAC at ¶¶ 146, 148. Plaintiff also alleges that he walks with a cane, which he has used since 2022. *See* SAC, ¶¶ 98, 145. Plaintiff pleads vague and conclusory allegations, without any specificity, that he was subject to "multiple forms

of disability discrimination." *See id.* at ¶ 292. Defendants challenge plaintiff's alleged conditions because plaintiff was able to fully participate in a jury trial before Your Honor in his other matter, *Kwaine Thompson v. City of New York, et al.*, No. 22 Civ. 1458 (JPO) (KHP), without the use of hearing aides or a cane, frequently responding to, and making outbursts regarding, statements made by the Court, his attorney, or defense counsel, and easily walking around the courtroom without assistance or ever requesting a cane. In any event, defendant also challenges the allegation that plaintiff was discriminated against *based on* his alleged conditions.

Under the ADA, there are three titles under which a plaintiff may bring a claim. Plaintiff cites to 42 U.S.C. § 12132, or Title II, under which his claim arises, but, plaintiff cannot bring his claim against defendants Miller under this section. As discussed in Point IX(C), *supra*, Title II of the ADA does not provide "for individual capacity suit." *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 327 (N.D.N.Y. 2023). *See Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007) ("This Court and others have held that official capacity claims are not viable under the ADA."); *see also Candelaria v. Cunningham*, 98-CV-6273 (LAP), 2000 U.S. Dist. LEXIS 8669, 2000 WL 798636 at *7 (S.D.N.Y. June 19, 2000) ("[B]ut rather hold that individuals may not be held liable under the ADA … in either their individual or official capacities.") The only potentially suable defendant under Title II is the City of New York. However, plaintiff fails to plead a plausible Title II claim against the City of New York.

"To establish a claim under Title II, a plaintiff must demonstrate '(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability.'" *Tardif v. City of N.Y.*, 991 F.3d 394, 404 (2d Cir. 2021). "A plaintiff may base her Title II claim on any of three theories of liability:

disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation." *Id.* (citing *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009)). Lastly, an ADA claim under Title II cannot challenge the services provided as inadequate; the claim requires *an assertion of actual discrimination based on their disability*. *See id.* at 406.

Because this claim is associated with plaintiff's alleged "hearing impairment" or alleged use of a cane, plaintiff does not assert the manner in which he was discriminated against based upon his disability. *See Rockefeller v. Dutchess Cty. Dep't of Soc. Servs.*, No. 25-CV-5210 (KMK), 2025 U.S. Dist. LEXIS 139172, 2025 WL 2042309 at *3 (S.D.N.Y. July 21, 2025) (granting a motion to dismiss because the plaintiff failed to plead the nature of her disability or the role it played in the alleged discrimination).   In fact, throughout his lawsuit, plaintiff alleges that his discrimination was based on factors other than his alleged hearing impairment or use of a cane, including, specifically, retaliation against plaintiff for filing lawsuits against DOC.  *See* SAC, at ¶¶ 4-5, 55-59, 69.  Therefore, plaintiff's ADA claim should be dismissed.

**POINT X**

**PLAINTIFF'S  CLAIMS  BROUGHT  UNDER
NEW YORK STATE LAW AND NEW YORK
CITY LAW SHOULD BE DISMISSED**

To the extent that plaintiff alleges any claims under New York state law or New York City law, *i.e.* Count 11 (New York State Constitution violations); Count 12 (New York State Statutory violations); Count 13 (negligence); Count 14 (negligent hiring, training, and supervision); Count 15 (negligent or intentional infliction of emotional distress); Count 16 (Violation of New York City Administrative Code); Court 17 (battery/assault), all such claims should be dismissed.

**A.      Plaintiff Failed to Plead Compliance with General Municipal Law**

Plaintiff's claims brought under New York state law fail because plaintiff has failed to satisfy either the statutory or legal requirements necessary to bring this claim.

