# The Atlantic Foundation

November 13, 2025

**VIA FIRST-CLASS MAIL & EMAIL**

Gregory J.O. Accarino
New York City Law Department
c/o Department of Corrections
100 Church Street
New York, NY 10007

    Re:    Supplemental Legal Hold / Preservation Notice
                 *Thompson v. Lemon, et al.*, S.D.N.Y. No. 23-cv-2102 (JPO)(KHP)

Dear Mr. Accarino:

      As you know, I represent Plaintiff Kwaine Thompson in the above-referenced matter as pro bono counsel. I write to supplement my July 1, 2025 legal hold and preservation notice in light of Plaintiff's Verified Second Amended Complaint, ECF No. 150, filed on October 13, 2025 (the "SAC"), which adds allegations regarding Mr. Thompson's current confinement and ongoing conditions on Rikers Island and other DOC facilities.

      This letter is not intended to narrow or limit the City's existing preservation obligations. Rather, it is to confirm that those obligations extend to the full scope of the SAC and to the continued course of conduct alleged there, including events occurring after the time period described in the First Amended Complaint and in my original notice.

## I.    Subject Matter and Relevant Time Periods

      In addition to the topics set out in my July 1 letter, the subject matter of this litigation now expressly includes, without limitation:

1. Mr. Thompson's return to Rikers Island in or about February 2025, his housing assignments, and any facility transfers, including but not limited to:

    a. his placement at Harmony House; and
    b. his subsequent transfer to "Gangland," OBCC 5 Lower, and any other units or facilities to which he has been moved during the pendency of this litigation.

**Mr. Accarino**
Re:  Litigation Hold
November 13, 2025

2. DOC's handling of separation orders and no-contact directives involving Mr. Thompson and DOC staff, including but not limited to orders pertaining to Captains Alexander and Branche, and DOC's enforcement (or non-enforcement) of those orders.

3. Mr. Thompson's legal access and ability to litigate his criminal and civil matters, including:

    a. access to the law library and to discovery in his criminal cases;
    b. scheduling, cancellation, and interruption of attorney-client visits and legal calls; and
    c. communications between DOC staff, DOC's Office of General Counsel, and the Law Department concerning Mr. Thompson's legal access and this case.

4. Ongoing medical and mental-health care and alleged denial or delay of such care in 2025, including:

    a. access to prescribed medications (including blood pressure and asthma medications);
    b. responses (or lack thereof) to medical emergencies (e.g., heat-related incidents, breathing difficulties, chest pain); and
    c. interactions between Mr. Thompson and DOC medical staff and correction officers when he has sought care.

5. Alleged continued retaliation in 2025 for Mr. Thompson's protected activity (lawsuits and grievances), including but not limited to:

    a. transfers and housing decisions, including removal from Harmony House;
    b. issuance of tickets or other discipline tied to his litigation or grievances;
    c. denial or restriction of programs, recreation, or services; and
    d. threats, harassment, or use of force (including direction to deactivate body-worn cameras) in response to his protected activity.

6. Conditions of confinement in Harmony House and other units to which Mr. Thompson has been assigned, including:

    a. DOC's awareness of, response to, or tolerance of sexual activity among detainees;
    b. DOC's provision (or lack thereof) of prevention, education, and medical resources related to sexually transmitted infections, including HIV and any consideration of PREP or similar measures; and
    c. any PREA-related complaints, investigations, or reports arising from these conditions.

**Mr. Accarino**
Re: Litigation Hold
November 13, 2025

7. Any additional disability-related and religious-practice issues in 2025, including:

    a. accommodation of Mr. Thompson's hearing impairment and mobility limitations;
    b. access to auxiliary aids, TTY or other devices; and
    c. any new incidents relating to religious diet, religious texts, or religious practice since his return to Rikers.

The relevant time period for purposes of this supplemental notice extends from Mr. Thompson's return to DOC custody in or around February 2025 through the present and on a going-forward basis while this litigation is pending. To the extent any conduct described in the SAC predates February 2025 or continues beyond that date, the time period should be construed to include the full duration of that course of conduct.

II. **Additional Categories of Evidence for Preservation**

My July 1 letter set out a non-exhaustive list of categories of documents and ESI to be preserved and emphasized that the City must suspend routine practices that would delete or overwrite potentially relevant evidence. That letter and its instructions are incorporated by reference and remain in full force.

In light of the SAC, Plaintiff specifically requests that the City and DOC ensure preservation of the following, without limitation:

1. All ESI and hard-copy documents concerning Mr. Thompson's housing and facility assignments since February 2025, including:

    a. housing history printouts, transfer/re-housing requests, approvals, and denials;
    b. classification, security-assignment, and separation-order records; and
    c. emails, memoranda, and other communications concerning his placement at Harmony House, OBCC 5 Lower ("Gangland"), or any other unit where he has been housed during this period.

