UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KWAINE THOMPSON,
Plaintiff,

-v-

CAPTAIN LEMON, *et al.*,
Defendants.

23-CV-2102 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Kwaine Thompson brings this action asserting federal and state claims based on that events that allegedly occurred while he was a pretrial detainee at the West Facility ("West"), the George R. Vierno Center ("GRVC"), Harmony House, and Otis Bantum Correctional Center ("OBCC") on Rikers Island, New York. (ECF No. 151.) Before the Court is a motion to dismiss filed by the City of New York ("the City") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 156.) For the reasons that follow, the motion is granted in part and denied in part.

## I. Background

### A. Factual Background

The following facts are drawn from Thompson's Second Amended Complaint (ECF No. 151 ("SAC")) and are presumed true for purposes of resolving this motion. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam).

From March 2019 through February 2023, Thompson was detained at Rikers Island. (SAC ¶ 54.) Between 2019 and 2022, he filed five lawsuits challenging the conditions of his confinement. (*Id.* ¶ 55.) On or about December 2, 2022, Thompson was transferred to West.

(*Id.* ¶ 68.) He alleges that West is known for substandard conditions and the mistreatment of inmates. (*Id.* ¶ 64.) Shortly after his transfer, several correction officers allegedly informed Thompson that he had been moved to West because of his pending lawsuits. (*Id.* ¶ 69.) In particular, Defendants Walter McNeil, Chanele Henry, and Ronald Miller allegedly stated or implied that the transfer was intended to impede Thompson's litigation against the City and its officers. (*Id.* ¶¶ 70-71.)

Thompson further alleges that, while housed at West, he was subjected to retaliatory measures, including the denial of recreation, restrictions on telephone access and family visitation, and repeated strip searches. According to Thompson, these actions were undertaken to harass and intimidate him in response to his protected litigation activity. (*Id.* ¶¶ 70, 77-78, 87.) In addition, Thompson alleges that, while housed at both West and GRVC, he experienced ongoing issues with access to medical care and services. (*Id.* ¶ 96.) He claims that Defendant Jimmy Guan told him that his medication would be delayed so long as his litigation against the Department remained active. (*Id.* ¶ 102.)

Separately, Thompson alleges that, while at GRVC, Department of Correction ("DOC") officers prevented him from accessing the law library, thereby harming both his criminal case and his civil actions against the City. (*Id.* ¶¶ 125-26.) Even when he was permitted access, officers allegedly refused him use of a restroom, forcing him to urinate and defecate in a plastic trash bag. (*Id.* ¶ 130.) Thompson also asserts a claim for disability discrimination, alleging that he has a documented hearing impairment requiring assistive devices. (*Id.* ¶ 146.) He contends that he repeatedly requested accommodations to communicate with his attorney and to contact his family, but those requests were denied. (*Id.* ¶¶ 147-48.)

Thompson alleges that, while housed at West and GRVC, he was subjected to harassment based on his Muslim faith. (*Id.* ¶ 154.) Specifically, he claims that he was subjected to forced public nudity (*id.* ¶ 155) and that he was denied a halal diet and a Quran (*id.* ¶¶ 157, 163). Thompson again alleges that these actions, along with other forms of discrimination, were motivated by his pending litigation against the City. (*Id.* ¶ 160.)

Finally, in the section of his Second Amended Complaint ("SAC") entitled "Present Litigation: Ongoing Retaliation and Current Conditions (Supplemental)," Thompson alleges that, since the commencement of this action, he has been subjected to additional retaliation. (*See generally* SAC § F.) He asserts that he was again subjected to multiple transfers, including an allegedly inexplicable transfer from Harmony House to "Gangland" within the OBCC. (*Id.* ¶ 180.) While at OBCC, Thompson claims that he "has been forced to pay bribes to inmates" to secure his safety. (*Id.* ¶ 182.) With respect to Harmony House, Thompson alleges that the Department failed to provide basic preventative medication—such as PrEP—for inmates who engage in sexual activity. (*Id.* ¶¶ 205, 211, 215.) According to Thompson, his experiences at OBCC and Harmony House exposed him "to state-created dangers for no good reason." (*Id.* ¶ 216.)

In all, Thompson's SAC names thirty-four individual defendant DOC employees and officials and alleges events that have occurred at four separate DOC facilities. (*See generally* SAC.)

**B. Procedural Background**

On March 10, 2023, Thompson, proceeding *pro se*, filed a ninety-page complaint asserting various federal and state law claims. (*See* ECF No. 1.) Thompson attached to his

complaint 232 pages of exhibits. (*Id.*) Thompson's case was initially assigned to Chief Judge Laura Taylor Swain pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A(a). On April 29, 2024, prior to any defendant's being served, Chief Judge Swain ordered Thompson to amend his complaint within sixty days, by June 28, 2024, to conform with the Federal Rules of Civil Procedure's pleading standards. (*See* ECF No. 7.) Specifically, Chief Judge Swain cautioned Thompson that his attempt to "assert unrelated claims against multiple different defendants regarding events that occurred at two different facilities on Rikers Island" was improper joinder in violation of Rule 20 of the Federal Rules of Civil Procedure. (*Id.* at 6-7 (quoting *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (holding that "the mere allegation that Plaintiff was injured by all Defendants is not sufficient by itself to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)" (cleaned up)).)

Chief Judge Swain granted Thompson leave to file an amended complaint, stating that "if he wishes to pursue unrelated claims against multiple different defendants regarding events that occurred at different facilities, he must bring those claims in separate actions." (*Id.* at 6-7.) She warned also that Thompson "may not assert claims raised in his pending cases." (*Id.* at 7.)

On July 16, 2024, this case was reassigned to the undersigned and referred to Magistrate Judge Katherine H. Parker for general pretrial matters. (*See* ECF No. 10.) On July 30, 2024, this Court granted Thompson's May 31, 2024 motion to appoint as his counsel Sami Elamad, and Mr. Elamad filed a Notice of Limited Appearance for the "limited purpose of amending [Thompson's] original complaint." (*See* ECF Nos. 13, 24.) On November 1, 2024, Thompson—now through counsel—filed an amended complaint, asserting nineteen claims against the City of New York, twenty-three individually named DOC employees, and John/Jane Doe Correction

Officers, from multiple DOC facilities. (ECF No. 25.) On March 20, 2025, the City filed its first motion to dismiss Thompson's amended complaint. (*See* ECF No. 110.)