Under New York law, filing a notice of claim is a condition precedent to bringing a tort action a municipal entity or its employees. *See* General Municipal Law § 50-e; *Fincher v. Cty. of Westchester*, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). These provisions apply to state law claims even when they are brought in federal court. *See Hardy v. N.Y.C. Health & Hosps. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999). In New York, "[n]otice of claim requirements are construed strictly" and "failure to comply with those requirements ordinarily requires a dismissal for failure to state a cause of action." *Taylor*, 904 F. Supp. 2d at 234 (internal marks omitted).

"[T]he notice of claim requirement is "strictly construed."" *Norman v. City of New York*, No. 20-CV-5560 (LTS), 2022 U.S. Dist. LEXIS 144631, 2022 WL 3354707, at *6 (S.D.N.Y. Aug. 12, 2022) (quoting *Schoolcraft v. City of New York*, 81 F. Supp. 3d 295, 300 (S.D.N.Y. 2015)). "Federal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." *Da Mata v. City of New York*, No. 21-CV-155 (KPF), 2023 U.S. Dist. LEXIS 2133, 2023 WL 112449, at *17 (S.D.N.Y. Jan. 5, 2023).

Furthermore, the law requires that a complaint allege service of the notice of claim. *See* N.Y. Gen. Mun. L. § 50-i(1) ("it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice [of claim]"). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy,* 164 F.3d 789, 794.

To the extent that plaintiff alleges claims under New York state law against the City of New York and government employees, plaintiff was required to satisfy the conditions of the General Municipal Law. Specifically, plaintiff was required to file a notice of claim and to allege in the complaint that he satisfied the conditions precedent to suit. *See* General Municipal Law §

50-e. Plaintiff does not allege anywhere in the Second Amended Complaint that he filed a notice of claim. Defendant City also does not have independent information to show that plaintiff filed a timely notice of claim regarding this matter, and in fact, all information points towards plaintiff not filing a notice of claim. Accordingly, all of plaintiff's claims brought under New York state law should be dismissed for failing to comply with General Municipal Law.

**B.     Plaintiff's Claims Under New York State Law and New York City Law Should Be Dismissed for Other Reasons**

Failure to file a timely Notice of Claim is fatal to plaintiff's claims brought under New York State law. In addition, as discussed in Point II, *supra*, plaintiff improperly group pleads and does not plead personal involvement related to plaintiff's negligence claim. However, plaintiff's claims brought under New York state law and New York City law all fail for other reasons, including the fact that plaintiff's allegations brought under New York state law and New York City law are merely legal conclusions, unsupported by any facts, which only recite the elements of their causes of action. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Furthermore, plaintiff's state law claims should be dismissed for a variety of other reasons including, *inter alia*, (1) plaintiff pleads negligent claims based on intentional conduct, (2) plaintiff's claims of negligent or intentional infliction of emotional distress fall within the ambit of other traditional tort liability, (3) plaintiff pleads insufficient personal involvement of the individual defendants, (4) plaintiff has not sufficiently pled that the City of New York was on notice of any individual defendant's propensity to commit an alleged violation, and (5) plaintiff pleads the individual defendants were all acting within the

scope of their employment. Accordingly, all of plaintiff's claims brought under New York state law and New York City law should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant City of New York respectfully requests that the Court grant its motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in its entirety, together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            November 17, 2025

                        MURIEL GOODE-TRUFANT
                        Corporation Counsel of the City of New York
                        *Attorney for Defendant City*
                        100 Church Street
                        New York, New York 10007
                        (212) 356-1945
                        gaccari@law.nyc.gov

            By:     *s/ Gregory J.O. Accarino*
                        Gregory J.O. Accarino
                        *Senior Counsel*
                        Special Federal Litigation Division

cc:    **BY ECF:**
        Sami Elamad
        *Attorney for Plaintiff*

## <u>CERTIFICATION</u>

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in the foregoing Memorandum of Law, inclusive of point headings and footnotes, is 12,784. I have relied on the word count function of Microsoft Word to prepare this certification.

Dated:      New York, New York
            November 17, 2025

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York
*Attorney for Defendant City*
100 Church Street
New York, New York 10007
(212) 356-1945
gaccari@law.nyc.gov


By:    *s/ Gregory J.O. Accarino*
        Gregory J.O. Accarino
        *Senior Counsel*
        Special Federal Litigation Division