2. All separation orders, "keep separate" directives, PREA-related separation or no-contact orders involving Mr. Thompson and any DOC staff, as well as:

    a. communications about such orders;
    b. records reflecting efforts to enforce or disregard them; and
    c. any investigations or reviews of compliance with those orders.

///

///

**Mr. Accarino**
Re: Litigation Hold
November 13, 2025

3. All medical and mental-health records and related communications since February 2025, including:

   a. sick-call slips, clinic logs, MARs, emergency-response logs, and nurse/physician notes;
   b. incident reports, unusual incident (UI) reports, and related documentation of medical emergencies (including, by way of example, the June 8, 2025 incident described in the SAC); and
   c. emails or memoranda between custody staff, medical staff, and supervisors regarding Mr. Thompson's access to or refusal of care.

4. All records and communications relating to Mr. Thompson's legal access, including:

   a. law-library call-outs, sign-in sheets, refusals, and cancellations;
   b. records concerning delivery and review of criminal discovery materials;
   c. logs and communications concerning attorney visits, teleconferences, and legal telephone calls; and
   d. any grievances, complaints, or internal emails concerning alleged interference with his legal access.

5. All grievances, 311 complaints, PREA reports, and internal investigations involving Mr. Thompson since February 2025, including:

   a. grievance forms, appeal paperwork, and responses;
   b. PREA intake forms, investigation files, and related correspondence; and
   c. DOI, ID, or similar investigative files relating to the events and locations described above.

6. All video and audio recordings since February 2025 that may capture relevant events, including but not limited to:

   a. fixed-camera footage and body-worn camera footage covering Mr. Thompson's housing units (including Harmony House and OBCC 5 Lower), clinic areas, law library, recreation areas, and transport/escort routes;
   b. any recordings of interactions referenced in the SAC, including medical emergencies, alleged use of force, and housing-unit incidents; and
   c. associated logs, camera-assignment sheets, and retention/overwrite policies.

7. All documents and communications concerning DOC policies and practices implicated by the supplemental allegations, including, without limitation:

   a. policies and guidance on housing of LGBTQ+ detainees and operation of Harmony House;

Mr. Accarino
Re: Litigation Hold
November 13, 2025

      b. policies on sexual activity among detainees, STI and HIV prevention, PREP or analogous medication, and related medical protocols;
      c. policies on enforcement of separation orders and PREA-related directives; and
      d. any internal reviews, audits, or corrective-action plans bearing on these issues.

As before, the foregoing is only illustrative and not exhaustive. If you have any doubt as to whether to retain a particular category of documents or ESI, please err on the side of preservation until the parties can address scope through the normal discovery process or with the Court if necessary.

### III. Relevant Considerations and Preservation Obligations

The instructions in my July 1, 2025 letter concerning ESI preservation, suspension of auto-deletion, and the City's obligation to preserve ESI in its "possession, custody, or control" (including that held by third-party vendors or other City offices) continue to apply.

In implementing this supplemental hold, please ensure that appropriate litigation-hold notices and instructions are promptly circulated to the appropriate individuals, such as any named or identified individuals referenced in the SAC as having direct involvement in the 2025 events (including, for example, Captains Alexander and Azevedo and C.O. Jane Doe shield 15002), as well as their supervisors.

As noted previously, preservation of paper copies alone will not satisfy the City's obligations. ESI should be preserved in native format, with associated metadata intact, and in both "accessible" and "inaccessible" locations to the extent potentially relevant information resides there.

For avoidance of doubt, the duty to preserve potentially relevant evidence in this matter has been in place since at least the commencement of this action on March 10, 2023, and was reiterated in my July 1, 2025 letter. This supplemental notice simply clarifies that the "subject matter" and time period now expressly include the additional allegations in the SAC and that DOC must take reasonable steps to preserve all related evidence. In other words, nothing in my letter should come as a surprise.

The City's obligation to preserve potentially relevant evidence is ongoing and extends to information created after the date of this letter that relates to the subject matter described above. To the extent you believe any requested preservation is disproportionate under Rule 26(b)(1) or otherwise unduly burdensome, I am willing to confer about targeted search terms, phasing, or other reasonable accommodations; however, any such discussions do not relieve the City of its existing duty to preserve.

          \*      \*      \*

**Mr. Accarino**
Re:  Litigation Hold
November 13, 2025

       Thank you very much for your attention to this matter. As always, do not hesitate to reach out if you have any questions or concerns, or if I can do anything to help.

       Very truly yours,

       */s/ Sami Elamad*
       Sami Elamad

cc:    Kwaine Thompson (by U.S. first-class mail)