After Judge Parker granted Thompson's motion to file a second amended complaint (ECF No. 149), Thompson filed the operative SAC on October 31, 2025. (*See* SAC.) The City filed the instant motion to dismiss on November 17, 2025 (ECF No. 156) and an accompanying memorandum of law (ECF No. 157 ("Mem.")). Thompson opposed that motion on December 30, 2025 (ECF No. 160 ("Opp.")), and the City filed a reply on January 14, 2026 (ECF No. 166).[1]

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead facts sufficient to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this pleading standard, a complaint must "nudge[]" the claims "across the line from conceivable to plausible." *Id.* at 570. Pleadings must contain "something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." 5 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1216 (4th ed. 2026). On a motion to dismiss, a court must accept all allegations in the complaint as true. *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir. 1978).

---

[1] Thompson moved for leave to file a sur-reply on January 21, 2026. (ECF No. 167.) Because the Court does not rely on any new matters in the City's reply memorandum in this ruling, Thompson's motion to file a sur-reply is denied as moot. *Cf. Melchor v. Eisen & Son Inc.*, No. 15-CV-113, 2016 WL 3443649, at *1 (S.D.N.Y. June 10, 2016) (denying as moot the defendants' motion for leave to file a sur-reply "[a]s the Court has not relied on any of the factual allegations set out in Plaintiffs' reply").

Although Thompson initially brought this case *pro se*, he was represented by counsel when the SAC was filed. Therefore, Thompson is not entitled to have the Court construe his pleadings liberally. *See Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 205 (E.D.N.Y. 2017) ("In this case, although Plaintiff is currently proceeding *pro se*, he was represented at the time the complaint was filed. Because the complaint was drafted by a lawyer, it is not entitled to the generous reading given to *pro se* complaints.").

**III. Discussion**

Thompson's SAC asserts fourteen causes of action: (1) retaliation; (2) deliberate indifference to medical needs; (3) excessive force; (4) due process violations; (5) unconstitutional conditions of confinement; (6) denial of access to the courts and counsel; (7) religious discrimination; (8) equal protection violations; (9) disability discrimination; (10) municipal liability; (11) violations of the state constitution; (12) statutory violations; (13) negligence; and (14) negligent hiring, training, and supervision. (*See generally* SAC.)

Before addressing particular claims, the Court notes that many of Thompson's accusations against the City appear to arise from the same conduct at issue in Thompson's 2021 case, *Thompson v. City of New York*, No. 21-CV-10371 (S.D.N.Y.). Because that case ended in a settlement that was not publicized on the Court's docket, and not in a ruling on the merits, this Court will not *sua sponte* dismiss any of Thompson's claims here as barred by settlement. That said, if the City believes that certain claims are barred due to the terms of the settlement, it may move for dismissal on those grounds and provide the Court with the settlement documents.

The Court follows the City's order of argument as set forth in its memorandum.

### A. Point I: Failure to Comply with Chief Judge Swain's Order

As an initial matter, the City argues that Thompson, represented by Mr. Elamad, "completely ignored [Chief Judge Swain's] Order, and, in his Amended Complaint, [] brought multiple unrelated claims against twenty-three (23) individual defendant correction officers from two separate DOC facilities." (Mem. at 21.) Then, despite the City's raising this issue in its initial motion to dismiss, Mr. Elamad "has continued to flaunt the Court's April 29, 2024 Order by going even further and adding even more unrelated claims to an expanded total of four separate DOC facilities . . . against an increased total of thirty-four (34) individual defendant correction officers." (*Id.*) Accordingly, the City argues, the Court should dismiss the SAC. (*Id.* at 22.)

Although the Court agrees that Mr. Elamad failed to comply with Chief Judge Swain's clear instructions—and that dismissal would fall within the Court's discretion under Rule 41 of the Federal Rules of Civil Procedure—such a sanction would unduly penalize Thompson for the shortcomings of his counsel. *See Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993) ("[D]ismissal is not favored because it imposes a penalty upon the client for her attorney's misconduct."). Here, dismissal would effectively operate with prejudice, as the statute of limitations has run on Thompson's claims. Under these circumstances, the Court declines to impose so severe a consequence for counsel's deficient performance.

### B. Point II: Group Pleading

The City argues that Thompson's first, second, sixth, and thirteenth claims—each asserted against "all defendants"—fail to distinguish among the individual defendants and therefore do not provide fair notice of the claims or the grounds upon which they rest. *See* Fed.

R. Civ. P. 8(a)(2); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). (Mem. at 22-24.)

In *Atuahene v. City of Hartford*, the Second Circuit affirmed dismissal of a complaint asserting multiple constitutional and state law claims where the plaintiff failed to specify which defendants were responsible for the alleged misconduct. 10 F. App'x at 34. Despite multiple opportunities to amend, the plaintiff's pleadings "fail[ed] completely to differentiate the conduct of each defendant with respect to each claim." *Atuahene v. City of Hartford*, No. 99-CV-631, 2000 WL 433956, at *2 (D. Conn. Apr. 18, 2000), *aff'd*, 10 F. App'x 33 (2d Cir. 2001).

The same deficiency is present here. Thompson repeatedly refers to "defendants" in the aggregate, without attributing specific conduct to any individual defendant. Such group pleading is insufficient under Rule 8 of the Federal Rules of Civil Procedure because it fails to give each defendant adequate notice of the claims against them. This defect is particularly salient given that Thompson was previously put on notice of this issue in the City's earlier motion to dismiss. (ECF No. 111 at 16.) Consequently, Thompson's first, second, sixth, and thirteenth claims are dismissed.

### C. Point III: Plaintiff's Alternative Grounds for Dismissal of Claims One, Two, and Six

The City advances additional, alternative grounds for dismissal of Claims One, Two, and Six. (Mem. at 24-29.) Because the Court concludes that these claims are impermissibly pleaded in a group manner and therefore fail to satisfy applicable pleading standards, it declines to reach the City's alternative arguments.

**D. Point IV: The Personal Involvement of Seven Individual Defendants**

The City argues that Thompson fails to plead sufficient personal involvement as to defendants Warden Karen Collins, Captain Adam Rollinson, Captain Christopher Lopez, Correction Officer Keesia Leitch, Correction Officer Anthony Marden, Correction Officer Antonio Graves,[2] and Deputy Commissioner Annais Morales, asserting that these individuals are mentioned in the SAC only in the caption and by virtue of their employment with the DOC. (*See* Mem. at 29-30.) The Court agrees.

Under 42 U.S.C. § 1983, an individual defendant may be held liable only if that defendant was personally involved in the alleged constitutional deprivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). Because vicarious liability is unavailable in § 1983 actions, a plaintiff must plausibly allege that each government official, through that official's own individual actions, violated the Constitution. *Id.*; *see also Greathouse v. Vasquez*, No. 20-CV-8748, 2021 WL 6334689, at *12 (S.D.N.Y. Dec. 27, 2021), *report and recommendation adopted*, No. 20-CV-8748, 2022 WL 83663 (S.D.N.Y. Jan. 7, 2022); *Man Zhang v. City of New York*, No. 17-CV-5415, 2018 WL 3187343, at *10 (S.D.N.Y. June 28, 2018), *aff'd sub nom. Zhang v. City of New York*, No. 23-7469, 2025 WL 466847 (2d Cir. Feb.

[2] Thompson's opposition brief makes no argument as to Defendant Graves; accordingly, Thompson has conceded any argument as to Defendant Graves, and he is dismissed as a party. *See, e.g.*, *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189, 2022 WL 4368109, at *9 (S.D.N.Y. Sept. 20, 2022) ("Plaintiffs do not respond to these arguments in opposition . . . and accordingly, these claims are dismissed as abandoned."); *Scott v. JPMorgan Chase & Co.*, No. 13-CV-646, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) ("Plaintiff has failed to respond to [Defendant's] arguments . . . [and] [i]n doing so, Plaintiff effectively concedes the [arguments.]") (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015).

12, 2025), and *aff'd sub nom. Zhang v. City of New York*, No. 23-7469, 2025 WL 485392 (2d Cir. Feb. 13, 2025)).

Accordingly, liability cannot rest on a theory of *respondeat superior*. *See Wallace v. Conroy*, 945 F. Supp. 628, 637 (S.D.N.Y. 1996). Nor is it sufficient to allege that a defendant held a high-ranking supervisory position, such as a prison warden, without factual allegations establishing that the defendant's own conduct was directly responsible for the asserted constitutional violation. *Id.* at 637-38.

Thompson's opposition brief appears to concede that Defendants Collins and Rollinson were alleged to have been involved only in the original complaint, and not in the SAC. (Opp. at 50.) Because an amended complaint supersedes any prior complaint, *see Starke v. Fuentes*, No. 25-CV-3108, 2025 WL 1652123, at *4 (S.D.N.Y. May 8, 2025), Thompson's failure to include specific allegations against Collins and Rollinson in the SAC warrants dismissal of the claims against them.

Defendants Leitch, Lopez, Marden, and Morales similarly do not appear in the body of Thompson's SAC, even though Thompson's opposition brief argues that they participated in specific retaliatory efforts. (Opp. at 50.) The Court must decide this motion based on facts alleged by Thompson in the SAC, not facts alleged in his brief. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."). Accordingly, as with Collins and Rollinson, Thompson's failure to include

allegations against Leitch, Lopez, Marden, and Morales warrants dismissal of any claims alleged against them.

As a final note, Mr. Elamad's assertion that "it is neither fair nor realistic to expect a pro se detainee [to] plead a complete chronology with perfect officer identification at the outset" (Opp. at 51) is misplaced. Thompson was not proceeding pro se when he filed the SAC; to the contrary, he was represented by counsel. Indeed, Mr. Elamad himself assisted in drafting the SAC. Accordingly, even assuming arguendo that the claims against defendants Collins, Rollinson, Lopez, Leitch, Graves, Marden, and Morales might survive under the more liberal construction afforded to pro se pleadings, they do not withstand scrutiny where, as here, the plaintiff was represented by counsel.

**E. Point V: Municipal Liability**

Tracking the City's briefing, the Court's analysis proceeds in two parts. First, the Court must determine, as a threshold matter, whether any of Thompson's injuries were caused by an official policy, custom, or practice, as is required by *Monell*. Second, it will address whether Thompson's alleged injuries amount to a constitutional deprivation.

The Court addresses each of Thompson's five asserted bases for *Monell* liability in turn. A municipality is not liable under 42 U.S.C. § 1983 unless a plaintiff's injuries were caused by an official policy, custom, or practice of that municipality. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Buari v. City of New York*, 530 F. Supp. 3d 356, 397-99 (S.D.N.Y. 2021). "A plaintiff may demonstrate that such a policy or custom exists by introducing evidence of one of the following: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the

particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *McDaniel v. City of New York*, 585 F. Supp. 3d 503, 513 (S.D.N.Y. 2022) (quotation marks omitted).

In addition, to prevail on a *Monell* claim, a plaintiff must also show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Thompson's opposition contends that his SAC alleges municipal liability based on (1) a formal policy banning religious texts except for the Bible; (2) widespread customs and practices of transfers and poor conditions of confinement in a manner that functions as punishment; (3) widespread customs and practices of inadequate medical care; (4) a failure to supervise; and (5) actions by high-ranking DOC officials who have articulated retaliatory motives. (*See generally* Opp.)

**1. Formal Policy Banning Religious Texts**

Thompson alleges that he is a practicing Muslim who carries a Quran. (SAC ¶¶ 154-63.) He further alleges that when he attempted to obtain a Quran after his went missing, Defendants indicated that DOC policy allows an inmate to possess only a Bible, not a Quran. (*Id.* ¶ 163.) While "inmates enjoy no constitutional or legal right to receive religious materials at government

expense," the Equal Protection Clause of the Fourteenth Amendment prevents Defendants from granting differential access to religious materials based on the inmates' faith. *Lloyd v. City of New York*, 43 F. Supp. 3d 254, 265 (S.D.N.Y. 2014).

### 2. Widespread Custom of Retaliatory Transfers and Unconstitutional Conditions of Confinement

The Court concludes that Thompson's allegations regarding a widespread custom of retaliation and unconstitutional conditions of confinement are sufficient to state a claim for municipal liability. Although Thompson is not required to prove his *Monell* theory at the pleading stage, he must allege facts that plausibly support the existence of a municipal policy or custom and a "direct causal link between [that] municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Conclusory assertions that misconduct was "widespread" or "systemic" are insufficient. Rather, the complaint must contain factual matter tending to show that the challenged conduct occurred with sufficient frequency and similarity to permit the inference that it resulted from an official custom rather than from isolated acts of individual employees. *See Twombly*, 550 U.S. at 570.

Courts in this Circuit have recognized that a plaintiff may plead a widespread municipal custom by citing other lawsuits, as documented in newspaper articles reporting substantially similar misconduct.[3] But those materials are relevant only insofar as they describe other

[3] The Court notes, however, that for summary judgment, newspaper articles are hearsay when introduced to prove the truth of the matter asserted and are therefore may not be used to defeat summary judgment. *See Delrosario v. City of New York*, 2010 WL 882990, at *7 (S.D.N.Y. 2010) (citing, *inter alia*, *McAllister v. N.Y. City Police Dep't*, 49 F. Supp. 2d 688, 706 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay, . . . and . . . are not admissible evidence of New York City Police Department policy or custom.")); *see also Dockery v. Tucker*, 2006 WL 5893295, at *23-24 (E.D.N.Y. 2006) (concluding that plaintiff may not rely upon an array of

instances of the same constitutional violation alleged by the plaintiff. *See Hunter v. City of New York*, 35 F. Supp. 3d 310, 324-25 (E.D.N.Y. 2014) (sustaining a *Monell* claim on a motion to dismiss where the plaintiff cited a newspaper article describing lawsuits alleging similar misconduct); *Gonzalez v. New York City*, No. 16-CV-254, 2016 WL 7188147, at *8 (S.D.N.Y. Dec. 2, 2016) (same). Absent allegations of comparable misconduct, generalized reporting about dysfunction within a municipal institution does not plausibly establish a policy or custom.

Here, the SAC cites a series of newspaper articles and public reports concerning conditions at Rikers Island. The cited materials concern subjects related to Thompson's allegations, including isolation conditions in West and the use of solitary cells at West to punish detainees. (SAC at 10, n.3; ¶¶ 60-63, 245.) To be sure, certain articles are unrelated to Thompson's claims, such as the article he cites that discusses the settlement of a lawsuit brought by a detainee who alleged sexual abuse by a physical therapist in a jail clinic. (SAC at 11, n.8.) However, some materials cited by Thompson describe retaliatory transfers, denial of adequate housing conditions, or similar conduct directed at detainees in circumstances comparable to Thompson's.

Because the SAC identifies complaints alleging the same sort of retaliatory transfer scheme or comparable conditions-of-confinement violations, certain cited articles permit a reasonable inference that the challenged conduct was undertaken pursuant to a municipal custom.

---

newspaper articles and judicial decisions discussing general police misconduct to support a *Monell* claim).

### 3. Widespread Custom and Policy of Medical Indifference

Thompson fails to allege a widespread custom and policy of medical indifference. Thompson's SAC expressly pleads that certain defendants attempted to respond to his medical needs. (*See* SAC ¶ 106 ("Defendant Blount declined to give Plaintiff his medication, [] even though Captain Palermo tried to step in and say something without much luck."); SAC ¶ 118 ("Defendant Captain Moodie even tried to respond to [Thompson's] medical emergencies[.]").) These allegations reflect inconsistent, individualized conduct—some officers allegedly denying care, others attempting to intervene—which is the hallmark of discretionary decision-making, not a uniform municipal policy or entrenched custom. Courts routinely reject *Monell* claims where the pleaded facts demonstrate variability in officer conduct, because such variability negates the inference of a "persistent and widespread" practice attributable to the municipality. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

In fact, Thompson's allegations affirmatively suggest a lack of supervisory awareness regarding medical indifference. He asserts that Captain Palermo, upon witnessing Defendant Blount declining to give Thompson his medication, "could have reported the incident to DOC leadership, or any supervisor for that matter" (SAC ¶¶ 106-07), but did not do so. This allegation implies that the complained-of conduct was not known to, or ratified by, policymakers. In sum, the SAC alleges, at most, episodic misconduct of medical indifference by individual officers and contemporaneous attempts by others to intervene—facts that are fundamentally incompatible with the existence of a municipal policy, custom, or practice.

Accordingly, Thompson's conclusory allegations fall short of the pleading standard required to sustain *Monell* claims against the City for medical indifference.

**4. Failure to Supervise**

To state a claim for relief under *Monell* on a failure-to-supervise theory, a plaintiff must plausibly allege that the entity acted with "deliberate indifference" to an obvious "need for more or better supervision to protect against constitutional violations." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 580 (E.D.N.Y. 2018) (quotation marks omitted). An obvious need for better supervision may be demonstrated through, for example, repeated complaints of civil rights violations, while deliberate indifference may be inferred from a lack of "meaningful attempt . . . to investigate or to forestall further incidents" that goes beyond mere "bureaucratic inaction." *Id.* (quotation marks omitted).

Here, taking Thompson's allegations as true, he has plausibly alleged that serious constitutional violations—including unconstitutional conditions of confinement, retaliatory transfers, and religious discrimination—were obvious and persistent, yet deliberately ignored. Thompson alleges not merely his own experience, but that numerous detainees complained of similar mistreatment, supporting the inference that these violations were sufficiently widespread to place policymakers on notice. At the pleading stage, those allegations plausibly suggest that City officials were aware of, and failed to address, an ongoing pattern of constitutional violations.

**5. Actions by High-Ranking Officials**

"Actions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (Sotomayor, J.). "The individual must 'be responsible for establishing

final government policy' in order for municipal liability to attach." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

The SAC alleges direct participation by high-ranking DOC officials who plausibly exercise policymaking authority. For example, Thompson alleges that Acting Warden Miller visited Thompson's cell at West and informed Thompson that he would remain in enhanced restraints so long as he did not drop his lawsuits against other DOC officials. (SAC ¶ 71; *see also* SAC ¶¶ 160-61 (alleging that Assistant Commissioner Griffin instructed staff and informed Thompson that, while Thompson's litigation was pending, he would not receive halal meals).)[4] These allegations plausibly plead that senior officials affirmatively linked restrictive measures to Thompson's protected litigation activity and thereby directed or endorsed retaliation.

### F. Point VI: Substance of Plaintiff's Federal Claims Against the City Pursuant to 42 U.S.C. § 1983

Having concluded above that Thompson has plausibly alleged a municipal custom with respect to retaliation (Count One), conditions of confinement (Count Five), due process violations (Count Four), and religious discrimination (Count Seven), the Court turns to the question of whether Thompson's underlying injuries amount to a constitutional deprivation. Here the Court addresses each of those claims in turn. The City argues, as an alternative basis for dismissal, that Thompson's allegations fail on their substantive merits. (Mem. at 35-41.) The Court disagrees as to the claims identified above. Thompson has plausibly alleged a

[4] The City argues that any remaining *Monell* claims should be bifurcated from the claims against the individual defendants. (ECF No. 166 at 23.) But no such overlap remains. This Opinion dismisses the § 1983 claims asserted against defendant "Miller," *see infra* Section H.2, and no other claim alleges parallel constitutional violations by both the City and an individual defendant. Accordingly, there is no basis for bifurcation, and the City's request is denied as moot.

conditions-of-confinement violation, a due process violation, a religious discrimination claim, and an equal protection violation against the City.

### 1. Conditions of Confinement

Thompson asserts that his conditions of confinement were unconstitutional, citing ongoing and compounding deprivations across multiple facilities. He alleges that he was denied basic sanitation and hygiene, including being forced to use garbage bags instead of toilets and being deprived of cleaning supplies and laundry access. (Opp. at 26; SAC ¶¶ 130-42.) He further claims that he was continuously exposed to vermin and unsanitary conditions, as well as to chemical agents or other toxic substances in enclosed spaces with inadequate ventilation. (Opp. at 26; SAC ¶¶ 115-17, 139.)

A state "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The detainee:

> must satisfy two prongs . . . , an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a subjective prong—perhaps better classified as a *mens rea* prong or mental element prong—showing that the officer acted with at least deliberate indifference to the challenged conditions.

*Id.* (quotation marks omitted).

The subjective or mental element prong "roughly means 'recklessness.'" *Id.* A plaintiff must show, "at a minimum, culpable recklessness, *i.e.*, an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (quotation marks omitted). In turn, "recklessness can be defined subjectively

(what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Darnell*, 849 F.3d at 29 (quotation marks omitted).

First, Thompson has satisfied the test's objective prong. The SAC alleges denial of basic sanitation and hygiene, forced use of garbage bags in lieu of toilets, denial of cleaning supplies and laundry, and continued exposure to vermin and unsanitary conditions. (SAC ¶¶ 130-42, 203-15.) Moreover, Thompson alleges that defendant Henry walked into his cell and sprayed mace and another chemical agent and shut the door, causing Thompson to lose consciousness. (*Id.* ¶¶ 115-17.) These conditions, if confirmed, are sufficiently serious to constitute objective deprivations of the right to due process. *Cf. Gaston v. Coughlin*, 249 F.3d 156, 161, 165-66 (2d Cir. 2001) (holding that freezing temperatures and the constant presence of mice, "human feces, urine, and sewage water" stated a claim under the stricter Eighth Amendment objective prong).

Under the subjective prong of the Fourteenth Amendment conditions-of-confinement test, Thompson alleges that various defendants knew that the conditions of confinement that he described in his SAC posed a serious health risk, though they were indifferent to that risk. *Cf. Darnell*, 849 F.3d at 29; *Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019); *Gaston*, 249 F.3d at 165-66. Specifically, "on several occasions, [Thompson] tried to raise concerns or make a complaint with DOC supervisors" but allegedly no one assisted. (SAC ¶¶ 136-37.) *See Edwards v. Arocho*, 125 F.4th 336, 344-45, 352 (2d Cir. 2024) (holding that allegations that the plaintiff handed a grievance to one corrections employee and orally complained to "officers making their rounds" sufficed under Rule 12).

Taken together, Thompson's allegations plausibly satisfy both the objective and mens rea prongs of a Fourteenth Amendment conditions-of-confinement claim. And because the Court

has concluded above that Thompson has also pleaded that these unconstitutional conditions are a result of a City policy or custom, his *Monell* conditions-of-confinement claim is sufficient to survive the City's motion.

**2. Due Process Violations**

Thompson contends that his SAC plausibly alleges both procedural and substantive due process violations, pointing to his placement in enhanced restraints without a hearing and the use of handcuffs during recreation, among other restrictions. (SAC ¶¶ 240, 243.) At this stage of the litigation, the Court concludes that these allegations are sufficient to plausibly state claims for violations of his due process rights.

Regarding procedural due process, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* "[P]unishment can consist of actions taken with an expressed intent to punish," or of "actions [that] are not rationally related to a legitimate nonpunitive governmental purpose or that . . . appear excessive in relation to that purpose." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quotation marks omitted). Although the Constitution forbids punishing a "detainee[] *qua* detainee[]," *Bell*, 441 U.S. at 539, "the government has a legitimate interest in the security of prisons, and . . . prison officials should be afforded deference in the adoption and execution of policies and practices . . . needed to preserve

internal order and discipline and to maintain institutional security," *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quotation marks omitted).

Thompson has adequately alleged that the conditions of his confinement amount to punishment within the meaning of the Due Process Clause, as he recounts instances where various DOC officials told him that their actions were in response to his lawsuits against the Department (*see, e.g.*, SAC ¶ 141).[5] *See Milling*, 876 F.3d at 55; *Elmaghraby v. Ashcroft*, No. 04-CV-01809, 2005 WL 2375202, at *16 (E.D.N.Y. Sep. 27, 2005) (concluding that the "purposeless and abusive strip and body-cavity searches" as well as verbal and physical abuse gave rise to an inference that the confinement was punitive).

Moreover, the SAC adequately alleges that Thompson was deprived of notice, an opportunity to be heard, and meaningful periodic review. *Cf. Proctor v. LeClaire*, 846 F.3d 597, 610-11 (2d Cir. 2017). For example, Thompson alleges that he was transferred to less amenable and more restrictive quarters in retaliation for exercising constitutionally protected rights, thereby constituting unconstitutional punishment. (SAC ¶¶ 68-70.) *See Davis v. Kelly*, 160 F.3d

[5] To the extent that Thompson's SAC challenges the restrictions imposed while he was subject to a lockdown order (SAC ¶ 243), those conditions may not constitute punishment and instead are perhaps reasonably related to a legitimate governmental objective. *See Henry v. Schriro*, No. 10-CV-7573, 2011 WL 3370394, at *2 (S.D.N.Y. Aug. 2, 2011) ("As a penological goal, prison security is beyond question legitimate, as prison security is central to all other corrections goals." (quotation marks omitted)). Conditions or restrictions placed upon a pretrial detainee will generally be deemed valid so long as they do not amount to punishment or otherwise violate the Constitution. *Bell*, 441 U.S. at 537. At this stage, however, the record is insufficiently developed for the Court to determine the precise nature of the lockdown order or whether the challenged restrictions were reasonably related to its objective. Even the City's memorandum concedes the uncertainty surrounding the lockdown, stating that the court-ordered restrictions were "presumably to protect plaintiff and/or other inmates." (Mem. at 36.) The City's use of the word "presumably" underscores that, at this stage, there is no developed factual record establishing the purpose or nature of the lockdown.

917, 920 (2d Cir. 1998) ("A prisoner has no liberty interest in remaining at a particular correctional facility, . . . but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights."). Thompson further alleges that this transfer occurred "without any notice or explanation." (*Id.* ¶ 179.) Accordingly, the SAC plausibly alleges that Thompson was subjected to punitive restrictions without the procedural protections required by the Fourteenth Amendment.

In addition to his conditions-of-confinement claim under the Fourteenth Amendment, Thompson brings a substantive due process claim, which appears to be premised on the same factual allegations. (Opp. at 31). To plead a substantive due process claim, a plaintiff must (1) "identify the constitutional right at stake" and (2) "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quotation marks omitted). Moreover, "any § 1983 claim for a violation of due process requires proof of a [defendant's state of mind] greater than mere negligence." *Darnell*, 849 F.3d at 36. Here, the City does not dispute that prong one has been satisfied. Instead, the City argues that Thompson's "substantive due process claim is devoid of allegations of affirmative government actions, and how those specific action[s] shocked contemporary conscience." (Mem. at 36.)

Treating the factual allegations in the SAC as true, as the Court must at this stage, the Court cannot conclude as a matter of law that Thompson has failed to allege conditions sufficiently severe to shock the conscience. Thompson alleges, among other things, that he was confined in a law library cell without a toilet (SAC ¶¶ 131-36); denied any opportunity for recreation (*id.* ¶¶ 77, 83); and sprayed with mace by Defendant Henry while confined in his cell,

after which he was locked inside (*id.* ¶¶ 115-17). Such allegations, if proven, could constitute conduct that is "outrageous and egregious under the circumstances" and "truly brutal and offensive to human dignity." *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quotation marks omitted).

**3. Religious Discrimination and Equal Protection**

Thompson's allegations support both a Free Exercise claim and an Equal Protection claim because he does not merely allege an incidental failure to accommodate his religion; he alleges intentional, faith-based discrimination.

Under the Free Exercise Clause, an inmate must plausibly allege that: (1) he holds a sincere religious belief, and (2) the defendants substantially burdened the exercise of that belief without adequate justification. *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). Thompson's allegations, assumed true, satisfy both elements. He alleges that he is Muslim, that he "always carr[ied] a Quran," and that eating halal food is required by his religious beliefs. (SAC ¶¶ 157, 163.) He further alleges that the City refused to provide him halal meals explicitly as part of a campaign to not "give the Muslims halal food" (*id.* ¶ 161) and expressly told him that he could possess only a Bible and not a Quran (*id.* ¶ 164).

Those allegations are sufficient. The Second Circuit has held that prison officials may not deny Muslim inmates halal meals or otherwise require them to violate their dietary restrictions. *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004) (explaining that to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights"); *Crichlow v. Fischer*, No. 12-CV-7774, 2015 WL 678725, at *3 (S.D.N.Y. Feb. 17, 2015) ("Generally, an inmate is entitled to a reasonable accommodation

of his religious beliefs, including religious dietary beliefs."). Thompson's allegations "support an inference that these deficiencies were a product of an anti-religious hostility or discriminatory treatment." *See Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *7 (S.D.N.Y. Jan. 28, 2020).

The refusal to provide Thompson with a Quran similarly states a Free Exercise claim. Access to core religious texts is one of the principal means by which incarcerated individuals exercise their faith. Thompson does not allege that the City simply failed to locate a Quran or delayed in obtaining one. Rather, he alleges that the City affirmatively told him that he could possess a Bible but not a Quran. That alleged policy is not neutral toward religion. A rule that permits Christian inmates to possess their sacred text while denying Muslim inmates access to theirs singles out one faith for favorable treatment and another for disfavored treatment. It is well established that governments may not target religious practice or treat one faith differently from another. *See Rutherford*, 2020 WL 433841, at *7 (stating that the Free Exercise clause requires neutrality); *Storm v. Town of Woodstock, N.Y.*, 32 F. Supp. 2d 520, 527 (N.D.N.Y. 1998) ("[T]he Free Exercise Clause . . . forbids subtle departures from neutrality." (quotation marks omitted)), *aff'd*, 165 F.3d 15 (2d Cir. 1998).

The same facts also plausibly support an Equal Protection claim. To state such a claim, Thompson need only allege that he was treated differently from similarly situated inmates because of his religion. He does so: According to the SAC, Christian inmates were allowed to possess Bibles, while Muslim inmates were denied Qurans.

Courts in this District have permitted materially identical claims to proceed. *See, e.g.*, *Flores v. City of New York*, No. 21-CV-1680, 2022 WL 4705949, at *28 (S.D.N.Y. Aug. 8,

2022), *report and recommendation adopted*, 2022 WL 4592892 (S.D.N.Y. Sep. 30, 2022) (holding that the plaintiff plausibly alleged a violation of the Equal Protection Clause based on a command level order listing the Bible as the only religious text inmates were allowed to possess). Moreover, Thompson alleges deliberate conduct: The City knew he was Muslim, knew that he required halal food and a Quran, and nonetheless denied both while expressly allowing Christian inmates access to their own religious materials. That permits the reasonable inference that the City intentionally discriminated against Thompson because of his religion.

Accordingly, Thompson has plausibly alleged that the City violated both the Free Exercise Clause and the Equal Protection Clause, and the motion to dismiss must therefore be denied as to those claims.

**G. Point VII: Thompson's Allegations against Certain Individual Defendants**

The City contends that Thompson's allegations against individual defendants do not rise to the level of constitutional violations, and therefore that claims against these defendants should be dismissed. The defendants in question include (1) Captain Abraham Palermo; (2) Captain Paul Moodie; (3) CO Stella Bethea; (4) Captain Alexander; (5) DOC Assistant Commissioner Christopher Miller; and (6) SRT Officers (a) Murphy White, (b) Paul White, (c) Michael Zderko, (d) Clarence Curley, (e) Alonzo Butler, (f) Samantha Elizer, and (g) Andre Anderson. (Mem. at 41.)

Because this opinion has concluded that Thompson's first, second, sixth, and thirteenth claims must be dismissed for improper group pleading, there are no claims that remain against these defendants.

### H. Point VIII: Federal Claims Against Specific Individual Defendants

#### 1. Excessive Force Claim Against Branche and McNeil

Thompson's allegations against Branche do not state a claim for excessive force. To prevail on a claim of excessive force, a pretrial detainee must plausibly allege that a jail official deliberately used force and that the force employed was objectively unreasonable under the circumstances. *See Stinson v. City of New York*, No. 18-CV-27, 2021 WL 3438284, at *9 (S.D.N.Y. July 6, 2021). Here, however, Thompson does not allege that Branche used any physical force at all. Rather, according to Thompson, while he was experiencing breathing difficulties, Branche "refused to call an emergency." (SAC ¶ 113.) That allegation sounds in deliberate indifference to medical needs, if anything, not excessive force. But because Thompson group-pleaded his deliberate indifference claim and did not plausibly allege Branche's personal involvement in any such constitutional violation, the Court will not recast the SAC to assert a separate medical-indifference claim against Branche.

Similarly, Thompson does not allege that Defendant McNeil used unlawfully excessive force.[6] In fact, Thompson's opposition brief does not provide any counter to the City's claim that his excessive force claim against McNeil is "insufficiently pled." (Mem. at 46.) Consequently, Thompson has conceded that point by failing to dispute it in his opposition brief. *See Tacon v. Cromwell*, No. 23-CV-8100, 2024 WL 4275625, at *10 n.15 (S.D.N.Y. Sept. 24, 2024) (concluding that because "[p]laintiff fails to address [an] argument in his Opposition, . . . [he] therefore has effectively conceded it"); *Felske v. Hirschmann*, No. 10-CV-8899, 2012 WL

[6] Thompson also brings his excessive force claim against Defendant Henry; the City does not move to dismiss that claim, and it therefore survives.

716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

#### 2. Religious Discrimination Claim, ADA Claim, and Equal Protection Claim against Miller

Thompson names two defendants with the surname "Miller": Ronald Miller, the Acting Warden of West Facility, and Christopher L. Miller, a DOC Assistant Commissioner. (SAC ¶¶ 30-31.) Yet the SAC refers only to "Miller" in asserting claims for religious discrimination (*id.* at 35), equal protection (*id.* at 36), and disability discrimination (*id.* at 37), without specifying which Miller is alleged to have engaged in the challenged conduct. The SAC therefore fails to provide adequate notice as to which defendant is the subject of each claim. That deficiency warrants dismissal. *See Atuahene*, 10 F. App'x at 34 (affirming dismissal where the complaint failed to specify which defendants were responsible for which alleged acts).

### I. Point IX: ADA Claims

Thompson also claims that the City has violated his rights under Title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act by denying him assistive devices for hearing, which resulted in Thompson's being unable to use the telephone to speak to his lawyer or to call his family. (SAC ¶¶ 146-49.) To state a claim under Title II of the ADA, a prisoner must show that "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program or activity is a public entity." *Shariff v. Artuz*, No. 99-CV-321, 2000 WL 1219381, at *4 n.5 (S.D.N.Y. Aug. 28, 2000) (quotation marks omitted); *see also* 42 U.S.C. § 12132. To state a claim under section 504 of the Rehabilitation Act, a prisoner must allege

facts showing that "(1) he is a 'qualified individual with a disability'; (2) he is 'otherwise qualified' to participate in the offered activity or program or to enjoy the services or benefits offered; (3) he is being excluded from participation or enjoyment solely by reason of his disability; and (4) the entity denying the inmate participation or enjoyment receives federal financial assistance." *Shariff*, 2000 WL 1219381, at *4 (quoting *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1036 (S.D.N.Y. 1995)); *see also* 29 U.S.C. § 794(a).

"Although its terms are broadly drawn, the Rehabilitation Act incorporates the standards of the [ADA]." *Cheung v. Donahoe*, No. 11-CV-122, 2016 WL 3640683, at *5 (E.D.N.Y. June 29, 2016); *see also Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (considering ADA and Rehabilitation Act claims "in tandem" because "Section 504 of the Rehabilitation Act and the ADA impose identical requirements").

"[W]hen an ADA claim does not state that a plaintiff was excluded from a prison service or program, it must be dismissed." *See Ramrattan v. Fischer*, No. 13-CV-6890, 2015 WL 3604242, at *5 (S.D.N.Y. June 9, 2015) (emphasis omitted); *see also Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 443 (S.D.N.Y. 2004) (dismissing ADA claim where inmate alleged only that he had difficulty walking to law library and infirmary, not that he was prevented altogether from accessing them, and was in fact admitted access to the infirmary on several occasions). Here, Thompson does not allege that he prevented from communicating with his counsel or with family. Instead, he alleges that he had "inadequate" communication, but that is not sufficient to state an ADA claim. (SAC ¶ 151.) Moreover, Thompson does not allege any discriminatory animus, or that he was excluded from any public service because of ill will with respect to his disability. *Cf. Ramrattan*, 2015 WL 3604242, at *5; *Varney v. Many*, No. 13-CV-

5285, 2015 WL 1730071, at *3 (S.D.N.Y. Apr. 14, 2025); *Devivo v. Butler*, No. 97-CV-7919, 1998 WL 788787, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing ADA claim where blind inmate failed to allege that he was denied services in prison because he was blind). Accordingly, Thompson's ADA and Rehabilitation claims are dismissed.

**J. Point X: Claims Brought Under State and City Law**

To the extent that Thompson alleges any claims under New York state law or New York City law—specifically, Count Eleven (New York state constitution violations); Count Twelve (New York state statutory violations); Count Fourteen (negligent hiring, training, and supervision); Count Fifteen (negligent or intentional infliction of emotional distress); Count Sixteen (violations of New York City Administrative Code); and Count Seventeen (battery/assault)—those claims are dismissed.

New York General Municipal Law §§ 50-e and 50-i require a plaintiff asserting a claim against a city that is based on the negligence or wrongful act of that city or its officers, agents, or employees to file a notice of claim within ninety days of the incident that gives rise to the claim. *See Razzano v. Cnty. of Nassau*, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009). Under New York law, state constitutional claims are subject to the notice of claim requirement. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 709 (S.D.N.Y. 2011). Under § 50-i, a "plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim," and that such notice was served at least thirty days prior to commencement of the action. *Id.*; *Davidson v. Bronx Mun. Hosp.*, 473 N.E.2d 761, 762-63 (1984) (per curiam). "Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality." *Diarra v. City of New York*, 771 F. App'x 69, 71 (2d Cir. 2019) (summary order) (quotation

marks omitted). "'Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action.'" *Id.* (quoting *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999)); *see also Davidson*, 473 N.E.2d at 763. "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) (quotation marks omitted).

Thompson's state-law claims against the City of New York must be dismissed under these authorities. The amended complaint does not allege that Thompson served a notice of claim on the municipal defendants at any time before commencing this suit. Because Thompson has failed to plead or prove compliance with New York's notice-of-claim requirements, his state-law and city-law claims are dismissed. *See, e.g.*, *Palmer v. City of New York*, 564 F. Supp. 3d 221, 241 (E.D.N.Y. 2021); *Medina v. City of New York*, No. 19-CV-9412, 2020 WL 7028688, at *13 (S.D.N.Y. Nov. 30, 2020); *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 348 (E.D.N.Y. 2013); *Harewood v. City of New York*, No. 09-CV-2874, 2012 WL 12884356, at *7 (E.D.N.Y. Feb. 10, 2012) ("New York State constitutional claims are also subject to the notice of claim requirement.");

Thompson's opposition appears to concede that the SAC does not allege compliance with New York's notice-of-claim requirement. (Opp. at 43.) Although Thompson argues that he in fact filed a notice of claim covering the state-law causes of action implicated by the supplemental allegations, and attaches a copy of the notice and filing confirmation to his declaration (ECF No. 161-1), that does not cure the deficiency.

First, Thompson was required to plead in the SAC that he timely served a notice of claim. He did not do so. *See, e.g.*, *Davidson*, 473 N.E.2d at 762-63. Second, the attached materials

establish that Thompson filed his notice of claim on September 13, 2025. (ECF No. 161-1 at 3.) Thompson's opposition states that the SAC concerns two periods: "the events beginning in or around December 2022 . . . through [Thompson's] transfer upstate in early 2023, and the events beginning in or around January 2025." (Opp. at 43.) But a notice of claim must be served within ninety days of the event giving rise to the claim. Thus, whether Thompson's state-law claims arise from conduct in December 2022 and early 2023 or from conduct beginning in January 2025, the September 13, 2025 notice is untimely.

Because Thompson's brief in opposition does not address whether the notice-of-claim requirement applies to his state-law discrimination claims—a question on which courts in this district have disagreed, *see, e.g.*, *Gomez v. City of New York*, No. 12-CV-6409, 2014 WL 4058700, at *7 (S.D.N.Y. Aug. 14, 2014)—the Court declines to resolve that dispute *sua sponte*.

### K. Request for Leave to Amend

Thompson requests that he be given leave to amend his complaint if the Court decides to dismiss any of his claims. (Opp. at 53.) "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Thompson has already been afforded an opportunity to amend his complaint following the City's first motion to dismiss. (ECF No. 149.) That amendment did not cure the deficiencies identified in the City's first motion to dismiss; nor does Thompson explain how further amendment will do so.[7]

[7] Once again, Mr. Elamad advances the misplaced argument that, because Thompson previously proceeded *pro se*, the Court must apply a liberal standard in considering further amendment. (Opp. at 53.) That contention is inapposite here. Mr. Elamad himself drafted the instant

"Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at *8 (S.D.N.Y. Mar. 4, 2022) (collecting cases); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."). Accordingly, Thompson's request for further leave to amend is denied.

**IV. Conclusion**

For the foregoing reasons, the City's motion to dismiss is GRANTED in part and DENIED in part. Thompson's remaining claims consist of: (1) an excessive force claim against Defendant Henry; and, as against the City, claims for (2) violation of due process, (3) unconstitutional conditions of confinement, (4) religious discrimination, and (5) violation of equal protection. All other claims are dismissed with prejudice.

The City shall file an answer to the remaining claims within 14 days after the date of this Opinion and Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

**The Clerk of Court is directed to close the motion at ECF No. 156.**

**The Clerk of Court is also directed to mail a copy of this Order to Plaintiff.**

SO ORDERED.

Dated: August 26, 2026
New York, New York

J. PAUL OETKEN
United States District Judge

---

complaint, and therefore Thompson was not *pro se* at the time the SAC was filed. Accordingly, no liberal pleading standard is warranted.